# UNITED STATES DISTRICT COURT
# EASTERN DISTRIC OF MICHIGAN
# SOUTHERN DIVISION

Mark Craighead,

      Plaintiff,

v.

City Of Detroit, Former Investigator Barbara Simon, Former Investigator James Fisher, Former Lieutenant Bob Jackson, Polygraph Operator Andrew Sims, and Other As-Of-Yet unknown Employees of The City of Detroit,

      Defendants.

Civil Action No. 23-12243

Judge Judith E. Levy
Magistrate Judge Curtis Ivy, Jr.

---

**Miller, Canfield, Paddock and Stone, P.L.C.**
*Attorneys for Defendant City of Detroit*
Marc N. Swanson (P71149)
Ronald A. Spinner (P73198)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com
spinnner@millercanfield.com

**Seward Henderson PLLC**
*Attorneys for Defendants James Fisher and Barbara Simon*
T. Joseph Seward (P35095)
210 East 3rd Street, Suite 212
Royal Oak, Michigan 48067
Telephone: (248) 733-3580
Facsimile: (248) 733-3633
jseward@sewardhenderson.com

**Loevy & Loevy**
*Attorneys for Plaintiff*
Arthur Loevy
Jon Loevy
Rachel Brady
Russell Ainsworth
Megan Colleen Pierce
311 North Aberdeen
3rd Floor
Chicago, IL 60607
Telephone: 312-243-5900
Facsimile: 312-243-5902
arthur@loevy.com
jon@loevy.com
brady@loevy.com
russell@loevy.com
megan@loevy.com

---

1

**THE CITY OF DETROIT'S MOTION TO (A) DISMISS IN LIEU OF AN
ANSWER, AND (B) STAY LAWSUIT UNTIL BANKRUPTCY COURT
ENTERS A FINAL ORDER ON THE CITY OF DETROIT'S MOTION FOR
THE ENTRY OF AN ORDER ENFORCING THE BAR DATE ORDER
<u>AND CONFIRMATION ORDER AGAINST MARK CRAIGHEAD</u>**

The City of Detroit ("<u>City</u>"), by and through its undersigned attorneys, relies on, and incorporates here, the attached brief in support of this *Motion to (A) Dismiss in Lieu of an Answer, and (B) Stay Lawsuit Until Bankruptcy Court Enters a Final Order on the City of Detroit's Motion for the Entry of an Order Enforcing the Bar Date Order and Confirmation Order Against Mark Craighead* ("<u>Motion</u>"). The City respectfully requests that this Court dismiss the City (and any official capacity claims against any of the individual Defendant Officers) with prejudice from this lawsuit, or, in the alternative, enter an order staying this lawsuit until the Bankruptcy Court enters a final order on the motion to enforce filed in the bankruptcy court, and grant such further relief as the Court may deem just and proper.

On October 27, 2023, there was a conference between attorneys in which the movant explained the nature of the motion and its legal basis and requested but did not obtain concurrence in the relief sought.

41280819.6/022765.00213

Respectfully submitted,

Dated: October 27, 2023

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Marc N. Swanson
Marc N. Swanson (P71149)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com
Attorneys for the City of Detroit

3

41280819.6/022765.00213

# UNITED STATES DISTRICT COURT
## EASTERN DISTRIC OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| Mark Craighead,<br><br>      Plaintiff,<br><br>v.<br><br>City of Detroit, Detective Moises Jimenez, Commander James Tolbert, Detective Kurtiss Staples, Sgt. Eddie Croxton, Officer Alma Hughes-Grubbs, and Other as-of-yet Unknown Employees of the City of Detroit,<br><br>      Defendants. | Civil Action No. 23-11547<br><br>Judge Judith E. Levy<br>Magistrate Judge Elizabeth A. Stafford |

**Miller, Canfield, Paddock and Stone, P.L.C.**
*Attorneys for Defendant City of Detroit*
Marc N. Swanson (P71149)
Ronald A. Spinner (P73198)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com
spinnner@millercanfield.com

**Seward Henderson PLLC**
*Attorneys for Defendants James Fisher and Barbara Simon*
T. Joseph Seward (P35095)
210 East 3rd Street, Suite 212
Royal Oak, Michigan 48067
Telephone: (248) 733-3580
Facsimile: (248) 733-3633
jseward@sewardhenderson.com

**Loevy & Loevy**
*Attorneys for Plaintiff*
Arthur Loevy
Jon Loevy
Rachel Brady
Russell Ainsworth
Megan Colleen Pierce
311 North Aberdeen
3rd Floor
Chicago, IL 60607
Telephone: 312-243-5900
Facsimile: 312-243-5902
arthur@loevy.com
jon@loevy.com
brady@loevy.com
russell@loevy.com
megan@loevy.com

**BRIEF IN SUPPORT OF**
**THE CITY OF DETROIT'S MOTION TO (A) DISMISS IN LIEU OF AN**
**ANSWER, AND (B) STAY LAWSUIT UNTIL BANKRUPTCY COURT**
**ENTERS A FINAL ORDER ON THE CITY OF DETROIT'S MOTION FOR**
**THE ENTRY OF AN ORDER ENFORCING THE BAR DATE ORDER**
**AND CONFIRMATION ORDER AGAINST MARK CRAIGHEAD**

## TABLE OF CONTENTS

ISSUES PRESENTED ........................................................................ II

CONTROLLING AUTHORITY ...................................................... III

TABLE OF AUTHORITIES ........................................................... IV

I.    INTRODUCTION ................................................................... 1

II.   STATEMENT OF FACTS ...................................................... 2

      A.  THE CITY'S BANKRUPTCY CASE .......................................... 2

      B.  CRAIGHEAD'S LAWSUIT AGAINST THE CITY ...................... 5

      D.  CRAIGHEAD RETAINS THE MICHIGAN INNOCENCE CLINIC ............. 11

      E.  CRAIGHEAD'S SECOND APPEAL ........................................ 12

      F.  CRAIGHEAD'S THIRD APPEAL ........................................... 13

      G.  CRAIGHEAD OBTAINS COMPENSATION UNDER WICA .................... 14

      H.  THE MOTION TO ENFORCE IS FILED IN THE BANKRUPTCY CASE .......... 14

III.  STANDARD OF REVIEW ................................................... 15

      A.  LEGAL STANDARD FOR A MOTION TO DISMISS ................... 15

      B.  LEGAL STANDARD FOR A MOTION TO STAY PROCEEDINGS ........... 15

IV.   LAW AND ARGUMENT .................................................... 16

      A.  THE CITY SHOULD BE DISMISSED WITH PREJUDICE BECAUSE THE
          PLAINTIFF'S CLAIMS WERE DISCHARGED AND BARRED BY THE
          CONFIRMATION ORDER AND BAR DATE ORDER ............................. 16

