**Exhibit 8**

**Plaintiff-Appellee's Brief in Opposition to
Defendant's Delayed Application for Leave to Appeal**

**STATE OF MICHIGAN**
**IN THE COURT OF APPEALS**

THE PEOPLE OF THE STATE OF MICHIGAN
               Plaintiff-Appellee,

v
                                          Court of Appeals
                                          No. 301465

MARK T. CRAIGHEAD,
               Defendant-Appellant.

Third Circuit Court No: 00-007900

**PLAINTIFF-APPELLEE'S BRIEF IN OPPOSITION TO**
**DEFENDANT'S DELAYED APPLICATION FOR LEAVE TO APPEAL**

KYM L. WORTHY
Prosecuting Attorney
County of Wayne

TIMOTHY A. BAUGHMAN
Chief of Research,
Training, and Appeals

JANET A. NAPP  (P-40633)
Assistant Prosecuting Attorney
11th Floor, 1441 St. Antoine
Detroit, Michigan  48226
Phone:  (313) 224-5741

RECEIVED by Michigan Court of Appeals 5/26/2011 2:39:52 PM

# TABLE OF CONTENTS

**PAGE**

Index of Authorities .................................................... ii

Statement of Jurisdiction ............................................... 1

Counterstatement of Questions Presented ................................ 2

Counterstatement of Facts ............................................. 3

Argument

I.

For a new trial to be granted on the basis of newly discovered
evidence, it must not be cumulative, the evidence itself, not
just its materiality, must be newly discovered, it must make a
different result probable on retrial, and could not have been
discovered with reasonable diligence. The records here are
merely newly available and do not prove what the purport to
prove. The evidence offered is not newly discovered ................ 9

Standard of Review .................................................... 9

Discussion ........................................................... 10

    a. The evidence is merely newly available, not newly discovered ................ 13
    b. The evidence is cumulative ............................................. 14
    c. The evidence, with reasonable diligence could have been discovered at trial ...... 15
    d. Whether a different result on retrial is likely cannot be determined on this record .. 15

Relief ............................................................... 16

RECEIVED by Michigan Court of Appeals 5/26/2011 2:39:52 PM

i

RECEIVED by Michigan Court of Appeals 5/26/2011 2:39:52 PM

## TABLE OF AUTHORITIES

### FEDERAL CASES

Kern v TXO Production Corp.,
   738 F.2d 968 (CA 8, 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Smith v United States,
   996 F.2d 1219 (CA 7, 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

United Staes v Glover,
   21 F.3d 133 (CA 6, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United States v Hawkins,
   969 F.2d 169 (CA 6, 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United States v McNeil,
   90 F.3d 298 (CA 8, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Turns,
   198 F.3d 584 (6th Cir.2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United States v Van Dreel,
   155 F.3d 902 (CA 7, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United Statess v DiBernardo,
   880 F.2d 1216 (CA 11, 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

### STATE CASES

People v Cress,
   468 Mich. 678 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

People v Johnson,
   451 Mich. 115 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

People v Miller,
   211 Mich. App. 30 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

People v Van Camp,
   354 Mich. 593 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

People v Williams,
    118 Mich. App. 266 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## DOCKETED CASES

People v Craighead,
    No. 243856 (Mich App, December 22, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## COURT RULES & EVIDENCE

MCR 7.212( c ) (6)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

RECEIVED by Michigan Court of Appeals 5/26/2011 2:39:52 PM

**STATEMENT OF JURISDICTION**

The People accept defendant's statement of jurisdiction

RECEIVED by Michigan Court of Appeals 5/26/2011 2:39:52 PM

1

**COUNTERSTATEMENT OF QUESTIONS PRESENTED**

I.

For a new trial to be granted on the basis of newly discovered evidence, it must not be cumulative, the evidence itself, not just its materiality, must be newly discovered, it must make a different result probable on retrial, and could not have been discovered with reasonable diligence. The records here are merely newly available and offer cumulative support to defense testimony that he was working when the crime occurred. Is this evidence newly discovered?

The People answer: NO.
Defendant answers: YES.

