**Exhibit 9**

**Reply Brief in Support of 2010 Application for Leave to Appeal**

STATE OF MICHIGAN
IN THE COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

    Appellee

vs.

MARK T. CRAIGHEAD,

    Appellant

Court of Appeals No. 301465
Lower Court No. 00-007900

WAYNE COUNTY PROSECUTOR'S OFFICE
By: Kym L. Worthy (P38875)
Janet A. Napp (P40633)
Wayne County Prosecutor
1441 Saint Antoine Street
Frank Murphy Hall of Justice
Detroit, MI 48226
(313) 224-5777

MICHIGAN INNOCENCE CLINIC
University of Michigan Law School
By: Bridget M. McCormack (P58537)
David A. Moran (P45353)
Michael Shaffer, Student Attorney
Adam Thompson, Student Attorney
Katherine O'Connor, Student Attorney
Attorneys for the Defendant
625 South State Street
1029 Legal Research Building
Ann Arbor, MI 48109
(734) 763-9353

**REPLY BRIEF IN SUPPORT OF APPLICATION FOR LEAVE TO APPEAL**

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES................................................................................. ii

I. Mr. Craighead did not know about the phone calls placed from Sam's Club at the time of his trial, nor did he learn of their existence until the phone records were uncovered in July, 2009; the phone records thus constitute newly discovered evidence................. 1

II. Mr. Craighead and his witnesses did not exaggerate during their testimony: phone records in evidence show that Mr. Craighead frequently called his brother Randle and friend Isaac Griffin during his nighttime shift at Sam's Club, including at the time Chole Pruett was murdered in Detroit.................................................................................3

III. The prosecution erroneously claims that the calls placed to Isaac Griffin and Randle Craighead during the daytime prove that calls were placed to these individuals when Mr. Craighead was not working................................................................................7

IV. The phone record evidence is not cumulative, and the prosecution conceded as much during the evidentiary hearing................................................................................8

CONCLUSION.................................................................................................9

# INDEX OF AUTHORITIES

## Cases

*People v Baldwin*, No 236855 (Mich App Sept 23, 2003)..................................................2

*People v Rao*, No 289343 (Mich App Dec 7, 2010)............................................................2

*State v Glover*, 21 F3d 133 (CA 6, 1994).........................................................................1-2

Mr. Craighead replies to the prosecution's Brief in Opposition to Application for Leave to Appeal, which this Court filed on May 26, 2011.

I. **Mr. Craighead did not know about the phone calls placed from Sam's Club at the time of his trial, nor did he learn of their existence until the phone records were uncovered in July, 2009; the phone records thus constitute newly discovered evidence.**

The prosecution claims that the phone records showing that Mr. Craighead was working at Sam's Club in Farmington Hills the night the homicide took place in Detroit cannot be newly discovered evidence because Mr. Craighead at some point would have known that he called Randle Craighead and Isaac Griffin from Sam's Club that night. Prosecution brief at 9, 13-14. **But, Mr. Craighead was not arrested and tried until some five years after the crime and thus had no idea at the time of trial that he had made phone calls from work that night, including a phone call at almost the precise time the victim's truck was set on fire in Redford Township.**

It was not until the Michigan Innocence Clinic finally obtained the complete phone records from Ameritech—some seven years after his trial ended and more than twelve years after the calls were actually made—that Mr. Craighead learned that he called his friend and brother from inside Sam's Club on the night of the killing.

The prosecution correctly notes that the key to distinguishing newly discovered from newly available evidence is to determine when the defendant found out about the evidence in question. *See State v Glover*, 21 F3d 133, 138 (CA 6, 1994). In *Glover*, for instance, the defendant was not permitted to rely upon the alleged "newly discovered" testimony of a witness who refused to testify at the original trial because the defendant knew the substance of that witness's testimony at the time of trial. *Glover* at 138-39.

1

The logic of *Glover* is inapplicable where a defendant is *unaware* of the information at the time of his trial, but comes to discover it once his court proceedings have ended. Thus, information that a defendant thinks may exist but does not know for certain at the time of trial may constitute newly discovered evidence. *See, e.g.*, *People v Baldwin*, No 236855 (Mich App Sept 23, 2003) (noting that while an alternate suspect's "potential involvement" in the crime was known at the time of trial, his confession still constituted newly discovered evidence because it did not come to light until after the trial ended); *see also People v Rao*, No 289343 (Mich App Dec 7, 2010) (finding newly discovered evidence existed where defendant argued at trial that a child's skeletal injuries were due to a metabolic disorder rather than abuse, but did not receive conclusive proof of this fact until obtaining exculpatory X-rays of the child's ribs, two years after the trial's end).

