UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK CRAIGHEAD,

        Plaintiff,            Case No. 23-cv-12243

v.                                 Hon. Brandy R. McMillion

CITY OF DETROIT, *et al.*,

        Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANT CITY OF DETROIT'S MOTION TO DISMISS IN LIEU OF AN ANSWER (ECF NO. 17)

Plaintiff Mark Craighead ("Plaintiff" or "Craighead") filed this civil rights action, pursuant to 42 U.S.C. § 1983, against Defendants City of Detroit ("the City"), former police investigators Barbara Simon, James Fisher, and Bob Jackson, and polygraph operator Andrew Sims. ECF No. 1. Craighead alleges that the individual officers acted in concert to violate his constitutional rights when he was wrongfully prosecuted for murder—a crime for which he was eventually exonerated. Craighead claims that the individual defendants all acted in accordance with the policies and practices of the City, and therefore he sues the City under a *Monell*[1] municipal liability theory.

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

The City of Detroit originally filed a motion to dismiss, claiming that this case was barred by the City of Detroit's bankruptcy proceedings and the City requested a stay until the U.S. Bankruptcy Court could rule on that issue. *See* ECF No. 17. The motion also requested that the Court dismiss the City from this lawsuit because Plaintiff's claims were barred by Michigan's Wrongful Imprisonment Compensation Act ("WICA"), the doctrine of sovereign immunity, and the intracorporate conspiracy doctrine. *Id*. The motion further stated that Plaintiff was not entitled to punitive damages against the City. *Id*.

Plaintiff filed a response in opposition to all those arguments. ECF No. 22. The parties later stipulated to allow the City to withdraw its arguments relating to dismissal of the claims based on its bankruptcy proceedings. ECF No. 39. The Court therefore will not address any of the arguments related to the bankruptcy. Having reviewed the parties' briefs, the Court finds oral argument unnecessary. *See* E.D. Mich. LR 7.1(f).

For the reasons below, the Court **GRANTS** the City's Motion to Dismiss (ECF No. 17).

### I.

In 1997, police discovered victim Chole Pruett ("Pruett") murdered. ECF No. 1, PageID.5, ¶14. As part of an investigation into the murder, police questioned Plaintiff Mark Craighead, who was a friend of Pruett's. *Id.* at PageID.5, ¶¶16-17.

At the time of the murder, Craighead was working an overnight shift at Sam's Club Warehouse, so it was impossible for him to have committed the crime. *Id.* at PageID.5, ¶18. After being questioned, police cleared Craighead of any involvement. *Id.* at PageID.5, ¶19. The case went unsolved and two years later, police again questioned Craighead about the murder, and again cleared him as a suspect in the crime. *Id.* at PageID.5, ¶21. Three years after Pruett's murder, a new team of investigators took over the investigation. *Id.* at PageID.6, ¶22.

In June 2000, Defendants Jackson, Fisher, Simon and Sims unlawfully interrogated Craighead, lied to him about polygraph results, threatened him with life in prison, and held him in custody without probable cause. *See generally id.* at PageID.6-15. Having almost no sleep for two days, no food, no lawyer, no phone calls, Craighead was coerced to give a false confession. *Id.* at PageID.16, ¶103. The false confession led to Craighead being charged with murder, convicted at trial, and spending seven years in prison. *Id.* at PageID.16, ¶104. With the help of the Michigan Innocence Project, he was able to present evidence of an alibi and the unlawful acts of one of the officers in an appeal and convince an appellate court to overturn his conviction. *Id.* at PageID.21, ¶131. Craighead was awarded a Certificate of Innocence on June 1, 2023. *Id.* at PageID.21, ¶132.

As a result of these events, Craighead has brought this § 1983 civil rights actions against the individual officer defendants and the polygrapher, as well as a

3

*Monell* municipal liability claim against the City. *See generally* ECF No. 1. He alleges 10 Counts in his Complaint – Count I (Coerced Confession in Violation of the Fifth Amendment), Count II (Coerced Confession in Violation of the Fourteenth Amendment), Count III (Fourteenth Amendment Due Process Violations), Count IV (Unreasonable Seizure and Illegal Detention in Violation of Fourth and Fourteenth Amendments), Count V (Failure to Intervene), Count VI (Supervisor Liability), Count VII (Conspiracy to Deprive Constitutional Rights), Count VIII (Municipal Liability under *Monell*), Count IX (Malicious Prosecution), and Count X (Civil Conspiracy). *Id*.

