# EXHIBIT 2

Trueline Polygraph and Investigations LLC



# EXPERT WITNESS REPORT IN RELATION TO THE EFFECTS OF SLEEP DEPRIVATION ON THE RESULTS OF THE POLYGRAPH EXAMINATION AND ASSESSMENT OF SUITABILITY OF SUBJECT FOR EXAM

**INSTRUCTING SOLICITORS:** Russell Ainsworth, Loevy & Loevy

**CLIENT**: Loevy & Loevy

**IN THE MATTER OF:** The United States District Court for the Eastern District of Michigan/ Case 5:23-cv-12243-JEL-CI / Mark Craighead vs City of Detroit, former investigator Barbara Simon, former investigator James Fisher, former Lieutenant Bob Jackson, polygraph operator Andrew Sims, and other as-of-yet-unknown employees of the City of Detroit

**DATE:**

**PREPARED BY:** James B. McCloughan, Trueline Polygraph and Investigations LLC



**IN THE MATTER OF:** The United States District Court for the Eastern District of Michigan/ Case 5:23-cv-12243-JEL-CI / Mark Craighead vs City of Detroit, former investigator Barbara Simon, former investigator James Fisher, former Lieutenant Bob Jackson, polygraph operator Andrew Sims, and other as-of-yet-unknown employees of the City of Detroit

## 1. INSTRUCTIONS

1.1. This report has been prepared based on these proceedings from material supplied by my instructing solicitors.

## 2. LIMITATIONS AND RELIANCE

2.1. This report has been prepared based on information received. Should further information be subsequently available to me that materially affects the opinions contained herein, I reserve the right to amend my report.

2.2. Except where otherwise stated in my report, I do not imply, and it should not be construed that I have verified any of the information provided to me, or that my enquiries could have verified any matter which a more extensive examination might disclose.

2.3. In the preparation of this report, I was assisted by the staff of my firm/solicitors/client. I confirm that all opinions expressed are my own and are not shared with anyone.

2.4. The purpose of this report is to respond to my instructing solicitors in respect of my instructions (above) and is not to be used for any other purpose. My solicitor, client, and I disclaim any responsibility for reliance on this report for any other purpose.

## 3. QUALIFICATIONS AND EXPERIENCE

3.1. Attached to this report at **Annexure [1]** is a copy of my current CV showing my Qualifications and Experience.



## 4.  DOCUMENTS REVIEWED

4.1. In preparing this report, I have reviewed the following documents:

4.1.1. Complaint filed on 08/31/2023 by Loevy and Loevy in The United States District Court for the Eastern District of Michigan/ Case 5:23-cv-12243-JEL-CI / Mark Craighead vs City of Detroit, former investigator Barbara Simon, former investigator James Fisher, former Lieutenant Bob Jackson, polygraph operator Andrew Sims, and other as-of-yet-unknown employees of the City of Detroit

4.1.2. Walker Hearing held on 01/29/2000 in the State of Michigan Circuit Court of Wayne County, Case No. 00-07900

4.1.3. Walker Hearing held on 02/08/2000 in the State of Michigan Circuit Court of Wayne County, Case No. 00-07900

4.1.4. Detroit Police Department witness statement produced on 06/21/2000 at 11:20 a.m., by investigator Barbara Simon and Mark Craighead

4.1.5. The American Polygraph Association model policy for examinee suitability, approved 09/04/2021

## 5.  ASSUMPTIONS

5.1. In preparing this report, I have relied upon the documents referred to above and otherwise set out in the Annexures to this report.

5.2. In preparing this report, I have made the following assumptions:

5.2.1. The statements given in the above-mentioned walker hearings regarding timelines and dates were factual.

5.3. My conclusions in this report are based on this reliance and these assumptions. Should these, in fact, prove to be materially different, this may, in turn, materially affect the content of my report and the conclusions therein.

## 6.  BACKGROUND

6.1. Mark Craighead reportedly worked from 5:00 a.m. to 3:00 p.m. on June 19, 2000.

6.2. Mark Craighead went "house hunting" with his wife after working on June 19, 2000.

3

Trueline Polygraph and Investigations LLC



6.3. Mark Craighead and his wife get home from "house hunting" at approximately 9:30 p.m. to 10:00 p.m. on June 19, 2000.