      B.  ANY CLAIM AGAINST THE CITY IS BARRED BECAUSE OF PLAINTIFF'S AWARD
          UNDER MICHIGAN'S WRONGFUL IMPRISONMENT COMPENSATION ACT
          ("WICA") ............................................................... 20

      C.  ANY CLAIM AGAINST THE CITY IS BARRED BY SOVEREIGN IMMUNITY .......... 21

      D.  THE INTRACORPORATE CONSPIRACY DOCTRINE BARS PLAINTIFF'S CIVIL
          CONSPIRACY CLAIMS ...................................................... 23

      E.  ANY CLAIM FOR PUNITIVE DAMAGES AGAINST THE CITY SHOULD BE
          DISMISSED WITH PREJUDICE ............................................... 23

      F.  THIS LAWSUIT SHOULD BE STAYED UNTIL A FINAL ORDER IS ENTERED ON
          THE MOTION TO ENFORCE ................................................. 24

V.    CONCLUSION ....................................................................... 24

## <u>ISSUES PRESENTED</u>

I.     Whether Plaintiff's claims against the City of Detroit should be dismissed because they were discharged, barred, and enjoined by the Confirmation Order and Bar Date Order in the City of Detroit's Bankruptcy Case?

City of Detroit states "Yes," Plaintiff states "No"

II.    Whether Plaintiff's claims against the City of Detroit should be dismissed with prejudice because Craighead accepted an award under Michigan's Wrongful Imprisonment Compensation Act?

City of Detroit states "Yes," Plaintiff states "No"

III.   Whether Plaintiff's claims against the City of Detroit should be dismissed with prejudice because Craighead's claims are barred by sovereign immunity?

City of Detroit states "Yes," Plaintiff states "No"

IV.    Whether Plaintiff's claims against the City of Detroit should be dismissed with prejudice under the intracorporate conspiracy doctrine?

City of Detroit states "Yes," Plaintiff states "No"

V.     Whether any claims Plaintiff may assert against the City of Detroit for punitive damages should be dismissed with prejudice?

City of Detroit states "Yes," Plaintiff states "No"

VI.    Whether this lawsuit should be stayed until the Bankruptcy Court enters a final order on the Motion to Enforce?

City of Detroit states "Yes," Plaintiff states "No"

41280819.6/022765.00213

## CONTROLLING AUTHORITY

| Issue | Cases |
|---|---|
| I | *In re City of Detroit, Mich.*,<br>    548 B.R. 748 (Bankr. E.D. Mich. 2016)<br><br>*In re City of Detroit, Mich.*,<br>    642 B.R. 807 (Bankr. E.D. Mich. 2022)<br><br>*Sanford v. City of Detroit*,<br>    No. 17-13062, 2018 WL 6331342 (E.D. Mich. Dec. 4, 2018) |
| II | *Clark v. Abdallah*,<br>    No. 21-10001, 2023 WL 4851410 (E.D. Mich. July 28, 2023)<br><br>*DeJesus v. Harvey*,<br>    No. 22-CV-12879, 2023 WL 4372682 (E.D. Mich. July 6, 2023) |
| III | *Tzatzken v. City of Detroit*,<br>    198 N.W. 214, 215 (Mich. 1924) |
| IV | *Amadasu v. The Christ Hosp.*,<br>    514 F.3d 504 (6th Cir. 2008) |
| V | *City of Newport v. Fact Concerts, Inc.*,<br>    453 U.S. 247 (1981) |
| VI | *Ohio Envtl. Council v. U.S. Dist. Court*,<br>    565 F.2d 393 (6th Cir. 1977) |

41280819.6/022765.00213

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amadasu v. The Christ Hosp.*,
514 F.3d 504 (6th Cir. 2008) ...............................................................23

*Burton v. Sanders*,
No. 20-11948, 2021 WL 168543 (E.D. Mich. Jan. 1, 2021) .......................17, 18

*In re City of Detroit, Mich.*,
548 B.R. 748 (Bankr. E.D. Mich. 2016)................................................16, 17, 18

*In re City of Detroit, Mich.*,
642 B.R. 807, 810 (Bankr. E.D. Mich. 2022)....................................19

*City of Newport v. Fact Concerts, Inc.*,
453 U.S. 247 (1981)...........................................................................23, 24

*Clark v. Abdallah, No. 21-10001*,
*2023 WL 4851410* (E.D. Mich. July 28, 2023)..................................21

*Deering v. Oakland Cnty.*,
No. 22-CV-11809, 2023 WL 5808831 (E.D. Mich. Sept. 7, 2023) ..................21

*DeJesus v. Harvey*,
No. 22-CV-12879, 2023 WL 4372682 (E.D. Mich. July 6, 2023)....................21

*English v. Wooten*,
No. 19-cv-12463, 2020 WL 871287 (E.D. Mich. Feb. 21, 2020) ......................16

*Gunther v. Bd. of Rd. Comm'rs of Cheboygan Cnty.*,
225 Mich. 619, 196 N.W. 386 (1923)..................................................22

*Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*,
926 F.2d 505 (6th Cir. 1991) ................................................................23

*Jackson v. City of Columbus*,
194 F.3d 737 (6th Cir. 1999) ...............................................................23

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936).............................................................................15

*McMillian v. Monroe Cnty., Ala.*,
  520 U.S. 781 (1997) ......................................................................21

*Mobley v. City of Detroit*,
  938 F. Supp. 2d 688 (E.D. Mich. 2013) ........................................16