RECEIVED by Michigan Court of Appeals 5/26/2011 2:39:52 PM

## COUNTERSTATEMENT OF FACTS

The People accept only those portions of defendant's statement of facts that are in conformance with MCR 7.212(c)(6), which requires that "[a]ll material facts, both favorable and unfavorable, must be fairly stated without argument or bias." The People provide additions and/or corrections below and in the brief.[1]

Defendant states that he has served more than seven years for a crime that he did not commit. Defendant was convicted and his conviction was upheld by this court.[2]

Defendant refers to his confession as "alleged." (Defendant's brief, p 2). Defendant confessed. A Walker hearing was held in the trial court challenging the conviction. The confession was challenged on appeal. Defendant's conviction was affirmed.[3]

Attorney Steven Fishman testified that defendant never told him that he regularly made phone calls from Sam's Club when he was working. Fishman testified that had defendant told him, he would have asked him whether he made the calls from a land line, and if so would have subpoenaed the records from Wallmart. If stonewalled, he would have filed a motion in front of the trial court and had confidence the court would not have been happy that the records had not been turned over. Fishman testified that if the calls were made from a cell phone, he would have tried to find the records to show the calls were made. (EH, 6.30.10, 27-28).

---

[1]The People first note that the defendant has consistently confused this Statement of Facts for argument.

[2]*People v Craighead,* No. 243856 (Mich App, December 22, 2005).

[3]The confession is a fact in the case rather than an unproven allegation. Defendant makes a similar comment in footnote one of the same page, stating ". . .Mr. Craighead allegedly made this 'statement' to investigator Barbara Simon. . . ." Again, there is nothing "alleged" about the confession. The fact of the confession has been litigated and proven

3

RECEIVED by Michigan Court of Appeals 5/26/2011 2:39:52 PM

RECEIVED by Michigan Court of Appeals 5/26/2011 2:39:52 PM

The defendant testified that his regular shift at Sam's Club was a midnight shift. He worked from nine to five and on the weekends, which meant Friday, Saturday, and Sunday, he worked ten to six. Defendant testified that if June 26th was a Friday, he would have worked ten to six. Defendant believed that he worked on the night on June 26th. He testified that he worked the same days every week, Tuesday through Saturday. He had Sundays and Mondays off. (EH,6.30.10, 59-60).

Defendant testified that Sam's Club had a policy about locking employees in at night who worked the night shift. Defendant testified that they could not get out of the store unless they notified the manager, and he guessed that the manager had to notify the right people. A manager was able to unlock the doors to let someone out if necessary. He understood that a silent alarm would sound and he was told it went to Bentonville. The trial court suggested getting someone from Sam's Club who could testify as to what was going on at the time. (EH, 6.30.10, 60-67).

Defendant testified that he regularly called Ike Griffin from Sam's Club. Defendant testified he probably called Ike Griffen once or twice a month. He testified that he called his brother, Randall Craighead, one to three times a month. (TT, 6.30.10, 68-71).

Defendant agreed that he did not tell the investigator on August 29, 1997 that he was regularly making phone calls when he was working. Defendant testified that he did not tell Detective Tate when he was interviewed the second time that he had made phone calls from the customer service desk. Defendant testified that he told his attorney Val Newman that he had made calls from the customer service desk at Sam's Club and he thought that he gave her the phone numbers. He thought he told all his attorneys. Defendant testified that he gave Val Newman the same information that he gave to the Innocence Clinic–he told her he made the calls

4

and gave her some phone numbers. He did not know if he gave her the specific numbers at issue here. Defendant thought that Van Newman had done a great job for him, but was "probably" suing her for malpractice. He also sued Otis Culpepper, but not Steve Fishman or Stuart Freedman. (EH, 6.30.10, 80-83).

Isaac Griffin testified that he had specific recollections of talking to defendant in June, 1997. Griffin testified that he spoke to defendant every day. (EH, 6.30.10).

Mary Kay Miles, the Keeper of the Records for the Farmington Police Department admitted that she had personal knowledge that Sam's Club would actually call in alarms and had no idea whether Sam's Club followed their policies in that. regard. Miles testified that she searched no other dates than those she was given. (EH, 6.30.10, 38-39).