The circumstances of *Baldwin* and *Rao* precisely echo the situation in Mr. Craighead's case. Unlike the defendant in *Glover*, who knew the substance of the alleged newly discovered evidence before trial, when Mr. Craighead went on trial some five years after the killing, he had no memory at all of whether he had made phone calls that night. **Mr. Craighead testified at the hearing that he had no recollection of calling Mr. Griffin or his brother on the night of June 26-27, 1997, until the phone records were produced in 2009, when Ameritech returned the phone bill listing Isaac Griffin's and Randle Craighead's numbers among the outgoing calls from Sam's Club.** Hr'g Tr 82 (June 30, 2010).

The prosecution claims that Mr. Craighead "chose" not to inform his trial counsel about the calls. Prosecution brief at 13. But, there is no record support for this claim; the unrebutted testimony from the evidentiary hearing established that Mr. Craighead did not remember making the calls until "the [phone bills] were produced in front of me." *Id.* At most, Mr. Craighead

2

could only have told Mr. Fishman that the calls *might* have been made and that the records of these calls *might* exist, because he did not recall making them when he was charged and tried years after the fact.

Mr. Craighead did eventually recall the *possibility* that he may have made calls that night, and his appellate counsel, Valerie Newman, obtained phone records from Sam's Club during his direct appeal. Hr'g Tr 49-50 (July 14, 2010). But those phone records turned out to be incomplete and did not show the calls that Mr. Craighead made, so Mr. Craighead had no idea whatsoever that he had actually made phone calls the night of the killing until the Michigan Innocence Clinic finally obtained the complete records from Ameritech in August 2009.

In sum, Mr. Craighead at the time of trial and his direct appeal had no idea that he had made any calls that night. Indeed, his appellate counsel, Ms. Newman, testified that she had told Mr. Craighead, based on the incomplete phone records she had received from Sam's Club, that he had not made any phone calls. *Id.*

Given the timing of when Mr. Craighead became aware of these records, this evidence unquestionably passes the "newly discovered" threshold articulated in *Glover*.

II. **Mr. Craighead and his witnesses did not exaggerate during their testimony: phone records in evidence show that Mr. Craighead frequently called his brother Randle and friend Isaac Griffin during his nighttime shift at Sam's Club, including at the time Chole Pruett was murdered in Detroit.**

The prosecution argues that Judge Jones based her decision on "a number of factors" that "the defendant has conveniently ignored." Prosecution brief at 12. However, at least four of the prosecution's seven points address exactly the same "factor": Judge Jones' opinion that Isaac Griffin and Randle Craighead exaggerated when recalling, thirteen years later, the number of times they spoke with Mr. Craighead while he worked at Sam's Club in 1997.

3

Mr. Craighead did not ignore Judge Jones' unreasonable interpretation of this testimony; instead he addressed it directly in his application for leave to appeal. *See* Application for Leave to Appeal at 13-14. Mr. Craighead repeatedly emphasized the following uncontradicted evidence: that Randle Craighead and Isaac Griffin were called from phones at the Farmington Hills Sam's Club on the night of June 26-27, 1997, during the hours Chole Pruett was killed in Detroit and his truck was burned in Redford Township; and that, while they could not specifically remember their conversations with Mr. Craighead that night thirteen years earlier, Isaac Griffin and Randle Craighead knew no one besides Mr. Craighead who would have called them from that store, much less anyone else who would have called them in the middle of the night. *See id.*

Whether Isaac Griffin and Randle Craighead recalled with perfect accuracy how often Mr. Craighead called them thirteen years earlier is both beside the point and understandable. First, they were testifying thirteen years after the fact. It is not surprising that these two witnesses may not have remembered, in 2010, exactly the number of times Mr. Craighead called them in 1997.

Second, Mr. Craighead may have called his brother and Mr. Griffin from phone lines not reflected in the Sam's Club bills, or from cellular phones, or even at times when he was not working at Sam's Club. Randle Craighead, for example, stated that Mr. Craighead called him "two to three times a week" from his workplace, but never claimed that Mr. Craighead made all of these calls from Sam's Club phones. Hr'g Tr 45 (June 30, 2010). Randle Craighead also testified that his brother often called Randle's cellular phone from work, not just his landline. Hr'g Tr 48 (June 30, 2010). Because Randle's cell phone would have had a different number, the

4

portions of the Sam's Club phone bills showing calls to Randle Craighead's landline would not represent every time Mr. Craighead called his brother while he was working.