The City of Detroit moves to dismiss all the claims as barred by WICA, the doctrine of sovereign immunity, and the intracorporate conspiracy doctrine. ECF No. 17. The City also claims that Plaintiff is not entitled to punitive damages against a municipality. *Id*. The motion is fully briefed. *See* ECF Nos. 22, 30. Having reviewed the parties' briefs, the Court finds that oral argument is unnecessary and will rule on the record before it. *See* E.D. Mich. LR 7.1(f).

## II.

In reviewing a 12(b)(6) motion, the Court "accept[s] all of the complaint's factual allegations as true and determine[s] whether these facts sufficiently state a plausible claim for relief." *Fouts v. Warren City Council*, 97 F.4th 459, 464 (6th Cir. 2024) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). The

Court "must 'construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and examine whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Norris v. Stanley*, 73 F.4th 431, 435 (6th Cir. 2023) (citations and internal quotation marks omitted). Facial plausibility requires a plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

### III.

The City raises multiple grounds for dismissal. However, because the Court finds that Plaintiff's claims against the City are barred by his recovery under Michigan's Wrongful Imprisonment Compensation Act, there is no need to assess the validity of the other grounds.

The City seeks to be dismissed from this lawsuit claiming that Craighead is barred from any recovery because he was compensated under Michigan's Wrongful Imprisonment Compensation Act, Mich. Comp. Laws § 691.1751 *et seq*. ECF No. 17 at PageID.108. Craighead disputes this because he argues WICA does not categorically bar wrongful conviction suits outside of state court. ECF No. 22 at PageID.1171.

The relevant portion of WICA provides:

5

> The acceptance by the plaintiff of an award under this act, or of a compromise or settlement of the claim, must be in writing and, unless it is procured by fraud, is final and conclusive on the plaintiff, constitutes a complete release of all claims against this state, and is a complete bar to any action in state court by the plaintiff against this state based on the same subject matter. However, the acceptance by the plaintiff of an award under this act, or of a compromise or settlement of the plaintiff's claim, does not operate as a waiver of, or bar to, any action in federal court against an individual alleged to have been involved in the investigation, prosecution, or conviction that gave rise to the wrongful conviction or imprisonment.

Mich. Comp. Laws § 691.1755(8).

In analyzing this very statute, this district has set forth that when interpreting state statutes, federal courts "'must follow state interpretations of [those] statutes, and must predict how the state Supreme Court would [interpret the statute] if it has not yet done so.'" *DeJesus v. Harvey*, No. 22-CV-12879, 2023 WL 4372682, at *2 (E.D. Mich. July 6, 2023) (citing *Bevan & Assocs., LPA, Inc. v. Yost*, 929 F.3d 366, 374 (6th Cir. 2019)). The Michigan Supreme Court has not interpreted this provision of WICA; therefore, this Court must determine its meaning. "If the language of the statute is clear and unambiguous, then no further interpretation is required. However, judicial construction is appropriate when reasonable minds can differ with regard to the meaning of the statutory language." *DeJesus*, 2023 WL 4372682 at *2 (citing *Benedict v. Dep't of Treasury*, 601 N.W.2d 151, 153-54 (Mich. Ct. App.

1999)).  Under Michigan law, courts are to give the text of statutes their ordinary meaning.  *Id.*

Looking to the plain language of the statute, the Court finds that Craighead is prohibited from bringing his § 1983 claims against the City in federal court.  The statute says that acceptance of an award under the act, "constitutes a complete release of *all* claims against this state…"  MCL 691.1755(8) (emphasis added).  The operative word being "all."  The plain and ordinary meaning of "all" includes every claim that Craighead has against the state, including § 1983 claims.  Another court in this district analyzing the language similarly found that "[a] release of 'all claims' cannot mean 'some claims.'"  *See Deering v. Oakland Cnty.*, No. 22-CV-11809, 2023 WL 5808831, at *3 (E.D. Mich. Sept. 7, 2023).

Craighead, however, argues that the claims are limited to the "state" and the City is not the state within the meaning of the statute.  ECF No. 22 at PageID.1172. WICA defines "[t]his state" as "the state of Michigan and its *political subdivisions*, and the agencies, departments, commissions, and courts of this state and its political subdivisions."  Mich. Comp. Laws § 691.1752(e) (emphasis added).  The City of Detroit is a political subdivision of the State of Michigan.  *See Brent v. Am. Fed'n of State, Cnty. & Mun. Emps. Loc. 207*, No. 05-71186, 2007 WL 107770, at *3 (E.D. Mich. Jan. 9, 2007) ("The highest office in the City of Detroit is that of the mayor, who is an elected official.  Thus . . . , the City of Detroit[] is a political subdivision

7

that is administered by individuals who are responsible to the general electorate"); *Shuey v. State of Mich.*, 106 F. Supp. 32, 34 (E.D. Mich. 1952) (finding that the political subdivisions of a state include cities). Consequently, the City would be covered under the terms of the Act as "the state."