6.4. Mark Craighead goes to bed shortly after the evening news began on June 19, 2000.

6.5. Mark Craighead slept for approximately three to four hours before getting up for work at approximately 3:00 a.m. on June 20, 2000.

6.6. Mark Craighead worked from 5:00 a.m. to 3:00 p.m. on June 20, 2000.

6.7. The Detroit Police Department Investigators of Squad 7 were at Mark Craighead's house when he arrived home at approximately 6:00 p.m.

6.8. The Detroit Police Department Investigators of Squad 7 transported Mark Craighead to the 7th Precinct shortly thereafter.

6.9. The Detroit Police Department Investigators of Squad 7 questioned Mark Craighead for an indeterminate amount of time.

6.10. The Detroit Police Department Investigators of Squad 7 contacted their polygraph examiner to schedule a polygraph examination.

6.11. The Detroit Police Department Investigators of Squad 7 transported Mark Craighead to the polygraph examination location at 2600 Brush, a Detroit Police Department facility, at approximately 2:00 a.m. to 3:00 a.m. on June 21, 2000.

## 7. ISSUES TO BE ADDRESSED

7.1. Did Mark Craighead have sufficient sleep to take a polygraph examination that would have meaningful test data results based on the information provided, and what steps would have been taken and documented by a reasonably trained polygraph examiner to ensure that a subject was suitable for testing?

## 8. CONCLUSIONS AND OPINION

8.1. Based on my training and experience of over 25 years, and a review of the documents provided to me, Mark Craighead did not likely have sufficient sleep to undergo a polygraph examination. His lack of sleep would likely have diminished his ability to physiologically respond appropriately to the posed questions (stimuli).

4



These physiological responses are essential and serve as the foundation for examiners to interpret the collected data and draw meaningful conclusions about the truthfulness of a subject's answers to key questions posed in a polygraph examination (test data analysis).

8.2. A reasonably trained polygraph examiner would know that an individual should not undergo a polygraph exam without sufficient rest, and that lack of sleep is likely to undermine the accuracy of a polygraph examination.

8.3. For this reason, polygraph examiners are trained to inquire about the subject's amount of sleep and alertness toward the beginning of the pre-test interview, to ensure that the subject is suitable for testing. Examiners are trained to document the amount of sleep the subject reports having received. This is especially true when the polygraph examination occurs after midnight, when questions may later be raised about the subject's suitability for the test, given the late hour.

8.4. This pre-test interview, which all reasonably trained examiners would conduct before an exam, would also include questions about the subject's general sleep patterns (including how long they usually slept and at what times), their medical background, and whether they were hungry or in any physical pain, among other things. A reasonably trained examiner would also assess the subject's behavior and responsiveness. Again, this would all be documented.

8.5. Based on my training and experience, if Mr. Craighead received less than 5 hours of sleep the night of June 19, as he alleges, and did not sit for his polygraph examination until after midnight the following night, a reasonably trained examiner would have had serious doubts about the reliability of Mr. Craighead's polygraph exam and whether he should undergo an exam at that time, especially in light of his stated regular sleep schedule.

8.6. A reasonably trained polygraph examiner would, to the extent possible, conduct polygraph examinations during a subject's general waking hours, rather than during hours when they are usually asleep. If a subject was cooperative and there was no urgency to complete the exam, a reasonably trained polygraph examiner would reschedule an exam if there were any doubts that a polygraph exam could be unreliable due to fatigue.

8.7. Further, based on my training and experience of over 25 years, a polygraph examiner will record the time that a polygraph examination was taken. That information should be included in the reports and other documentation created during the polygraph examination. The absence of documentation of the time that the polygraph was conducted is a gross departure from standard polygraph

5



procedures. Because Mr. Craighead's examination was conducted in the early morning hours, at a time when he was typically asleep or just waking up, it would be even more important to document the time the polygraph was administered.