*Monson v. City of Detroit*,
  No. 18-10638, 2019 WL 1057306 (E.D. Mich. Mar. 6, 2019)....................17, 18

*Ohio Envtl. Council v. U.S. Dist. Court*,
  565 F.2d 393 (6th Cir. 1977) ........................................................16

*People of the State of Michigan v. Mark T. Craighead*,
  No. 243856..........................................................................................7

*People of the State of Michigan v. Mark T. Craighead*,
  No. 301465........................................................................................12

*People v. Craighead*,
  477 Mich. 1124, 730 N.W.2d 245 (2007) .....................................11

*People v. Craighead*,
  No. 243856, 2005 WL 3500831 (Mich. Ct. App. Dec. 22, 2005)............9, 10, 11

*People v. Craighead*,
  No. 356393, 2021 WL 5027978 (Mich. Ct. App. Oct. 28, 2021),
  *appeal denied*, 509 Mich. 974, 972 N.W.2d 845 (2022) .............................11, 14

*People v. McDaniel*,
  No. 234028, 2002 WL 31949867 (Mich. Ct. App. Dec. 3, 2002),
  *rev'd on other grounds*, 670 N.W.2d 659 (Mich. 2003) ..................................22

*Pusey v. City of Youngstown*,
  11 F.3d 652 (6th Cir. 1993) ...........................................................22

*Reyes-Trujillo v. Four Star Greenhouse, Inc.*,
  513 F. Supp. 3d 761 (E.D. Mich. 2021) ........................................15

*Sanford v. City of Detroit*,
  No. 17-13062, 2018 WL 6331342 (E.D. Mich. Dec. 4, 2018)....................17, 18

*Taxpayers for Michigan Const. Gov't v. Dep't of Tech., Mgmt. & Budget*,
  972 N.W.2d 738 (Mich. 2021)........................................................20

- v-

*Temrowski v. Kent*,
   No. 352207, 2021 WL 4142739 (Mich. Ct. App. Sept. 9, 2021) .......................23

*Tzatzken v. City of Detroit*,
   198 N.W. 214 (Mich. 1924).............................................................................21, 22

**Statutes**

Mich. Comp. Laws §691.1752(e) .............................................................................20

Mich. Comp. Laws §691.1755(8).............................................................................20

**Court Rules**

Fed. R. Civ. P. 12(b)(6)..............................................................................21, 23, 24

41280819.6/022765.00213

## I.    INTRODUCTION

Plaintiff Mark Craighead's ("Plaintiff" or "Craighead") claims against the City of Detroit ("City") should be dismissed with prejudice because they were discharged, barred, and enjoined by City's bankruptcy plan, the order confirming the plan, and the order requiring all creditors to file proofs of claim in the City's bankruptcy case.  For years before the City filed for bankruptcy, including during his trial in 2002 and in subsequent appeals Plaintiff proclaimed his innocence.  Yet, even though all of these actions were taken prior to the City's bankruptcy filing, Plaintiff failed to file a proof of claim in the City's bankruptcy case.  As a result, Plaintiff fails to state a claim upon which relief may be granted because his claims against the City have been discharged.

Additionally, Plaintiff fails to state a claim upon which relief may be granted because (1) he accepted an award under Michigan's Wrongful Imprisonment Compensation Act, barring the relief he now seeks; (2) his claims are barred by sovereign immunity; (3) his civil conspiracy claim is barred by the intracorporate conspiracy doctrine; and (4) his punitive damage claims cannot be asserted against the City because it is a municipality.

Alternatively, the City requests that this Court stay this lawsuit until the bankruptcy court adjudicates a motion the City filed in the bankruptcy court to enforce the bankruptcy court's orders against Craighead.

## II.    STATEMENT OF FACTS

### A.    The City's Bankruptcy Case

On July 18, 2013 ("Petition Date"), the City filed a chapter 9 bankruptcy case in the United States Bankruptcy Court for the Eastern District of Michigan ("Bankruptcy Court"), commencing case number 13-53846 ("Bankruptcy Case"). On October 10, 2013, the City filed its *Motion Pursuant to Section 105, 501 and 503 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3003(c), for Entry of an Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof* ("Bar Date Motion") [Bankr. Case Doc. No. 1146], which was approved by order of this Court on November 21, 2013 ("Bar Date Order"). [Bankr. Case Doc. No. 1782].  The Bar Date Order is attached as **Exhibit 1**.

The Bar Date Order established February 21, 2014, as the deadline for filing claims against the City.  Paragraph 6 of the Bar Date Order states that the

> following entities must file a proof of claim on or before the Bar Date…any entity: (i) whose prepetition claim against the City is not listed in the List of Claims or is listed as disputed, contingent or unliquidated; and (ii) that desires to share in any distribution in this bankruptcy case and/or otherwise participate in the proceedings in this bankruptcy case associated with the confirmation of any chapter 9 plan of adjustment proposed by the City…

Bar Date Order ¶ 6. Paragraph 22 of the Bar Date Order also provides that:

> Pursuant to sections 105(a) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(2), any entity that is required to file a proof of claim in this case pursuant to the Bankruptcy Code, the Bankruptcy Rules or this Order with respect to

2

a particular claim against the City, but that fails properly to do so by the applicable Bar Date, shall be forever barred, estopped and enjoined from: (a) asserting any claim against the City or property of the City that (i) is in an amount that exceeds the amount, if any, that is identified in the List of Claims on behalf of such entity as undisputed, noncontingent and liquidated or (ii) is of a different nature or a different classification or priority than any Scheduled Claim identified in the List of Claims on behalf of such entity (any such claim under subparagraph (a) of this paragraph being referred to herein as an "Unscheduled Claim"); (b) voting upon, or receiving distributions under any Chapter 9 Plan in this case in respect of an Unscheduled Claim; or (c) with respect to any 503(b)(9) Claim or administrative priority claim component of any Rejection Damages Claim, asserting any such priority claim against the City or property of the City.

Craighead did not file a proof of claim in the Bankruptcy Case.

On October 22, 2014, the City filed its *Eighth Amended Plan of the Adjustment of Debts of the City of Detroit* ("Plan"), which the Bankruptcy Court confirmed on November 12, 2014. [Bankr. Case Doc. Nos. 8045 & 8272]. The Confirmation Order (with the Plan attached as Appendix 1) is attached as **Exhibit 2**.