Randall Craighead recalled receiving phone calls from his brother when he was working the night shift at Sam's Club. He also testified that employees were locked in the store during their night shift and that a manager would have to let an employee out if they needed to leave. Craighead testified that a silent alarm would sound and the alarm went to Bentonville, Arkansas. To his knowledge, the alarm did not go to the police department. Craighead testified that he talked to defendant most nights but not every night. He later testified that defendant called him twice a week on the land line and cell phone. He could not specifically say that he spoke to him on those days. Craighead never went to the police with this information after defendant was charged. (EH, 6.30.10, 42-49).

The trial court issued its ruling:[4]

---

[4]The courts ruling bears precise quoting as to the issue pertaining to newly discovered evidence because defendant has misconstrued the ruling.

5

RECEIVED by Michigan Court of Appeals 5/26/2011 2:39:52 PM

RECEIVED by Michigan Court of Appeals 5/26/2011 2:39:52 PM

. . .I was unimpressed by the records. I had questions in my mind during trial when they tried to say, well, he was locked in. I still say to this day, common sense and everyday experience has taught me that people want to get out of someplace, they will. And then we've got employees who sign in for other people. So. . .

The jury didn't ask for phone records. The jury said, this man sits up here and claims he was at work.

Most of us have to sign in, sign out, swipe something. There's some kind of record. So they said, is there any proof that he was at work that day?

And what you try to present to me are these phone records, and claim that they prove that he was at work that day.

I listened very carefully, and I try to take very careful notes. But I asked my court reporter, since it has been sometime, to please type me a transcript of the testimony that we had before.

And I'm on page 45 of that transcript, and it deals with the testimony of Mr. Craighead's brother on page 45. And there was a question asked: "Mr. Craighead, do you have any recollection of talking to your brother on either June 26th or 27th of 1997?" Answer: "I talked to him most nights when he was working there. I couldn't tell you an exact date."

"So you regularly talked to him?" "Yes."

"So you talked almost every night?" Answer: "No, not every night."

"Question: "But almost? How many times a week did he call you?" Answer: "Maybe two or three times a week."

So I got the impression that he talked to him on a very regular basis. And he also had indicated he was upset about that because he's calling–he worked days, and his brother is calling him near midnight.

Now, I don't know what kind of brother relationship they had. But if I was calling my sister like that, she'd put an end to it. You know, I've got to go to sleep.

6

RECEIVED by Michigan Court of Appeals 5/26/2011 2:39:52 PM

But when I look at the records–because the first thing she put in were only records that showed two or three sheets of the phone records. Now I have examined the entire phone records, and I don't see any indication that any calls were made two or three times a week.

But what I did find that causes a problem in my mind was this June 10th, 3:24 p.m. telephone call to his brother. And his brother claims he doesn't know anybody else who could have called him. And people have tried to say, well, although Mr. Craighead, the defendant, claimed that he worked the night shift, either 6:00 to something, or 9:00 to something, or 10:00 to something–and now I'm hearing from the attorneys trying to testify, well, maybe he got called in. I don't know that. The prosecutor has pointed out on her records other calls.

And the other thing that's really kind of strange is when we get to Mr. Griffin, Mr. Griffin testified that he could call him anytime he wanted. And the calls to Mr. Griffin, like one minute, and then I only see one or two calls here. Oh, he called me all the time.

So, people are exaggerating, and I get uncomfortable when people exaggerate. I want to have confidence in what they're telling me that I can believe them.

* * *

If I had confidence that the evidence that the defendant presents me now actually shows that he made phone calls on the date and time in question, if I believe that, if I had the least bit of confidence in it, I would grant your motion, but I don't.

When I look through all these records, I don't see enough telephone calls. I listened to the people who talked, who testified on his behalf. They exaggerated. Or if they didn't exaggerate, he made all these telephone calls from his cellphone. And then, why wasn't I presented with cellphone records? If you all claim– although I didn't know anything about cellphones until you started talking about it. I don't know whether he had a cellphone or not.

So, you haven't sustained your burden to show me that this would actually show–first of all, I can't really say it's newly

discovered. Because I think if Steve Fishman had known about it, he would have found it. Okay?