The prosecution argues that that Judge Jones was correct to find that Isaac Griffin exaggerated his testimony, arguing that "Isaac Griffin testified that defendant called him all the time," yet "[t]he records only showed that he called Griffin once or twice." Prosecution brief at 12. This claim not only mischaracterizes Mr. Griffin's testimony, it is simply wrong. Though Mr. Griffin did testify that he talked with Mr. Craighead "all the time," he clarified his testimony immediately after by referring to Mr. Craighead's "many . . . crazy calls" in the middle of the night because Mr. Craighead was "a little bored" during his late-night shift. Hr'g Tr 97 (June 30, 2010). It is reasonable that the frequency of out-of-the-ordinary events, such as late-night phone calls, would be more pronounced in a person's memory than that of everyday events. And, the prosecution's assertion that the bills show that "[Mr. Craighead] called Griffin once or twice" is clearly contrary to the record. Mr. Griffin was called twice from Sam's Club on June 27, 1997, alone—just two of the **nine** calls to Isaac Griffin reflected on the three Sam's Club phone bills admitted into evidence.

It is undisputed that Mr. Craighead talked often with Mr. Griffin, a close friend, and his brother Randle, and it was never claimed that Mr. Craighead only talked to his brother and friend from Sam's Club phones or at times while he was working his shift. It is unfair to find these witnesses not credible solely because the phone bills reflect only a portion of the calls between Mr. Craighead and his brother and friend thirteen years earlier.

In fact, the three Sam's Club Ameritech phone bills admitted during the July 14 evidentiary hearing plainly show that Mr. Craighead called his brother Randle and Isaac Griffin from work on numerous occasions, a noteworthy fact considering the late hour of Mr.

5

Craighead's usual shift and the fact that Sam's Club rules did not allow him to make personal calls. *See* Hr'g Tr 42 (June 30, 2010). **To be exact, Mr. Craighead called his brother and friend from Sam's Club phones nineteen times between May 8 and July 19, 1997.** At the request of Mr. Craighead's counsel, the Michigan Innocence Clinic, the trial court admitted into evidence the phone bill dated July 25, 1997, which contains records of four calls made to Isaac Griffin and Randle Craighead on the night Chole Pruett was killed. Ev Hr'g Tr 4 (July 14, 2010). The prosecution then admitted the bills dated May 25, 1997, and June 25, 1997, that is, the bills for the two months prior to the night in question. *Id.* at 10-12.

The three bills admitted into evidence show a substantial number of calls made to Mr. Griffin's number ((313)-393-9153) and Randle Craighead's number ((313)-836-5230) from Sam's Club phones during Mr. Craighead's regular, overnight shift, which he worked every week Tuesday through Saturday.[1] *See* Trial Tr 7-8 (June 24, 2002).

---

[1] The bills show that Mr. Craighead made the following calls to his brother and friend from May-July 1997:
    (1) Thursday, May 8, 1:51 a.m. to I. Griffin (May 25 bill, Page 15, Line 4);
    (2) Thursday, May 15, 1:37 p.m. to I. Griffin (May 25 bill, Page 37, Line 16);
    (3) Thursday, May 15, 1:38 p.m. to R. Craighead (May 25 bill, Page 37, Line 17);
    (4) Thursday, June 5, 12:34 a.m. to R. Craighead (June 25 bill, Page 14, Line 20);
    (5) Sunday, June 8, 12:05 a.m. to I. Griffin (June 25 bill, Page 44, Line 22);
    (6) Tuesday, June 17, 4:03 p.m. to R. Craighead (June 25 bill, Page 18, Line 26);
    (7) Tuesday, June 17, 11:02 p.m. to R. Craighead (June 25 bill, Page 32, Line 2);
    (8) Tuesday, June 17, 11:37 p.m. to R. Craighead (June 25 bill, Page 32, Line 4);
    (9) Wednesday, June 18, 12:45 a.m. to I. Griffin (June 25 bill, Page 18, Line 37);
    (10) Thursday, June 26, 11:01 p.m. to R. Craighead (July 25 bill, Page 9, Line 10);
    (11) Thursday, June 26, 11:02 p.m. to R. Craighead (July 25 bill, Page 9, Line 11);
    (12) Friday, June 27, 12:19 a.m. to I. Griffin (July 25 bill, Page 9, Line 12);
    (13) Friday, June 27, 2:27 a.m. to I. Griffin (July 25 bill, Page 21, Line 25);
    (14) Monday, June 30, 3:52 p.m. to R. Craighead (July 25 bill, Page 6, Line32);
    (15) Monday, June 30, 11:27 p.m. to R. Craighead (July 25 bill, Page 10, Line 1);
    (16) Friday, July 4, 1:18 a.m. to I. Griffin (July 25 bill, Page 11, Line 1);
    (17) Thursday, July 10, 3:24 a.m. to R. Craighead (July 25 bill, Page 39, Line 8);
    (18) Friday, July 18, 11:01 p.m. to I. Griffin (July 25 bill, Page 23, Line 55);
    (19) Saturday, July 19, 1:56 a.m. to I. Griffin (July 25 bill, Page 15, Line 16).