WICA also provides that acceptance of an award under the Act constitutes a "complete bar to any action in state court by the plaintiff against this state based on the same subject matter." MCL 691.1755(8). Craighead argues that the prohibitions are therefore only applicable to actions in state court, not federal court. ECF No. 22 at PageID.1172-1173. However, in accordance with Michigan statutory interpretation, that clause must be read in conjunction with the later provisions of the statute to give all the words their full meaning and effect. *World Book, Inc. v. Dep't of Treasury*, 459 Mich. 403, 590 N.W.2d 293, 300 (Mich. 1999). Section 691.1755(8) goes on to state that acceptance of an award under the act "does not operate as a waiver of, or bar to, *any action in federal court against an individual* alleged to have been involved in the investigation, prosecution, or conviction that gave rise to the wrongful conviction or imprisonment." *Id.* (emphasis added).

Actions in federal court are therefore limited to those brought against individuals, not governmental entities. *See Deering*, 2023 WL 5808831 at *3. The Court is not persuaded by Craighead's argument that "individual" includes cities for the purposes of *Monell* claims. ECF No. 22 at PageID.1172-1173. The plain

8

meaning of individual in this context would mean the people involved—the individual officers—not the supervising entity—the City of Detroit.

Craighead also argues that this interpretation of WICA would violate the Supremacy Clause because § 1983 allows *Monell* claims and where there is a conflict between state law and federal law, federal law prevails. *Id.* at PageID.1175 (citing *Gade v. Nat'l Solid Waste Mgmt. Assoc.*, 505 U.S. 88, 108 (1992); *Jones v. City of Allen Park*, 167 F. App'x 398, 406-07 (6h Cir. 2006)). However, in evaluating a very similar state compensation statute, the Sixth Circuit held that these types of statutes do not violate the Supremacy Clause and are not preempted by federal law. *See Leaman v. Ohio Dep't of Mental Retardation & Dev. Disabilities*, 825 F.2d 946 (6th Cir. 1987).

In *Leaman*, the Sixth Circuit was looking at an Ohio statute that provided a "complete waiver of any cause of action, based on the same act or omission, which the filing party has against any state officer or employee" once that filing party has already brought suit against the state under the Ohio Court of Claims Act. *Id*. at 948 (citing Ohio Rev. Code § 2743.02(A)(1)). In affirming the dismissal of the federal court action, the Court emphasized that, rather than "deprive claimants of their federal forum," "[t]he Ohio statute simply offers to make available an otherwise unavailable deep-pocket defendant, and an alternative forum" to plaintiffs who choose to waive later suits. *Leaman*, 852 F.2d at 953. WICA very much works the

9

same. WICA does not force any claimant to accept an award in settlement of their claims, it merely provides the option for them to choose between that and a federal forum, not both. *See Clark v. Abdallah*, No. 21-10001, 2023 WL 4851410, at *7 (E.D. Mich. July 28, 2023).

Lastly, Craighead argues that this interpretation of WICA is against public policy; and public policy favors the application of both statutes. ECF No. 22 at PageID.1177. There is no doubt that both statutes have public benefit. The Court in *Clark* addressed this very issue, noting both the public policy behind allowing § 1983 claims in federal court and the public policy behind upholding contracts voluntarily entered into. *Clark*, 2023 WL 4851410 at *5. The Court agrees with the *Clark* assessment that "public policy interest in upholding Plaintiffs' release agreements outweighs the public policy interest in allowing Plaintiffs to pursue Section 1983 claim in federal court after reaching settlements with the state for their wrongful convictions." *Id.* at *6. The main reason being that WICA does not infringe on Craighead's right to choose which avenue he would like to pursue. He has the option to choose an alternative federal forum to vindicate his rights. And public policy favors giving him the choice to determine his avenue of redress.

## IV.

Based on the foregoing, the Court holds that WICA bars Craighead from pursuing § 1983 *Monell* claims against the City in federal court. WICA does not

infringe federal law or violate the Supremacy Clause, and it is not against public policy.  Because the Court has reached this determination, it is unnecessary to address the sovereign immunity, intracorporate conspiracy doctrine, or punitive damage arguments.  Dismissal of the City of Detroit from this action is proper.

Accordingly, the Court **GRANTS** Defendant City of Detroit's Motion to Dismiss in Lieu of an Answer (ECF No. 17).  The City of Detroit is dismissed from this lawsuit.

**IT IS SO ORDERED.**

Dated: July 29, 2024                              s/Brandy R. McMillion
                                                  BRANDY R. MCMILLION
                                                  United States District Judge