8.8. Polygraph examiners are trained to maintain a file for each polygraph exam that contains all documents created during that exam, including a waiver of rights signed by the subject, a pre-interview form with medical and background information (suitability assessment), a list of questions asked during the polygraph testing, and the data that was created during the polygraph testing. A reasonably trained polygraph examiner would understand that this information was important for determining the reliability of the polygraph examination, and that these documents would need to be reviewed and relied on if anyone called into question the reliability of the polygraph examination results.

8.9. The polygraph examiner who conducted Mr. Craighead's polygraph examination, Andrew Sims, was trained by the Michigan State Police (MSP) Polygraph Section, and his internship supervisor was Ernest Myatt. The MSP procedures at the time and at all times relevant to the conduct in this case, required him to screen examinees' medical status, including ensuring they had sufficient rest before the polygraph test. This process would have included, among other things, evaluating the examinees' ability to respond to questions. This conclusion is based on my own experience and understanding of the training provided by MSP. It is also based on communications I had with my former colleagues, including Ernest Myatt.

## 9. COMPENSATION

9.1. My compensation for reviewing the documents provided to me by my solicitors/client and producing my report is $300.00 (U.S.). Any travel or testimony in this matter would require additional compensation.

Date: ……………………..

Digitally signed by James McCloughan
Date: 2025.12.05 16:25:34 -05'00'

………………………..
James B McCloughan
Trueline Polygraph and Investigations LLC

Annexure 1

6

Trueline Polygraph and Investigations LLC



Current Curriculum Vitae James B McCloughan (pertinent information copied and inserted from the original document)

Formal Education:

Central Michigan University, Mt. Pleasant, MI
Bachelor of Science Degree, Sociology, with a Criminal Justice Emphasis, August 1993

Professional Education:

Michigan State Police 110th Trooper Recruit School, January 1995.

Advance Accident Investigation School, conducted by Michigan State Police, Tustin, MI, September 1999.

Texas Department of Public Safety Law Enforcement Polygraph School, July 2000 (Accredited by the American Polygraph Association).

Medicolegal Investigation of Death Course, conducted by Wayne State University School of Medicine, Michigan State Police, and the Fraternal Order of Police, Novi, MI, March 2001.

Reid Technique of Interview and Interrogation, conducted by John E. Reid and Associates Inc., Lansing, MI, February 2002.

Scientific Content Analysis, conducted by L.S.I., Lansing, MI, February 2003.

Layered Voice Analysis Phase I, V Solutions, Waupun, WI, August 2004.

EyeDetect+, Lansing, MI, April 2023.

Continuing Professional Education:

American Association of Police Polygraphists Conference, Cleveland, OH, April 2001.

7



American Polygraph Association Seminar, Albuquerque, NM, August 2002.

American Polygraph Association Seminar, Sparks, NV, August 2003.

Midwestern Regional Polygraph Seminar, Indianapolis, IN, September 2003.

American Polygraph Association Seminar, Orlando, FL, August 2004.

Midwestern Regional Polygraph Seminar, Indianapolis, IN, October 2004.

American Polygraph Association Seminar, San Antonio, TX, August 2005.

Midwestern Regional Polygraph Seminar, Grand Rapids, MI, October 2005.

American Polygraph Association Seminar, Las Vegas, NV, July 2006.

Midwestern Regional Polygraph Seminar, Grand Rapids, MI, September 2006.

American Polygraph Association Seminar, New Orleans, LA, August 2007.

Midwestern Regional Polygraph Seminar, Grand Rapids, MI, October 2007.

American Polygraph Association Seminar, Indianapolis, IN, August 2008.

Midwestern Regional Polygraph Seminar, Grand Rapids, MI, October 2008.

American Polygraph Association Seminar, Nashville, TN, August 2009.

American Polygraph Association Seminar, Myrtle Beach, SC, September 2010.

8



ASCLD/LAB International Preparation Course, Columbus, OH, September 2010.

American Polygraph Association Seminar, Austin, TX, September 2011.

American Polygraph Association Seminar, San Diego, CA, September 2012.

American Polygraph Association Seminar, Orlando, FL, September 2013.

American Polygraph Association Seminar, Seattle, WA, September 2014.