The discharge provision in the Plan provides:

Except as provided in the Plan or in the Confirmation Order, the rights afforded under the Plan and the treatment of Claims under the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims arising on or before the Effective Date. Except as provided in the Plan or in the Confirmation Order, Confirmation will, as of the Effective Date, discharge the City from all Claims or other debts that arose on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code,

whether or not (i) proof of Claim based on such debt is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (ii) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code or (ii) the Holder of a Claim based on such debt has accepted the Plan.

Plan, Art. III.D.4, at p.50.  Further, the Plan injunction set forth in Article III.D.5

of the Plan provides in pertinent part:

**Injunction**

**On the Effective Date, except as otherwise provided herein or in the Confirmation Order,**

**a.  all Entities that have been, are or may be holders of Claims against the City...shall be permanently enjoined from taking any of the following actions against or affecting the City or its property...**

**1.      commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against or affect the City of its property...**

**5.      proceeding in any manner in any place whatsoever that does not conform or comply with the provisions of the Plan or the settlements set forth herein to the extent such settlements have been approved by the Bankruptcy Court in connection with Confirmation of the Plan; and**

**6.      taking any actions to interfere with the implementation or consummation of the Plan.**

Plan, Article III.D.5, at pp.50-51 (emphasis supplied).

4

The Bankruptcy Court also retained jurisdiction to enforce the Plan injunction and to resolve any suits that may arise in connection with the consummation, interpretation, or enforcement of the Plan.  Plan, Art. VII.F, G, I, at p.72.

## B.    Craighead's lawsuit against the City

On August 31, 2023, Craighead filed a complaint ("Complaint") against the City and four named police officers and other unidentified employees of the Detroit Police Department ("Defendant Officers") in their individual capacity, in the United States District Court for the Eastern District of Michigan ("District Court"), commencing case number 23-12243 ("Lawsuit").  Complaint ¶¶ 12-13, PageID.4.

In the Complaint, Craighead alleges that on June 27, 1997, Chole Pruett ("Pruett") had been shot four times in the torso and his body discovered in an apartment.  Complaint ¶ 14, PageID.5. Craighead asserts that he was working an overnight shift at Sam's Club Warehouse at the time of the murder and that he was interviewed in his home by Detroit police investigator Ronald Tate ("Investigator Tate") on August 29, 1997, and cleared of having any responsibility for the crime. Complaint ¶¶18-19, PageID.5.

The Complaint states that in June 2000, a new team of investigators took on the case and, at that time, Lieutenant Jackson and Investigator Fisher came to Craighead's home and told him that he needed to come to the police station to answer questions about Pruett's death.  Complaint ¶¶ 22-26, PageID.6.

5

Craighead further alleges that Defendant Officer Simon suggested to Craighead that he had accidentally killed Pruett during an argument that turned into a struggle for a gun and the gun went off.  Complaint ¶ 101, PageID.16.  Defendant Simon allegedly told Craighead that if he told her that happened, that it could be considered self-defense, and she could help him by getting the charges reduced to avoid facing a life sentence.  *Id*.  She also allegedly told him that if he did so, he could bond out and the fight the charges outside of jail.  *Id.*

Further, Craighead states that after having no sleep for two days, being hungry, and having had his pleas for a lawyer and to leave ignored, he succumbed to the Defendants' efforts to coerce him to give a false confession, hoping he would be released to resolve the situation out of custody.  Complaint ¶ 103, PageID.16.  Instead, he was charged with murder.  Complaint ¶¶ 103-104, PageID.16.

Craighead states that prior to trial he moved to "suppress the police statement that Mr. Craighead adopted after being arrested at his home three years after the crime had occurred and being held incommunicado, despite his brother's presence at the police station."  **Exhibit 5**, Craighead 2002 Appeal Brief (as defined below), p.2.  The trial court, however, denied Craighead's request.  **Exhibit 5**, Craighead 2002 Appeal Brief, p.7.

Craighead's trial began in June 2002.  **Exhibit 3**, Docket of criminal trial, case number 00-007900, p.3.  Craighead asserts that at his trial in 2002 his defense "was

6

that the statement extracted by Barbara Simon was false and that he was at work at the Sam's Club in Farmington Hills the night Mr. Pruett was killed in Detroit." **Exhibit 7**, Craighead 2010 Appeal Application, p.3.

Craighead asserts that he was convicted based on fabricated evidence and that his false confession was used against him. Complaint ¶¶ 126-127, PageID.21. Craighead was found guilty in June 2002, and sentenced in August 2002. **Exhibit 7**, Craighead 2010 Appeal Application, p.1. Craighead asserts that he spent over seven years incarcerated for manslaughter, but he never gave up hope that he would someday be exonerated. Complaint ¶¶ 129-130, PageID.21.

### C.   Craighead's first appeal

After he was convicted, Craighead filed a motion for "new trial raising the issues of new evidence and misleading evidence with regard to the initial ruling on the Motion to Suppress Mr. Craighead's statement." **Exhibit 5**, Craighead 2002 Appeal Brief (as defined below), p.13; *see also* **Exhibit 3**, docket of criminal trial, case number 00-007900, p. 4. The motion was denied on May 17, 2005. *Id.* Following this ruling, Craighead filed a motion for reconsideration on June 13, 2005, which was also denied on June 27, 2005. *Id.*

On September 15, 2002, Craighead filed his first appeal, *People of the State of Michigan v. Mark T. Craighead*, No. 243856. *See* **Exhibit 4**, 2002 Appeal Docket. Craighead's brief on appeal is attached as **Exhibit 5** ("Craighead 2002

Appeal Brief"). Craighead requested that the Court of Appeals vacate his convictions or, in the alternative, reverse the convictions and remand for a "fair trial." Craighead 2002 Appeal Brief, p.13.