But then beyond that, let's say that he got stonewalled or whatever, but does it actually show or would it cause a different result in this trial? And you've got a problem showing that he's the one who made these calls because you can't convince me of that. And I'm not going even beyond a reasonable doubt. If I thought there was a reasonable opportunity that he had been the one who made these, I'd go with him.

And therefore, the newly discovered evidence is not sufficient for me to grant you a new trial, and your motion is denied.

(EH, 7.14.10, 117-123).

RECEIVED by Michigan Court of Appeals 5/26/2011 2:39:52 PM

8

# ARGUMENT

## I.

**For a new trial to be granted on the basis of newly discovered evidence, it must not be cumulative, the evidence itself, not just its materiality, must be newly discovered, it must make a different result probable on retrial, and could not have been discovered with reasonable diligence. The records here are merely newly available and do not prove what the purport to prove. The evidence offered is not newly discovered**

Defendant claims entitlement to a new trial due to what he calls newly discovered evidence on a motion for relief from judgment. .

### *Standard of Review*

The People agree with defendant's standard of review. The standard of review is for an abuse of discretion. In the federal system, it is often stated that an abuse of discretion occurs:

- when a relevant factor that should have been given significant weight is not considered;

- when an irrelevant or improper factor is considered and given significant weight, or

- when all improper and no improper factors are considered, but the court in weighing those factors commits a clear error judgment, which does not mean that the appellate court simply substitutes its judgment for that of the trial court, but that the decision of the trial court is "not within the range of options from which one would expect a reasonable trial judge to select."

See *United States v Van Dreel*, 155 F3d 902 (CA 7, 1998); *Kern v TXO Production Corp.*, 738 F2d 968, 970 (CA 8, 1984); *United States v McNeil*, 90 F3d 298 (CA 8, 1996).

RECEIVED by Michigan Court of Appeals 5/26/2011 2:39:52 PM

RECEIVED by Michigan Court of Appeals 5/26/2011 2:39:52 PM

*Discussion*

For a new trial to be granted on the basis of newly discovered evidence, a defendant must show that (1) the evidence, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the defendant could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial. *People v Johnson,* 451 Mich 115, 118, n 6 (1996); *People v Cress,* 468 Mich 678 (2003); *People v Miller,* 211 Mich App 30 (1995). Courts generally disfavor motions for a new trial based on newly discovered evidence and, as a result, such motions should only be granted with caution. United States v. Turns, 198 F.3d 584, 586 (6th Cir.2000).

Defendant has the burden of showing that the evidence is both newly discovered and material. *People v Van Camp,* 354 Mich 593 (1959); *People v Williams,* 118 Mich App 266 (1982). A defendant cannot meet the burden that the evidence is newly discovered if he knew about the evidence at the time of trial. *United States v Hawkins,* 969 F 2d 169, 175 (CA 6, 1992); *United Statess v DiBernardo,* 880 F 2d 1216, 1224 (CA 11, 1989). The "key" to determining whether the evidence is "newly discovered" or only "newly available" is to ascertain when the defendant found out about the information he proposes is newly discovered. *United Staes v Glover,* 21 F 3d 133, 138 (CA 6, 1994). In *Glover,* the defendant was convicted of possessing cocaine with the intent to distribute. After trial, he filed a motion for new trial based on newly discovered evidence. In support of the motion, defendant submitted an affidavit from a witness who claimed to have placed the cocaine in def4ndant's kitchen stove where it was found by the police. This witness had claimed the Fifth Amendment at trial, refusing to testify. He only changed his mind after being separately convicted on a drug offense. The *Glover* court

10

denied the motion for new trial, holding that the defendant failed to show that the evidence "was discovered after trial" where he acknowledged that he was aware of the witness's testimony before trial. The court noted that while the testimony "may have been newly available, it was not in fact 'newly discovered evidence'. . ." *Id.,* at 138.

In *Smith v United States,* 996 F2d 1219 (CA 7, 1993), the defendant filed a motion for a new trial based on newly discovered evidence of three medical reports, which purportedly detailed his incompetency to stand trial. The claim was rejected, and the Seventh Circuit affirmed, noting that most of the information was not "newly discovered, " and defendant could not establish the materiality of his "new" evidence. The trial court already knew of defendant's diagnosed Bi-Polar Disorder and about his medication. The only new information was the diagnosis of "Possible Paranoid Schizophrenia," which was not material because it added little to the court's understanding of the defendant's competency, the court noting that judges base their decisions not on medical jargon, but on explanations of a defendant's symptoms, and the same symptoms were revealed previously.