Mr. Craighead testified that he regularly called Ike Griffin from Sam's Club. *See* Hr'g Tr 68-71 (June 30, 2010). He elaborated on what "regularly" meant—he testified that he probably called Ike Griffin once or twice a month and his brother Randle one to three times a month from Sam's Club. *Id.* As the phone records show, Mr. Craighead actually underestimated the number of calls he made from work. **The facts that Mr. Craighead's brother and friend did not know with perfect accuracy the exact number of times Mr. Craighead called them from work thirteen years earlier (when they would have no way of knowing whether Mr. Craighead was calling using a work phone or his personal phone), their testimony that these calls were regular and frequent is uncontested and entirely supported by the newly discovered phone bills.** The hard evidence presented in these phone records, rather than undermining this testimony, actually bolsters it.

The bottom line from these phone bills is that they prove, beyond any doubt, that Mr. Craighead was at work in Farmington Hills on the night of June 26-27, 1997, that he called his brother Randle Craighead and his friend Isaac Griffin, neither of whom knew anyone else at that Sam's Club (much less, anyone else who would call them from there in the middle of the night), and that Mr. Craighead therefore could not have killed Chole Pruett more than 20 miles away in Detroit, nor burned Mr. Pruett's truck in Redford Township at the exact time he was calling Mr. Griffin from Sam's Club.

### III. The prosecution erroneously claims that the calls placed to Isaac Griffin and Randle Craighead during the daytime prove that calls were placed to these individuals when Mr. Craighead was not working.

The prosecution seizes upon the handful of calls made to Isaac Griffin and Randle Craighead from Sam's Club during daytime hours. Citing these calls, the prosecution broadly contends, "We now have evidence that calls were placed when [Mr. Craighead] was not

7

working," suggesting that someone besides Mr. Craighead made these calls. See Prosecution brief at 13. There is no evidence to support this theory.

**First, neither Mr. Craighead nor any other witness ever testified at trial or the evidentiary hearing that Mr. Craighead worked night shifts exclusively.** It is common knowledge that night shift workers are occasionally called upon to work day shifts and vice-versa. It is also common knowledge that night shift workers are occasionally on the premises of the workplace during the day (for example, to pick up a paycheck or attend a training meeting). The existence of daytime calls does not change the critical fact that Mr. Craighead made calls from Sam's Club on the night of Mr. Pruett's killing. It simply is not the case, and Mr. Craighead has never argued (as the prosecution insists), that "no other calls should have come out of Sam's Club at any other time." Prosecution brief at 13.

Second, in construing the daytime calls as evidence that Mr. Craighead was not the caller on the night of Mr. Pruett's death, the prosecution completely ignores the most logical inference to be drawn from these records—that **Mr. Craighead was the caller on each of these occasions.** It is uncontroverted that neither Isaac Griffin nor Randle Craighead knew anyone else who worked at the Farmington Hills Sam's Club aside from Mr. Craighead. Two daytime calls made in immediate succession on May 15, 1997—to Mr. Griffin at 1:37 p.m., and then to Randle Craighead one minute later—corroborate this inference, as it is nearly impossible that any other person knew both of these witnesses and would call them back-to-back.

### IV. The phone record evidence is not cumulative, and the prosecution conceded as much during the evidentiary hearing.

The prosecution contends that the phone records are cumulative to the evidence Mr. Craighead presented at trial, because the records support the same alibi defense he presented then. Prosecution brief at 15. As argued in his application, however, the records provide

8

conclusive documentation that Mr. Craighead was at Sam's Club making phone calls at the time of Mr. Pruett's murder, as he has always maintained, and no evidence of this nature was ever presented to the jury. Application for leave to appeal at 26-27. **Indeed, the prosecution conceded that the phone records are not cumulative** during the evidentiary hearing:

> **I can say [the phone record is] not cumulative.** I think it is qualitatively different than the evidence that was presented at trial, even though it was a defensive alibi, and even though it would really supplement the defensive alibi . . . . But I do think it is different. **I cannot say it is cumulative.**

Hr'g Tr 101 (July 14, 2010) (argument of prosecutor) (emphasis added).

The prosecution's new position that the records are cumulative is unconvincing. *See* Prosecution brief at 14-15. This Court should endorse the position that the prosecution articulated at the evidentiary hearing: the phone records are certainly not cumulative.

### Conclusion

For the reasons above and those set forth more fully in his application for leave to appeal, Mr. Craighead respectfully asks this Court to reverse the trial court's denial of Mr. Craighead's motion for relief from judgment, and order a new trial at which a jury may consider the phone records as proof that Mr. Craighead could not have committed the killing of Chole Pruett.

Dated: June 14, 2010                     Respectfully Submitted,

                                          **MICHIGAN INNOCENCE CLINIC**

_____                   _____
Bridget McCormack (P58537)                David A. Moran (P45353)
Attorney for Defendant                    Attorney for Defendant

_____                   _____
Michael Shaffer, Student Attorney         Adam Thompson, Student Attorney

_____
Katherine O'Connor, Student Attorney

9