American Polygraph Association Seminar, Chicago, IL, September 2015.

American Polygraph Association Seminar, Baltimore, MD, September 2016.

American Polygraph Association Seminar, Las Vegas, NV, September 2017.

American Polygraph Association Asia-Pacific Seminar, Singapore, August 2018.

American Polygraph Association Seminar, Austin, TX, September 2018.

American Polygraph Association Seminar, Orlando, FL, September 2019.

American Polygraph Association Seminar, Austin, TX, September 2021.

American Polygraph Association Seminar, Orlando, FL, September 2022.

American Polygraph Association Seminar, Las Vegas, NV, September 2023.



American Polygraph Association Seminar, New Orleans, LA, August 2024.

American Polygraph Association Seminar, San Diego, CA, August 2025.

Training and Seminar Presentations:

Michigan State Police Evidence Technician School, Grayling, MI, Instructor 2001-2012.

American Polygraph Association Seminar, Presenter, Albuquerque, NM, August 2002 (Polygraph Countermeasures).

Basic Fire Investigation (Michigan State Police), Tustin, MI, April 2004 (Interview and Interrogation).

Basic Fire Investigation (Michigan State Police), Tustin, MI, September 2004 (Interview and Interrogation).

American Polygraph Association Seminar, Orlando, FL, August 2004 (Concealed Information Testing).

Midwestern Regional Polygraph Seminar, Indianapolis, IN, October 2004 (Countermeasures and Concealed Information Testing).

Michigan State University, Lansing, MI, October 2004 (Polygraph for Introduction to Forensic Science class).

Central Michigan University, Mt. Pleasant, MI, November 2004 (Polygraph and Non-verbal Deception for Non-verbal Communication class).

Basic Fire Investigation (Michigan State Police), Tustin, MI, April 2005 (Interview and Interrogation).

American Polygraph Association Seminar, Las Vegas, NV, July 2006 (Concealed Information Testing).

Midwestern Regional Polygraph Seminar, Grand Rapids, MI, September 2006 (Concealed Information Testing).

10



Colorado Association of Polygraph Examiners, Denver, CO, June 2007 (Concealed Information Testing).

American Polygraph Association Seminar, New Orleans, LA, August 2007 (Concealed Information Testing).

Midwestern Regional Polygraph Seminar, Grand Rapids, MI, October 2007 (Concealed Information Testing).

Multidisciplinary Conference on Victim Abuse, Traverse City, MI, June 2008 (Polygraph Interview and Interrogation).

American Polygraph Association Seminar, Indianapolis, IN, August 2008 (Concealed Information Testing).

Midwestern Regional Polygraph Seminar, Grand Rapids, MI, October 2008 (Concealed Information Testing).

Indiana Polygraph Association, Indianapolis, IN, November 2008 (Concealed Information Testing).

Prosecuting Attorneys Association Seminar "Confronting the Challenge", Traverse City, MI, December 2008 (Polygraph).

Child Exploitation and Online Protection (CEOP), London, England, January 2009 (The use of polygraph in the United States police force).

American Polygraph Association Seminar, Myrtle Beach, SC, September 2010
(The National Academy of Science's report on the Future of Forensic Science: Implications for the Polygraph Field).

American Polygraph Association Seminar, Austin, TX, September 2011 (Concealed Information Testing).

Michigan Association of Polygraph Examiners Quarterly, Lansing, MI, February 2012 (Utah Zone).

Michigan Association of Polygraph Examiners Quarterly, Tustin, MI, March 2012 (Utah Zone Scoring, Kircher Features).



Michigan State Police Forensic Artists Quarterly, Higgins Lake, MI, June 2012 (Interview and Interrogation).

American Polygraph Association Seminar, Orlando, FL, September 2013 (Understanding Recognition Testing).

American Association of Police Polygraphists, Henderson, NV, May 2014 (Concealed Information Testing).

American Polygraph Association Seminar, Baltimore, MD, September 2016 (Open Forum on Polygraph).

American Polygraph Association Asia-Pacific Seminar, Singapore, August 2018 (Polygraph Countermeasures).