In the Craighead 2002 Appeal Brief, Craighead asserted that:

> Mr. Craighead did not kill Pruitt [sic] and did not know who had. In 1997, he was working the night shift at Sam's Club on June 26th and June 27th and the building was locked during the shift, as it always was, so he could not have left undetected. He did not tell the police that he shot Pruitt [sic] and only signed the statement because his interrogator, Barbara Simon, told him he would be in prison for the rest of his life if he did not sign it. After being arrested, held overnight and not being allowed contact with anyone, he felt he had no choice but to comply with the police.

Craighead 2002 Appeal Brief, p.2; *see also* p.12 ("Mr. Craighead did not kill Pruitt [sic] and did not know who had killed him.").

Craighead further emphasized that "[n]othing in the statement that Simon read was true. He signed the statement because he was broken down and Simon told him he would otherwise be there for the rest of his life." Craighead 2002 Appeal Brief, p.12.

On appeal, Craighead also argued that his federal and state constitutional rights against unreasonable searches and seizures were violated when he was arrested without a warrant or a showing of probable cause, and that his June 21, 2000, statement to the police was obtained as a result of the illegal arrest should have

been suppressed. *People v. Craighead*, No. 243856, 2005 WL 3500831, at *2 (Mich.

Ct. App. Dec. 22, 2005); Craighead 2002 Appeal Brief, pp. 14-22.

Craighead asserted claims against the City and its police officers in the

Craighead 2002 Appeal Brief:

> Unfortunately, the police conduct in this case was all too familiar and has been found to be blatantly illegal. This is borne out by two particular documents. The first is the June 5, 2002 letter to Corporation Counsel Ruth Carter from Steven H. Rosenbaum, Chief Special Litigation Section of the United States Attorney's Office. In the June 5th letter, Attorney Rosenbaum indicated that the Detroit Police Department:

>> **"defines an arrest as 'a taking of an individual into custody for further investigation,** booking or prosecution', **this policy implicitly permits the arrest of an individual with less than probable cause as a means to facilitate an investigation.** Indeed, some former DPD employees informed us that it was acceptable practice to arrest suspects without probable cause and then continue to investigate the case to develop probable cause prior to arraignment. **Gathering additional evidence after an arrest in order to establish probable cause for that arrest is unconstitutional. County of Riverside v McLaughlin,** 500 U.S. 44, 56 (1991)" (emphasis added) (Letter attached as Appendix D)

> The second location for an explanation is the Consent Judgment that Judge Julian Abele Cook entered, which required, among many other relevant requirements, that officers must be instructed "that the `possibility' that an **individual committed a crime does not rise to the level**

9

**of probable cause."** (emphasis added) The Consent Judgment further instructed that the officers be given:

> "examples of scenarios faced by DPD officers and interactive exercises that illustrate proper police-community interactions, including scenarios which distinguish an investigatory stop from an arrest by the scope and duration of the police interaction; **between probable cause, reasonable suspicion and mere speculation; and voluntary consent from mere acquiescence to police authority."** (emphasis added) (Consent Decree attached as Appendix E)

> The facts of this case bear out all too well the problems that were infecting the Detroit Police Department at the time of this investigation and which ultimately led to entry of the Consent Judgment. Officers Fisher and Jackson engaged in a textbook list of illegal tactics in order to extract an incriminating statement from Mr. Craighead because they believed, i.e., speculated that he was responsible for the shooting.

Craighead 2002 Appeal Brief, pp.15-16 (emphasis supplied).

Craighead asserted additional claims against the City later in his brief:

> The trial court further failed to take into account the circumstances surrounding the arrest. Officer Jackson admitted that the Detroit Police do not always obtain a warrant even when they have probable cause for an arrest. Jackson's statement underlies the problems besieging the Detroit police department and the citizens of the City whose rights are being trampled every day by a cavalier attitude toward the Constitution.

Craighead 2002 Appeal Brief, p. 20.

The appeals court disagreed with Craighead's arguments. *People v.*

10

*Craighead*, No. 243856, 2005 WL 3500831, at *2 (Mich. Ct. App. Dec. 22, 2005). Further, the appeals court found that, given the circumstances, the trial court did not clearly err when it found that defendant knowingly and voluntarily waived his Miranda rights and affirmed the lower court in its opinion dated December 22, 2005. *Id.*

Craighead sought leave to appeal to the Michigan Supreme Court, but leave was denied on May 2, 2007, in docket no. 130450. *People v. Craighead*, 477 Mich. 1124, 730 N.W.2d 245, 246 (2007).

### D.     Craighead retains the Michigan Innocence Clinic

In December 2009, Craighead, represented by the Michigan Innocence Clinic, filed his initial motion for relief from judgment, asserting that he was entitled to relief from judgment based upon newly discovered evidence, which consisted of telephone records from Sam's Club in Farmington Hills in June 1997 that purportedly established that he made four telephone calls from inside of the locked store on the night of Pruett's death such that he could not have killed Pruett. *People v. Craighead*, No. 356393, 2021 WL 5027978, at *1 (Mich. Ct. App. Oct. 28, 2021), *appeal denied*, 509 Mich. 974, 972 N.W.2d 845 (2022); **Exhibit 7**, Craighead 2010 Appeal Application, p.11.   After an evidentiary hearing, the trial court denied Craighead's motion, reasoning that defendant failed to present credible evidence that he was the one who made telephone calls from inside the locked store on the night

of Pruett's death such that there was no reasonable probability that the evidence would have affected the outcome of defendant's jury trial. *Id.* The trial court's ruling is set forth on pp.6-8 of the Plaintiff-Appellee's Brief in Opposition to Defendant's Delayed Application for Leave to Appeal, **Exhibit 8**.

### E. Craighead's second appeal

On December 6, 2010, Craighead filed another appeal. *People of the State of Michigan v. Mark T. Craighead*, No. 301465. *See* **Exhibit 6,** 2010 Appeal Docket. Craighead's Delayed Application for Leave to Appeal is attached as **Exhibit 7** ("Craighead 2010 Appeal Application."). In the 2010 appeal, Craighead was represented by the University of Michigan Innocence Claim and attorney Bridget McCormack, who later became the Chief Justice of the Michigan Supreme Court. *See* Craighead 2010 Appeal Application, cover page.