Defendant has misrepresented the ruling of the Honorable Very Massey Jones by stating that

> The only reason Judge Jones gave for not being confident that Mr. Craighead made the phone calls in question is that the phone bill revealed that the same two phone numbers (Isaac Griffin's and Randle Craighead's) were called several times during other nights that month and, on one occasion, within minutes of each other at 1:37 p.m. and 1:38 p.m. on may 15, that is, during the day shift. . .But niether Mr. Craighead nor Mr. Ryzak ever testified that Mr. Craighead worked exclusively on the night shift, and it is hardly surprising that an employee who works night shifts would occasionally work a day shift as well."

11

RECEIVED by Michigan Court of Appeals 5/26/2011 2:39:52 PM

( Defendant's "Statement of Facts", p 13).

Defendant also makes a similar statement in his argument, at p 15.

The court's decision here was based on a lack of evidence presented by the defendant. Simply stated, the defense did not prove its entitlement to relief. Here, the real dilemma for defendant is that the trial court based its ruling on a number of factors. Those factors, that the defendant has conveniently ignored, included:

- Randall Craighead testified that he spoke to the defendant regularly, maybe two or three times a week. The court stated: "But when I looked at the records–because the first thing she put in were only records that showed two or three sheets of the phone records. Now I have examined the entire phone record, and I don't see any indication that any calls were made two or three times a week. (EH, 7.14.10, 119).

- The calls earlier in the day, including one at 3:24 p.m. The court noted that the prosecutor pointed out other calls also and rejected "the attorney's trying to testify" that defendant may have worked other shifts **because there was no evidence to substantiate that claim**. (Emphasis added). (EH, 7.14.10, 119-120).

- Isaac Griffin testified that defendant called him all the time. The records only showed that he called Griffin once or twice. (EH, 7.14.10, 120, 122).

- The defense witnesses were exaggerating, which made the trial court uncomfortable in terms of their credibility. (EH, 7.14.10, 120).

- The court had no confidence that the defendant made the calls on the date and time in question. (EH, 7.14.10, 122).

- If the defense witnesses were not exaggerating, the calls could have been made from a cellphone, and the court was not presented with any cellphone records. (EH, 7.14.10, 122).

- If trial counsel Fishman had known about the records, he would have found them. (EH, 7.14.10, 122).

Here, the defendant's "story" was that he worked the midnight shift. Not one word came

RECEIVED by Michigan Court of Appeals 5/26/2011 2:39:52 PM

out of defendant's mouth that gave any indication that he worked at any other time. So, under the defendant's theory, no other calls should have come out of Sam's Club at any other time because no one other than him could have made those calls. Yet, a number of calls were made during the day that defendant could not explain, and indeed, did not even notify the trial court of their existence. Additionally, the defendant and the defense witnesses grossly exaggerated the number of calls made, in direct contradiction to their own evidence.

### a. The evidence is merely newly available, not newly discovered

Evidence cannot be newly discovered if the defendant has knowledge of said evidence. This is knowledge that was uniquely within his personal knowledge and why he chose not to share that knowledge with trial counsel is incomprehensible. Here, at the very most, all the evidence defendant alleges to be newly discovered is merely newly available. He never told his trial counsel about the records. (EH, 6.30.10, 27-28).

Other than his self serving statements, there is no evidence that defendant made those phone calls. The records show only that the calls were made. We now know that calls were made when defendant was not working. We also know that defendant and his witnesses have exaggerated the number of calls. For example, Isaac Griffin, III in his affidavit stated "Mark and I often spoke on the phone and Mark would frequently call me during late night and early morning hours while he was working, either to chat or to discuss plans for the next day. . .I knew that Mark called me from his work at Sam's Club in Farmington Hills, Michigan. . . ." (Defendant's Exhibit H). Issac Griffen testified that he specifically recalled talking to defendant on the night in question. That testimony bordered on the perjuries and was certainly ludicrous–that he had "a lot of recollections" of talking to defendant in June, 1997. When asked

13

RECEIVED by Michigan Court of Appeals 5/26/2011 2:39:52 PM

what dates, his response was a lot of dates. He then said he spoke to him every day. (EH, 6.30.10, 109). Griffen and defendant were such great friends that they no longer talked after Griffen moved to Miami. (EH, 6.30.10, 113). The records do not support Griffen's testimony.