American Polygraph Association Seminar, Austin, TX, September 2021 (What We Might Know Wrong).

American Association of Police Polygraphists, Kansas City, MO, May 2023 (Concealed Information Testing).

American Polygraph Association Seminar, New Orleans, LA, August 2024 (What We Might Know Wrong).

American Polygraph Association Seminar, San Diego, CA, August 2025 (Concealed Information Testing).

Leadership Training:

Michigan State Police Leadership Development Academy, May 2017.

Expert Testimony:

People of The State of Michigan v Cadotte 03-2787-FC (Cheboygan, MI, 2007).

People of The State of Michigan v Johnson 10-3190-FC (Kalkaska, MI, 2010).

1.1.1.1 Professional Affiliations:

American Polygraph Association

12



Professional Awards:

David L. Motsinger Horizon Award, 2006 (First Recipient).

American Polygraph Association President's Award, 2016.

Professional Elected/Appointed Positions:

Midwest Regional Polygraph Seminar Chairperson, 2008-2009.

American Polygraph Association, Director 1, 2012-2016.

American Polygraph Association, President-Elect, 2016-2017.

American Polygraph Association, President 2017-2018.

American Polygraph Association, Chairperson of the Board, 2018-2019.

American Polygraph Association, Director 3, 2019-2024.

American Polygraph Association, Education Accreditation Committee Chairperson, 2012-2023.

American Polygraph Association, Ethics and Grievance Committee Chairperson, 2023-2024.

American Polygraph Association, President-Elect 2024-2025.

American Polygraph Association, President, 2025-Present.

Professional Committees:

Michigan State Police Laboratory Case Management System Strategic Planning Team, 2007-2009.

American Polygraph Association, Research Committee, 2008-2009.

Department of Defence, Defence Academy for Credibility Assessment, Credibility Assessment Research Symposium Committee on Applied Polygraphy, 2009.

13

Trueline Polygraph and Investigations LLC



Michigan State Police, Forensic Science Committee on White Collar Crime & Public Corruption, 2011.

American Polygraph Association, Public Relations and Information Committee, 2008-2009, 2011-2012.

American Polygraph Association, Education Accreditation Committee, 2012-Present.

American Polygraph Association, Ethics and Grievance Committee, 2023-Present.

Licenses:

Public Examiners License (polygraph) No. 6001000308, Michigan.
Private Examiners License (polygraph) No. 6001020049. Michigan.

Certifications:

Marin Protocol Certified

Post-Conviction Sex Offender Testing

Research:

An Analysis of the Robustness of Field Control Question Testing Procedures Against Effects of Mid-Level and High-Level Countermeasures. 2002 (Unpublished)

Field Application of the Concealed Information Test. 2003 (Unpublished)

A Field Analysis of Layered Voice Analysis. 2007 (Unpublished)

A Field Analysis of The Photoelectric Plethysmograph. 2018 (Unpublished)

A Field Analysis of The EyeDetect Plus. 2025 (Unpublished)

14

Trueline Polygraph and Investigations LLC



Publications:

> Krapohl, D., McCloughan, J., Senter, S. (2006), How to Use the Concealed Information Test.  Polygraph, 35(3), 123-138.

> Cushman, B., McCloughan, J. (2007), Paired-Testing Model Policy. American Polygraph Association.

> Horvath, F., McCloughan, J., Weatherman, D., and Slowik, S. (2013), The Accuracy of Auditors' and Layered Voice Analysis (LVA) Operators' Judgments of Truth and Deception During Police Questioning.  Journal of Forensic Sciences, 58: 385–392. doi: 10.1111/1556-4029.12066.

Professional Experience:

> Michigan State Police

> 110th Trooper Recruit School, September 1994-January 1995.

> Flint Post, January 1995-May 2000.

> Forensic Science Division, Polygraph Section, Grayling Laboratory, May 2000-December 2012.

> Biometrics and Identification Division, Polygraph Section, Grayling Laboratory, December 2012-August 2022.

> Biometrics and Identification Division, Polygraph Section, Grand Rapids, August 2022-2025.

Current Position:

> Owner, Trueline Polygraph and Investigations 2025-Present.