In the 2010 appeal, Craighead asserted that "[i]n light of the compelling newly discovered evidence of Mr. Craighead's innocence, and the near certainty that this evidence would have led to a different outcome at trial, Mr. Craighead asks this Court grant this application for leave to appeal . . . and order a new trial in this case." Craighead 2010 Appeal Application, p.vii. Craighead also plainly alleges that he "served more than seven years in prison for a crime that he did not commit." Craighead 2010 Appeal Application, p.1.

The alleged newly discovered evidence was "phone records newly discovered by the Michigan Innocence Clinic" which allegedly "establish that Mr. Craighead made a telephone call from Sam's Club to his friend . . . just eight minutes before Mr. Pruett's truck was discovered by police, engulfed in flames, in a vacant lot behind an elementary school in Redford Township."   Craighead 2010 Appeal Application, pp.1-2; *see also* Craighead 2010 Appeal Application, pp. 4, 7-11.

Based on the new evidence, Craighead asked the court to reverse the trial court's denial of a motion for relief from judgment and order a new trial where the phone records could be presented to a jury.  **Exhibit 9**, Reply Brief in Support of 2010 Application for Leave to Appeal, pp.8-9.  Leave to appeal was denied by the appeals court on November 22, 2011, based on Craighead's failure to meet the burden for establishing an entitlement to relief under court rules.  *See* **Exhibit 10**, November 22, 2011, Court of Appeals Order.

Craighead sought appeal to the Michigan Supreme Court, but on October 15, 2012, the Supreme Court agreed with the court of appeals and denied his application for leave to appeal for the same reason.   Craighead then further sought reconsideration by the Supreme Court and reconsideration was denied on January 25, 2013, in docket no. 144415.  **Exhibit 11,** October 5, 2012, and January 25, 2013, Supreme Court Orders.

F.     **Craighead's third appeal**

13

On February 24, 2020, Craighead filed another motion for relief from judgment in the trial court which was ultimately granted on February 4, 2021. *See People v. Craighead*, No. 356393, 2021 WL 5027978, at *1 (Mich. Ct. App. Oct. 28, 2021), *appeal denied*, 509 Mich. 974, 972 N.W.2d 845 (2022). This was the third appeal arising out of the shooting death of Chole Pruett on or about June 27, 1997. With the continuing assistance of the Michigan Innocence Clinic, on June 1, 2023, Craighead asserts that he was awarded a Certificate of Innocence. Complaint ¶¶ 131-32, PageID.21.

### G.    Craighead obtains compensation under WICA

In August 2022, Plaintiff filed a complaint in the Michigan Court of Claims for compensation under Michigan's Wrongful Imprisonment Compensation Act ("WICA"). **Exhibit 15**, Register of Actions. A stipulated order of judgment was entered on June 1, 2023. **Exhibit 15**, Register of Actions.

### H.    The Motion to Enforce is filed in the Bankruptcy Case

On October 27, 2023, the City filed its *Motion for the Entry of an Order Enforcing the Bar Date Order and Confirmation Order Against Mark Craighead* ("Motion to Enforce") in the Bankruptcy Case. The Motion to Enforce (without exhibits as they are duplicative of the exhibits to this Motion) is attached as **Exhibit 12**. In the Motion to Enforce, the City requests that the Bankruptcy Court enter an order requiring Craighead to dismiss, or cause to be dismissed, with prejudice the

City from this lawsuit because the claims asserted in this lawsuit are discharged,

barred, and enjoined by the Confirmation Order and the Bar Date Order.

## III.   STANDARD OF REVIEW

### A.   Legal standard for a motion to dismiss

As this Court has held:

> When deciding a motion to dismiss under Federal Rule of
> Procedure 12(b)(6), the Court must "construe the
> complaint in the light most favorable to the plaintiff and
> accept all allegations as true." *Keys v. Humana, Inc.*, 684
> F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to
> dismiss, a complaint must contain sufficient factual
> matter, accepted as true, to 'state a claim to relief that is
> plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,
> 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell
> Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct.
> 1955, 167 L.Ed.2d 929 (2007)).  A plaintiff's claim is
> facially plausible "when the plaintiff pleads factual
> content that allows the court to draw the reasonable
> inference that the defendant is liable for the misconduct
> alleged." *Id.*  A plausible claim need not contain "detailed
> factual allegations," but it must contain more than "labels
> and conclusions" or "a formulaic recitation of the elements
> of a cause of action." *Twombly*, 550 U.S. at 555, 127 S.Ct.
> 1955.

*Reyes-Trujillo v. Four Star Greenhouse, Inc.*, 513 F. Supp. 3d 761, 778 (E.D. Mich.

2021).

### B.   Legal standard for a motion to stay proceedings

"[T]he power to stay proceedings is incidental to the power inherent in every

court to control the disposition of the causes on its docket with economy of time and

effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248,

254 (1936); *see also Ohio Envtl. Council v. U.S. Dist. Court*, 565 F.2d 393, 396 (6th

Cir. 1977) (quoting *Landis*); *English v. Wooten*, No. 19-cv-12463, 2020 WL 871287,

at \*2 (E.D. Mich. Feb. 21, 2020) (quoting *Ohio Envtl. Council*).

> It is within the Court's sound discretion whether to grant a stay of proceedings. *Ohio Environmental Council v. United States District Court*, 565 F.2d 393, 396 (6th Cir. 1977). The "burden is on the party seeking the stay to show that there is pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order." *Id.*

*Mobley v. City of Detroit*, 938 F. Supp. 2d 688, 690 (E.D. Mich. 2013).

## IV.   LAW AND ARGUMENT

### A.   The City should be dismissed with prejudice because the Plaintiff's claims were discharged and barred by the Confirmation Order and Bar Date Order

The City should be dismissed with prejudice from this lawsuit because

Craighead has failed to state a claim upon which relief can be granted as his claims

were discharged and barred by the Confirmation Order and Bar Date Order.  Under

the "fair contemplation" test, Craighead's claim arose before the City's bankruptcy

filing because, prior to the City's filing, Craighead "could have ascertained through

the exercise of reasonable due diligence that he had a claim" against the City.  *In re*

*City of Detroit, Mich.*, 548 B.R. 748, 763 (Bankr. E.D. Mich. 2016) (internal

quotation marks and citation omitted).  Indeed, for years before the City filed for

bankruptcy, during his trial and through two appeals, Craighead had been arguing

that he was innocent and that his confession was illegally obtained.