The FOIA request from the Farmington Hills police Department is similarly newly available. Moreover, the FOIA request and response show nothing pertaining to this case. The FOIA response only denies the request because "[T]he records you have requested do not exist within the records of this agency under the name or description given." The reply from the Farmington Hills Police Department does not state the records never existed and does not mean that no runs were made. It only means that the Farmington Hills Police Department has no such records to disclose under FOIA. In short, the FOIA response has no meaning under the auspices of newly discovered evidence in light of the failure of the defense here to produce any evidence specifically from Sam's Club as to their policies and procedures regarding whether the doors are in fact locked at night and whether alarms sound, where the notification goes, etc.

*b. The evidence is cumulative*

This evidence that defendant seeks to admit as newly discovered is cumulative to the alibi evidence he already presented. Defendant has already presented an alibi defense–that he was at work when the crime occurred. Similarly, the evidence is cumulative. Martin Ryzak was a business manager at the Farmington Hills Sam's Clubwhere defendant worked. Defendant worked in the freezer/cooler and did overnight merchandising, which started at 9:00 p.m. to 5:00 a.m., or 10:00 p.m. until 6:00 a.m. Defendant generally had Sundays and Mondays off, but he worked the other five days of the week, with Thursday and Friday nights being the busiest. Ryzak testified that during the night shift, they "predominantly" lock the employees in the

14

RECEIVED by Michigan Court of Appeals 5/26/2011 2:39:52 PM

building and set the alarm. The only way a person could get out without triggering the alarm is if a manager let him out. Ryzak maintained that defendant, who was a good employee, was working at Sam's Club on the night crew in June, 1997, but he was not present during his shift. Ryzak had no independent recollection of June, 1997, and could not recall if defendant worked that evening. (TT, 6/24/02, 8-17). Defendant testified that the victim dropped him off somewhere around six or seven o'clock, and that he went to work that night at eight or nine o'clock. He got home from his shift early Friday morning. He heard that something had happened to the victim on Saturday morning. (TT, 6/24/02, 57-58).

### c. The evidence, with reasonable diligence could have been discovered at trial.

This evidence, obtained by means of subpoenas and under FOIA with reasonable diligence the evidence could have been discovered prior to trial. Defendant, if he regularly made phone calls from work, as is asserted by Mr. Griffen, certainly had a responsibility to inform his trial and appellate attorneys of such. The lack of reasonable diligence rests squarely on defendant's shoulders.

### d. Whether a different result on retrial is likely cannot be determined on this record

Finally, defendant must show the likelihood that a different result was probable upon retrial. Defendant confessed to killing the victim. That confession is valid evidence against him. When that evidence is considered in conjunction with the weak evidence presented at the evidentiary hearing (the relative few calls as compared to the witnesses testifying to frequent calls), along with the failure to present evidence and the calls made during the day, a different result on retrial is not only not likely, but is a virtual certainty.

On this record, defendant not only fails, but he fails miserably.

15

RECEIVED by Michigan Court of Appeals 5/26/2011 2:39:52 PM

**RELIEF**

WHEREFORE, the People respectfully request this Honorable Court to deny defendant's

delayed application for leave to appeal.

Respectfully submitted,

KYM L. WORTHY
Prosecuting Attorney
County of Wayne

TIMOTHY A. BAUGHMAN
Chief of Research,
Training and Appeals

**/S/    JANET A. NAPP**
JANET A. NAPP  (P-40633)
Assistant Prosecuting Attorney
12th Floor, 1441 St. Antoine
Detroit, Michigan  48226
Phone:  (313) 224-5741

Dated: May 26, 2011
JAN/jf

RECEIVED by Michigan Court of Appeals 5/26/2011 2:39:52 PM

16