16

As the Bankruptcy Court explained:

> The Bankruptcy Code defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured...." 11 U.S.C. § 101(5). "Congress intended by this language to adopt the broadest available definition of 'claim,'" *Johnson v. Home State Bank,* 501 U.S. 78, 83, 111 S. Ct. 2150, 115 L.Ed.2d 66 (1991) (citations omitted), which includes "'all legal obligations of the debtor, no matter how remote or contingent.'" *In re Huffy Corp.,* 424 B.R. 295, 301 (Bankr. S.D. Ohio 2010) (quoting *Grady v. A.H. Robins Co., Inc.,* 839 F.2d 198, 200 (4th Cir.1988)). This broad definition serves the two primary goals of bankruptcy: to ensure that all creditors are treated equitably and to secure a fresh start for the debtor. As the *Huffy* court put it, "a broad definition of claim allows a bankruptcy court to deal fairly and comprehensively with all creditors in the case and, without which, a debtor's ability to reorganize would be seriously threatened by the survival of lingering remote claims and potential litigation rooted in the debtor's prepetition conduct." 424 B.R. at 301.

*City of Detroit, Mich.*, 548 B.R. at 761.

This Court and the Bankruptcy Court have applied the "fair contemplation" test to determine when a claim arises. *Sanford v. City of Detroit*, No. 17-13062, 2018 WL 6331342, at *5 (E.D. Mich. Dec. 4, 2018); *see also Monson v. City of Detroit*, No. 18-10638, 2019 WL 1057306 at *8-9 (E.D. Mich. Mar. 6, 2019); *Burton v. Sanders*, No. 20-11948, 2021 WL 168543, at *4-6 (E.D. Mich. Jan. 1, 2021). "Under this test, a claim is considered to have arisen pre-petition if the creditor

17

'could have ascertained through the exercise of reasonable due diligence that it had

a claim' at the time the petition is filed. *City of Detroit*, 548 B.R. at 763.

      For bankruptcy purposes, this Court and the Bankruptcy Court agree that a

claim for a wrongful conviction does not accrue when the conviction is vacated.

Instead, it arises when the claim first enters into the plaintiff's fair contemplation.

In *Sanford*,[1] this Court noted:

> It must be said here that all Sanford's claims against the
> City were within his "fair contemplation" before the City
> declared bankruptcy. He certainly contemplated the
> factual bases underlying the claims raised in the
> complaint, since he attempted repeatedly to argue actual
> innocence before the state courts since at least 2008,
> insisting that his confession was falsely obtained,
> concocted, and coerced. Sanford correctly points out that
> he could not have sued the City until his convictions were
> set aside, which did not happen until after the bankruptcy.
> But the courts that have considered the question uniformly
> have concluded that claims based on prepetition malicious
> prosecutions were barred, notwithstanding that the
> plaintiff could not file suit on his claims until his criminal
> conviction was overturned.

*Sanford*, 2018 WL 6331342, at *5; *see also Monson*, 2019 WL 1057306 at *8-9;

*Burton*, 2021 WL 168543, at *4-6.

      In each of the above-cited cases, the Plaintiff asserted a claim for a wrongful

conviction which had occurred prior to the City's bankruptcy filing. And, in each

---

[1] Plaintiff's counsel should be aware of the holding issued by the *Sanford* court, as
Goodman & Hurwitz, P.C. is listed as representing the plaintiff in that lawsuit.

case, this Court held that the Plaintiff failed to state a claim against the City upon which relief could be granted.

This issue has also arisen repeatedly in the City's Bankruptcy Case. *In re City of Detroit, Mich.*, 642 B.R. 807, 810 (Bankr. E.D. Mich. 2022); Bankruptcy Case, Doc. Nos. 11159, 11296 (motion and resulting order attached as **Exhibit 13**); Doc. Nos. 13000, 13025 (motion, resulting order, and transcript attached as **Exhibit 14**); Doc. Nos. 13691, 13751 (motion, resulting order, and transcript attached as **Exhibit 15**).   Similar to this Court, the Bankruptcy Court recognized in each instance that, because the events that gave rise to the asserted claim occurred prepetition, the claimant was able to (or should have been able to) contemplate that he had potential claims against the City and, accordingly, file a proof of claim in the City's Bankruptcy Case if he wished to participate in the case and recover on the claim.

The instant situation is no different.  Craighead's lawsuit is based on claims stemming from actions that culminated in a conviction in 2002.  There are numerous instances of Craighead asserting the same types of claims that are raised in the Complaint in public court filings prior to the City's bankruptcy filing.  In both the Complaint and in his public court filings, appeals and arguments prior to the City's bankruptcy case, Craighead claims he is innocent, that his confession was illegally obtained, and that the Detroit police engaged in illegal tactics. *Compare* Complaint, ¶¶ 138-51,  PageID.23-PageID.26;  Complaint,  ¶¶  158-64,  PageID.28-PageID.30;

Complaint, ¶¶ 189-97, PageID.36-PageID.39 and Craighead 2002 Appeal Brief, pp. 2, 15-16, 20; Craighead 2010 Appeal Application, pp.1-2. In short, not only could Craighead fairly contemplate the claims in the complaint prior to the City's bankruptcy case, he wrote and argued them repeatedly in public court filings and arguments.

Thus, as this Court and the Bankruptcy Court have held each time this issue has been before them, Craighead should have filed a proof of claim in the City's Bankruptcy Case if he wanted to assert a claim against the City. He did not. His claims were discharged by the Plan and Confirmation Order. He is barred, estopped, and enjoined from asserting any claim against the City or property of the City under the Bar Date Order and Confirmation Order. Consequently, the City (and any claims against the individual Defendant officers in their official capacity) should be dismissed with prejudice from this lawsuit.

**B.** **Any claim against the City is barred because of Plaintiff's award under Michigan's Wrongful Imprisonment Compensation Act ("WICA")**

An award or settlement under Michigan's WICA statute "constitutes a complete release of all claims against this state." Mich. Comp. Laws §691.1755(8). The term "this state" means "the state of Michigan and its political subdivisions." Mich. Comp. Laws §691.1752(e). A political subdivision of the state includes cities. See *Taxpayers for Michigan Const. Gov't v. Dep't of Tech., Mgmt. & Budget*, 972

N.W.2d 738, 750 (Mich. 2021) ("political subdivision" is a "geographically limited unit of government formed to exercise political power and that is beholden to a local electorate").

As such, any civil claim against a city is released when the plaintiff accepts an award or settlement under WICA. *See Clark v. Abdallah, No. 21-10001, 2023 WL 4851410* (E.D. Mich. July 28, 2023); *DeJesus v. Harvey*, No. 22-CV-12879, 2023 WL 4372682, at *1 (E.D. Mich. July 6, 2023); *Deering v. Oakland Cnty.*, No. 22-CV-11809, 2023 WL 5808831, at *3 (E.D. Mich. Sept. 7, 2023).

Here, a stipulated order of judgment was entered in Plaintiff's WICA case in June 2023. **Exhibit 15**, WICA ROA. Any claim he has against the City of Detroit is now released under WICA, making dismissal appropriate under Fed. R. Civ. P. 12(b)(6).

### C.    Any Claim against the City is barred by Sovereign Immunity

Whether the City is an arm of the state depends on if it represents the State or City when acting "in a law enforcement capacity." *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 785 (1997). The answer to this "is dependent on an analysis of state law" that defines "the official's functions." *Id.* (citation omitted). Under Michigan law, police officers "do not act for the municipality in its proprietary character, but for the state in its sovereign capacity." *Tzatzken v. City of Detroit*, 198 N.W. 214,

215 (Mich. 1924). In this capacity, an officer in Michigan carries, "in the absence of statute to the contrary, the immunity of the sovereign." *Id.*

Accordingly, a municipality "is an arm of the state" in this scenario and "is not liable for the torts of its officers performed in the discharge of a duty of sovereignty." *Id.*; *see also People v. McDaniel*, No. 234028, 2002 WL 31949867, at *3 (Mich. Ct. App. Dec. 3, 2002), *rev'd on other grounds*, 670 N.W.2d 659 (Mich. 2003) (Police crime lab acts as arm of the state "in assisting it to prevail in litigation and secure a conviction of the defendant."); *Gunther v. Bd. of Rd. Comm'rs of Cheboygan Cnty.*, 225 Mich. 619, 622, 196 N.W. 386, 387 (1923) (noting duties "for the benefit and protection of the entire population," such as preserving the peace, are "exercised by the state as a part of its sovereignty.")

The Sixth Circuit has recognized state criminal laws "represent the policy of the state," *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993), granting sovereign immunity for county prosecutors when they enforce criminal laws. If county prosecutors are arms of the state when enforcing the state's criminal laws, it follows that local law enforcement is also an arm of the state when enforcing those laws. Plaintiff's claims all relate to his alleged wrongful prosecution and conviction, which was brought by the People of the State of Michigan. As such, any law enforcement actions related to that prosecution were also performed on behalf of the

People of the State of Michigan.  This makes sovereign immunity applicable, and dismissal appropriate under Fed. R. Civ. P. 12(b)(6).

**D.    The Intracorporate Conspiracy Doctrine bars Plaintiff's civil conspiracy claims**

The intracorporate conspiracy doctrine bars a civil conspiracy claim where the alleged co-conspirators are part of the same collective entity.  *See Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509-10 (6th Cir. 1991); *Amadasu v. The Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008); *Jackson v. City of Columbus*, 194 F.3d 737, 753 (6th Cir. 1999); *Temrowski v. Kent*, No. 352207, 2021 WL 4142739, at *7 (Mich. Ct. App. Sept. 9, 2021).

Plaintiff alleges that Defendants conspired to violate his constitutional rights. PageID.35-36, 42-43.  He identifies no alleged co-conspirator outside of City of Detroit employees.  This claim is properly dismissed under Fed. R. Civ. P. 12(b)(6) because the alleged co-conspirators are all part of the same collective entity – the City of Detroit.

**E.    Any claim for punitive damages against the City should be dismissed with prejudice**

The United States Supreme Court has held "that a municipality is immune from punitive damages under 42 U.S.C. §1983."  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).  Plaintiff claims punitive damages in his complaint.

PageID.22-23, 43.  Under *City of Newport*, any claim for punitive damages from the City of Detroit is properly dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### F.      This Lawsuit should be stayed until a final order is entered on the Motion to Enforce

If this Court should decide not to dismiss this case outright at this time, it should stay proceedings until the Bankruptcy Court has a chance to rule on the Motion to Enforce.  Should the Bankruptcy Court grant the Motion to Enforce, this Court will be better informed as to how to structure these proceedings as to the remaining defendants.  And, though the City does not expect this outcome, should the Motion to Enforce be denied, this Court will be able to advance this matter against all defendants in lockstep, rather than having pieces of the litigation proceed piecemeal.

## V.      CONCLUSION

The City respectfully requests that this Court dismiss the City (and any official capacity claims against any of the individual Defendant Officers) with prejudice from this lawsuit, or, in the alternative, enter an order staying this lawsuit until the Bankruptcy Court enters a final order on the Motion to Enforce, and grant such further relief as the Court may deem just and proper.

Dated: October 27, 2023                    Respectfully submitted,

                                          MILLER, CANFIELD, PADDOCK AND
                                          STONE, P.L.C.

                                          By: /s/ Marc N. Swanson
                                          Marc N. Swanson (P71149)
                                          Ronald A. Spinner (P73198)
                                          150 West Jefferson, Suite 2500
                                          Detroit, Michigan 48226
                                          Telephone: (313) 496-7591
                                          Facsimile: (313) 496-8451
                                          swansonm@millercanfield.com
                                          Attorneys for the City of Detroit

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 27, 2023, he electronically filed the foregoing and this Certificate of Service with the court using the Court's ECF system which will provide notice of the filing to all counsel of record on October 27, 2023.

By: /s/ Marc N. Swanson
Marc N. Swanson (P71149)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com

Dated:  October 27, 2023