**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MARK CRAIGHEAD,

                    Plaintiff,                Case No. 2:23-cv-12243

v.                                   Hon. Brandy R. McMillion
                                      United States District Judge

BARBARA SIMON, *et al.*,

                    Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 86)**

In 2002, Plaintiff Mark Craighead ("Craighead") was wrongfully convicted of manslaughter and possession of a firearm during the commission of a felony for the homicide of his friend, Chole Pruett ("Pruett") in 1997. *See* ECF No. 88-3, PageID.2935. Twenty-one years later, after being exonerated, Craighead filed this federal civil rights action pursuant to 42 U.S.C. § 1983 for malicious prosecution and violations of his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments against Defendants City of Detroit, Investigators Barbara Simon ("Simon") and James Fisher ("Fisher"), Lieutenant Bob Jackson ("Jackson"), and Polygraph Operator Andrew Sims ("Sims"). *See* ECF No. 1. After preliminary motion practice, only Simon, Fisher, Jackson, and Sims (collectively, "Defendants")

1

remain in this action.[1]  Each now seek summary judgement under Federal Rule 56 against all claims on qualified immunity grounds because no reasonable jury could find that Craighead's clearly established rights were violated during the course of their investigation leading to his conviction.  *See* ECF No. 86; Fed. R. Civ. P. 56(a).  The Motion is fully briefed.  *See* ECF Nos. 88, 99.[2]  The Court finds a hearing unnecessary and will therefore rule on the record before it.  E.D. Mich. L.R. 7.1(f)(2).  For the reasons set forth below, the Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.

A comprehensive factual record is necessary to fully evaluate this motion.

### A.     Initial Investigation

This case began on June 27, 1997, when Pruett, a local DJ at the time, was found dead by two painters working at his apartment complex.  *See* ECF No. 86-3, PageID.2035.  He was subjected to multiple gunshot wounds.  ECF No 86-3, PageID.2036.  His truck, a 1996 Chevy Tahoe, was later discovered burned behind

---

[1] Each defendant filed an early motion to dismiss.  *See* ECF Nos. 17, 28, 32, 33.  In ruling on those motions, the Court dismissed the City of Detroit from this action; and the Court also dismissed Count VII (Conspiracy to Deprive Constitutional Rights) and Count X (Civil Conspiracy).  *See generally* ECF No. 45, 46.  The Court also denied Simon's request to strike portions of the Complaint and Sim's request to dismiss all charges against him.  *See* ECF No. 46, PageID,1498.

[2] Plaintiff filed a Motion for Leave to File a Sur-Reply in opposition to Defendants' Motion for Summary Judgment.  *See* ECF No. 100.  Craighead claims that Defendants in their Reply Brief first raised the issue that they are entitled to summary judgment on Plaintiff's fabrication of evidence claim in Count III.  *See* ECF No. 100-1, PageID.5407.  The Court, having reviewed Plaintiff's proposed filing hereby **GRANTS** Plaintiff's Motion and deems ECF No. 100-1 filed.

Pearson Elementary that same day.  *See* ECF No. 86-4.  Investigator Ronald Tate with the Detroit Police Department began the investigation into Pruett's death.  *See generally* ECF No. 86-8.  Over the course of two years, several witnesses were interviewed, including Craighead who gave a witness statement in 1997 and again in 1999, but no promising leads emerged.  *See* ECF No. 86, PageID.1996.  Eventually, the case went cold.  *See* ECF No. 86-9, PageID.2201.

In 2000, Lieutenant Jackson, a squad head for the Detroit Police Department, reassigned Pruett's case to Investigator Fisher to have a "fresh set of eyes" look at the matter.  *See* ECF No. 86, PageID.2000; ECF No. 86-9, PageID.2199.  The two worked as partners on investigations where Fisher took lead and Jackson was available for occasional assistance, if needed.  ECF No. 86-9, PageID.2193.  After examining the file containing the same witness statements previously collected, without any new information added, Craighead became a "person of interest" to Fisher, despite there being other possible suspects and rationales for the murder.  *Compare, e.g.*, ECF No. 88, PageID.2888, *with* ECF No. 86-9, PageID.2198.  Fisher focused on Craighead based on a witness-identified drug nexus between he and Pruett, and the documented close friendship between the two.  *See* ECF No. 86, PageID.1996; ECF No. 86-9, PageID.2200; ECF No. 88, PageID.2895-2896.  To Fisher, a person of interest is some with potentially relevant information who cannot be detained, forced to come to the state, or forced to speak.  *See* ECF No. 86-9,

3

PageID.2179.  With this in mind, Fisher figured his best starting point into the investigation was with Craighead.  *See* ECF No. 86-9, PageID.2201.

**B.      Officers Confront Craighead**

On June 20, 2000, nearly three years to the date of Pruett's death, Fisher and Lieutenant Jackson decided to go to Craighead's house around 5:30-6:00 p.m.  *See* ECF No. 86-9, PageID.2204.  At this point, Craighead was 41 years old, coached youth football, and had begun working at Chrysler.  ECF No. 88, PageID.2888-2889. He was under a 90-day probationary period at his job, which was scheduled to end the following day.  *Id.* at PageID.2907.  On the day in question, Craighead had been running errands around town.  ECF No. 86-14, PageID.2286.  When he arrived home, Fisher and Jackson where waiting on his front porch.  *See* ECF No. 86-9, PageID.2205.

Fisher informed Craighead that he needed to come with them down to the station to answer questions related to Pruett's death.  *See* ECF No. 86-15, PageID.2289-2290.  Craighead was skeptical and twice iterated he was tired, asked instead if he could come down tomorrow and to speak to his attorney.  *Id.*  Fisher and Jackson denied his request and further iterated that he had to come now.  *See* ECF No. 86, PageID.2010.  Jackson took things a step further by threating to call a squad car if Craighead did not come with them at that moment.  ECF No. 86-15, PageID.2290.  Craighead complied and requested that his brother Randle accompany

them.  *Id.*; ECF No. 86-9, PageID.2207.  Despite not wearing handcuffs, Craighead was transported to the station in the back of Fisher and Jackson's vehicle.  *See* ECF No. 86-9, PageID.2206-2208; ECF No. 86-17, PageID.2372.[3]

## C.      Interrogation & Polygraph Examination

Upon arrival at the station, Fisher and Jackson took Craighead to the Squad 7 Room.  ECF No. 88, PageID.2906; ECF No. 86-9, PageID.2208.  Craighead's brother was present and followed them to headquarters but was not allowed to enter the squad room.  ECF No. 86-9, PageID.2203, 2207.  During his interrogation with Fisher, Craighead remained silent.  *See* ECF No. 86, PageID.1989.  Fisher called investigator Simon when he made minimal progress in getting information out of Craighead.  ECF No. 86-9, PageID.2208, 2217-2218.

Multiple times throughout the course of his interactions with Simon, she would leave Craighead locked in the room without further information, only to reappear and begin asking questions.  *See* ECF No. 88, PageID.2906.  During this time, Craighead made a request to speak to an attorney, but none of the Defendants responded or acted in accordance with his request.  *Id.*  From 8:00 p.m. to 11:00 p.m., Craighead was left alone in the interrogation room.  *Id.*  When Simon

---

[3] The parties dispute whether Craighead was under arrest at this time.  Plaintiff asserts that he was unlawfully arrested at that time, while Defendants claim that Craighead voluntary went to the station. *Compare* ECF No. 86, PageID.2010 *and* ECF No. 86-8, PageID.2121, *with* ECF No. 88, PageID.2902-2903.  Although, the Court notes that in other portions of the Motion, Defendants concede that Craighead was "arrested" but it is unclear if this is the moment Defendants agree the "arrest" occurred.  *See* ECF No. 86, PageID.2003.  In other places, Defendants characterizes Craighead as being "in custody."  *See* ECF No. 86, PageID.2015.

reappeared, Craighead requested to leave, informing Simon about his probationary period at Chrysler, something she would later use to her advantage. *Id.* at PageID.2907. Once again, Craighead requested his attorney, and Simon ignored him. *Id.*

Instead, Simon wanted Craighead to take a polygraph examination. *Id.* To no surprise, he was once again threatened that if he refused to take the polygraph, Simon would hold him in for three or four days, and he would lose his job. *See* ECF No. 88, PageID.2907. Craighead complied with her request. *Id.* Simon handcuffed Craighead to transport him to the polygraph exam office. *See* ECF No. 88, PageID.2908. She remained present at the office but did not administer the exam. *See* ECF No. 88-12, PageID.3111.

That was the work of Defendant Sims, who was called in the middle of the night around 1:00 a.m., with the exam being administered to Craighead around 3:00 a.m. *See* ECF No. 88, PageID.2908. Sims informed Craighead that he failed the exam, in addition to making other threats. *See* ECF No. 86-9, PageID.2208; ECF No. 86-17, PageID.2367; ECF No. 88-12, PageID.3129. Fisher made the decision to detain Craighead based on his polygraph results. *See* ECF No. 86-9, PageID.2210. Simon informed Craighead that he better confess to make things easier on him, otherwise his wife would leave him and his children "would be calling another man daddy." *See* ECF No. 88, PageID.2908-2909. Although Craighead was under the

impression from Simon that he could go once he took the polygraph test, *see* ECF No. 86-17, PageID.2366, when he asked after he received his results, she laughed, proceeded to handcuff Craighead and locked him in a cell where he was held in custody overnight. *See* ECF No. 88, PageID.2909. He didn't sleep that night. *Id.*

The next morning, at 11 a.m., Craighead requested an attorney, and Simon denied his request. *Id.* She threatened to send him to prison for the rest of his life. *Id.* Simon told Craighead that if he agreed that the shot was the result of an argument between him and Pruett and that the gun accidentally went off while they were struggling for the gun, she would talk to the prosecutor, and he could go home that day. *Id.* at PageID.2909-2910. After 18 hours in custody, Craighead complied and gave the false confession Simon desired. *See* ECF No. 88, PageID.2911. She wrote down what he volunteered. *See* ECF No. 86-16, PageID.2332; ECF No. 88-12, PageID.3122; ECF No. 86-17, PageID.2369. Despite all of this, Simon maintains she believed Craighead was lying about what happened. *Compare* ECF No. 88-12, PageID.3125, *with* PageID.3136. Based on Craighead's admission, Fisher prepared an in-custody warrant request, which was signed and issued by the 36th District Court. *See* ECF No. 86-9, PageID.2199.

### D.    Conviction & Appellate Review

On June 22, 2000, Craighead was charged with first degree murder, felony murder, felony firearm, and manslaughter. *See* ECF No. 86-32. During his criminal

proceedings, despite all of the forementioned facts, his confession was found to be voluntary. *See* ECF No. 86-17. His defense during trial was that he was at work at the time, but documented proof was not admitted during the presentation of evidence. *See* ECF No. 86-35, PageID.2651-2652. After a jury found him guilty, *see* ECF No. 86-18, PageID.2542, Craighead was sentence to 40 months to 15 years in prison for the manslaughter conviction and two years in prison for the felony-firearm conviction. *See* ECF No. 88-3, PageID.2935. In a 2-1 decision, the Michigan Court of Appeals affirmed his conviction. *See People v. Craighead*, No. 243856, 2005 WL 3500831 (Mich. Ct. App. Dec. 22, 2005).

### E.    New Evidence

In 2020, the Michigan Innocence Clinic filed a Motion for a Relief from Judgment under Mich. Ct. R. 6.500. *See* ECF No. 86-19; ECF No. 86-38. On February 4, 2021, a Michigan trial court granted Craighead relief from his conviction because of newly discovered material evidence unavailable at the time of the original prosecution, creating a reasonable probability of a different outcome upon retrial. *See* ECF No. 88-3. A little over two years later, Craighead obtained statutory damages in the Michigan Court of Claims pursuant to the Michigan Wrongful Imprisonment Compensation Act. *See* ECF No. 88-4; MICH. COMP. LAWS §§ 691.1751, 691.1754, 691.1755. This lawsuit followed thereafter. *See* ECF No. 1.[4]

---

[4] Shortly after filing, consecutive orders were issued dismissing Defendant City of Detroit, as well as Counts VII, VIII, and X against all remaining Defendants. *See* ECF Nos. 45, 46.

Defendants now move for summary judgment and argue they are entitled to qualified immunity on Craighead's claims.  ECF No. 86.

**II.**

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In evaluating the motion, the Court must determine "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  This requires the nonmoving party to "'present significant probative evidence' putting the material facts in doubt."  *Walden v. GE Int'l, Inc.*, 119 F.4th 1049, 1057 (6th Cir. 2024) (quoting *Green Genie, Inc. v. City of Detroit, Mich.*, 63 F.4th 521, 526 (6th Cir. 2023)).

Cited material, as well as other materials within the record may be considered when making a summary judgement determination.  *See* Fed. R. Civ. P. 56(c)(3). The "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue

for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). But "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to survive a motion for summary judgment. *Anderson*, 477 U.S. at 252.

When qualified immunity is raised at the summary judgement stage, the court must weave the standard into each step of the analysis. *Scott*, 550 U.S. at 378. "Qualified immunity protects an official from liability if the official's conduct does not violate 'clearly established' statutory or constitutional rights that a reasonable person would have known were in existence." *Peterson v. Heymes*, 931 F.3d 546, 553 (6th Cir. 2019) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To overcome qualified immunity at summary judgment, a plaintiff bringing a § 1983 case against state officials must demonstrate that (1) the defendant violated a constitutional right; and (2) that the right was clearly established at the time of the alleged violation. *Mays v. City of Dayton*, 134 F.3d 809, 813 (6th Cir. 2013).

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). The court has sound discretion to decide which of the two prongs of the qualified immunity analysis to address first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). However, if the plaintiff's right was

not clearly established at the time of the defendant's conduct, the Court need not determine whether the alleged conduct was in fact unconstitutional. *Id.* at 236-43.

### III.

Craighead's Complaint centers on whether Defendants violated his clearly established rights, back in 2000, when:

- Defendants secured a *Coerced Confession* in violation of the Fifth and Fourteenth Amendments (Counts I and II);
- Defendants deprived Craighead of *Due Process to a Fair Criminal Proceeding* in violation of the Fourteenth Amendment (Count III);
- Defendants subjected Craighead to *Unreasonable Seizure*, *Illegal Detention*, and *Malicious Prosecution* in violation of the Fourth and Fourteenth Amendments (Count IV);
- Defendants *Failed to Intervene* to prevent the constitutional violations suffered by Craighead in violation of the Fourth and Fourteenth Amendments (Count V);
- Defendant Jackson was subject to *Supervisor Liability* for the acts of Defendants which violated his Fourth, Fifth, and Fourteenth Amendment rights (Count VI); and
- Defendants' actions resulted in a *Malicious Prosecution* against Craighead in violation of Michigan Law (Count IX).

*See generally* ECF No. 1. The Defendants deny such allegations and seek qualified immunity for all claims. *See generally* ECF No. 86.

In addition to determining whether there exists a genuine issue of material fact to present these claims to a jury, the Court must also resolve (1) whether the individual acts of the Defendants violated Craighead's constitutional rights, and (2) whether those rights were clearly established in 2000, such that a reasonable officer

11

would understand the actions taken were a violation of Craighead's rights.  The Court will address the issue of qualified immunity first as to Defendant Sims, and then while analyzing each claim.

## A.      DEFENDANT SIMS IS ENTITLED TO QUALIFIED IMMUNITY

At the outset, the Court finds that Defendant Sims is subject to dismissal because he is entitled to qualified immunity for his conduct, as alleged in the instant action.  To establish a federal civil rights claim, a plaintiff has to prove that they were deprived of a right, privilege, or immunity guaranteed by the federal Constitution or laws by someone acting under the color of state law.  *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978).  However, with limited exception, liability under § 1983 must be based on one's own individual actions.  *See DeVooght v, City of Warren, Mich.*, 157 F.4th 893, 901 (6th Cir. 2025) (citing *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010)).

Here, the only actions attributed to Sims are (i) administration of the polygraph to Craighead; (ii) after the exam, Sims told Craighead that he had failed the test; (iii) Sims told Craighead that polygraph results were admissible in court.  *See* ECF No. 86, PageID.2018.  Simply administering the polygraph is not a violation of any rights.  *Accord United States v. Scheffer*, 323 U.S. 303 (1998) (finding no constitutional violation for the exclusion of polygraph evidence); *see also Luckett v. Berghuis*, No. 04-cv-73037, 2006 WL 1779383, at *2 (E.D. Mich.

Jun. 26, 2006). Although Craighead asserts that the untruthful statements Sims made influenced his coerced confession, *see* ECF No. 88, PageID.2919-2920, lying to defendants is not and was not prohibited in 2000 at the time of Sims' actions. *See Dahlstrom v. Trombley*, No. 2:07-cv-10580, 2010 WL 1136800, at *12 (E.D. Mich. Mar. 23, 2010) (citing *Moran v. Burbine*, 475 U.S. 412, 433-34 (1986) and *Frazier v. Cupp*, 394 U.S. 731, 737-39 (1969)). Sims did not hamper Craighead from exercising his constitutional rights. Consequently, the Court finds Sims is entitled to qualified immunity for his actions, and therefore dismissal of all claims against him is appropriate.

**B.     DUE PROCESS TO A FAIR CRIMINAL PROCEEDING (Count III)**

Count III alleges a violation of Craighead's Fourteenth Amendment due process right to a fair criminal proceeding. *See* ECF No. 1, PageID.28-30. The parties dispute whether Defendants move for summary judgment on this claim. *See supra* n.2;*see also* ECF No. 88, PageID.2885, ECF No. 99, PageID.5370. Defendants claim to move for summary judgment on "all remaining claims," *see* ECF No. 86, PageID.1974, but a review of the motion and opening brief do not address this claim in any meaningful way. As Plaintiff properly notes, Count III's due process violation is based on fabricating inculpatory evidence[5] and withholding

---

[5] A Fourteenth Amendment fabrication of evidence claim succeeds when plaintiff can show that "evidence is knowingly fabricated and a reasonable likelihood exist that the false evidence would have affected the decision of the jury." *Gregory v. City of Louisville*, 444 F.3d 725, 737 (6th Cir. 2006) (citing *Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997)).

exculpatory and/or impeachment evidence.  ECF No. 1, PageID.29.  That is a separate and distinct claim from Plaintiff's coerced confession claims in Counts I and II.  *Id.* at PageID.23-28.

Because Defendants failed to address the due process claim based on fabrication of evidence in their original motion for summary judgment; and any alleged argument that was raised was done for the first time in a reply brief, the Court will deem those arguments waived.  *See Palazzo v. Harvey*, 380 F. Supp. 3d 723, 730 (M.D. Tenn. 2019) (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (raising issues for the first time in a reply brief does not suffice and the court must treat such issues as waived)).  Count III will therefore proceed to trial.

## C.      MALICIOUS PROSECUTION

Count IV and IX allege federal and state law claims for malicious prosecution against all Defendants.  ECF No. 1, PageID.30-31, 40-41.  For a federal malicious prosecution claim, the plaintiff must prove the (1) a criminal prosecution was initiated against them, and the defendants "made, influenced, or participated in the decision to prosecute," (2) the criminal prosecution lacked probable cause, (3) they suffered a "deprivation of liberty" because of the legal proceeding, and (4) the criminal proceeding resolved in their favor.  *See Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010).

The claim is similar under Michigan law.  "Plaintiff must prove: '(1) that the defendant has initiated a criminal prosecution against him, (2) that the criminal proceedings terminated in his favor, (3) that the private person who instituted or maintained the prosecution lacked probable cause for his actions, and (4) that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice.'"  *Edison v. Twp. of Northville*, 752 F. Supp. 3d 808, 828-29 (E.D. Mich. 2024) (citing *Matthews v. Blue Cross & Blue Shield of Michigan*, 572 N.W.2d 603, 609-10 (Mich. 1998)).  The parties dispute probable cause under both claims.  *Compare* ECF No. 86, PageID.2001, *with* ECF No. 88, PageID.2889.

## 1.  Whether Defendants' acts violated Craighead's constitutional rights

Under the Fourth Amendment Craighead has a right to be free from unreasonable searches and seizures.  *See* U.S. CONST. amend. IV.  An arrest without probable cause violates the Fourth Amendment.  *See Donovan v. Thames*, 105 F.3d 291, 298 (6th Cir. 1997) (citing *Beck v. Ohio*, 379 U.S. 89, 90-91 (1964)).  Despite the Supreme Court's well-established precedent in § 1983 actions that the existence of probable cause is a question of fact, *see United State v. Gaudin*, 515 U.S. 506, 521 (1995), the Defendants argue as a matter of law the prosecution, seizure, and detention of Craighead in 2000 was not unlawful because it was supported by probable cause, entitling them to qualified immunity.  *See* ECF No. 86, PageID.2001,

15

PageID.2019.  They further argue that even if the Court found probable cause lacking, the transport was consensual and voluntary.  *Id.* at PageID.2004.  The Court is not convinced.

First, the Court resolves whether it has the ability to make a probable cause determination in this case.  Plaintiff submits that this is an issue for the jury to resolve and not one on which the Court can rule.  ECF No. 88, PageID.2887.  Defendants, on the other hand, assert that a probable cause determination is a question of law.  ECF No. 86, PageID.1993 (citing *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 US 49, 63 (1993)).  While probable cause is a question of law, that is true only where there are no facts in dispute.  As Plaintiff notes, "[i]f disputed factual issues underlying probable cause exist, those issues must be submitted to a jury for the jury to determine the appropriate facts."  ECF No. 88, PageID.2887 (quoting *Alman v. Reed*, 703 F.3d 887, 896 (6th Cir. 2013); *Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005)).  Here, the Court finds that Plaintiff presents sufficient factual disputes that make submission of the issue of probable cause one for the jury.

The Defendants focus on investigative facts that were in the 1997 file as proof Fisher and Jackson had probable cause during their initial contact with Craighead for "an arrest."  *See* ECF No. 86, PageID.1995-2001.  But if the facts from 1997 did <u>not</u> support an arrest at that time, how is that in 2000 a probable cause determination could have changed without any further factual development?  Probable cause is

16

based on "facts and circumstances within the officer's knowledge that are sufficient to warrant a [reasonably prudent person] in believing, in circumstances shown, that the suspect *has committed*, *is committing*, or *is about to commit an offense*." *See Painter v. Robertson*, 185 F.3d 557, 569 (6th Cir. 1999) (quoting *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988); *accord Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)) (alteration in original).  And while statements from one officer to another may be sufficient to establish probable cause, *see United States v. Crow*, No. 1:23-cr-00008, 2023WL 6035691, at *7 (E.D. Tenn. July 13, 2023) (citing *United States v. Woods*, 544 F.2d 242, 260 (6th Cir. 1976)), the initial officer must have had probable cause to begin with.  And that was not the case here, as conceded by Officer Tate.  *See* ECF No. 86-8, PageID.2139 ("Q.  Did you ever identify anyone as a suspect in the Chole Pruett homicide investigation while you were working on it? . . . . **THE WHITNESS: No.**").

A reasonable jury could find that none of the "knowledge" possessed by Fisher or Jackson, let alone Simon or Sims, during the entire interaction was sufficient beyond mere speculation that Craighead *killed* Pruett.  *See* ECF No. 88, PageID.2894.  Moreover, Fisher testified that Craighead was a person of interest, not a suspect, *see* ECF No. 86-9, PageID.2198.  This concession supports that a reasonable jury could find that neither Fisher nor Jackson knew who committed Pruett's murder in 2000, and there was not enough information to hold that probable

17

cause existed at that time.  And as Craighead points out, mere companionship with an individual suspected of criminal activity does not satisfy the probable cause standard, *see United States v. Davis*, 430 F.3d 345, 352 (6th Cir. 2005) (quoting *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)).

Defendants argue that the following facts support a finding of probable cause:

- *Motive*:  Pruett got a lawsuit settlement days before his death, which Craighead knew about.  Pruett and Craighead were going into the drug business and also co-owned a beauty salon.  Pruett was involved with multiple women, cheated on Craighead's sister-in-law, and had run-ins with her new boyfriend, including a fight at the beauty salon.
- *Opportunity*:  Pruett was driving around with a short, light complected Black "partner" on the day before or day of his murder visiting family and friends.  Pruett went to a fireworks show with his girlfriend and two other friends the day before his murder.  Pruett spent the night with a woman on the night before his murder and spoke with women on the phone the night of his murder.  Pruett also visited his mother and father on the evening of his death.
- *Inconsistencies in Craighead's Statements*:  Craighead could not remember if he was with Pruett the day before or the day of his murder.  Craighead reported not knowing of the issues between Pruett and his sister-in-law's boyfriend.
- *Fisher's Investigation*: Fisher interviewed Pruett's nephew who confirmed his prior statement that Pruett was last seen in a truck with a person matching Craighead's description on the day before his murder.  Fisher concluded that the person responsible for the murder had full access to Pruett's apartment and was aware of his daily activities.

ECF No. 86, PageID.1996-2001.  Craighead disputes these facts as a basis for probable cause, and argues the following:

- Craighead was with Pruett the day before his murder – and the fact that they are friends and were together in public more than 24 hours before his death does not establish probable cause for murder.
- Evidence shows that Pruett drove his truck to family member's homes and his nephew saw a short, light complected Black male in the truck – but the person in the truck had to be a stranger, because Pruett's family was familiar with Craighead and would have known if he was seen in truck with Pruett on day of his murder.
- A description of a short, light complected Black male could fits tens of thousands of people in Detroit.
- Nothing in the record supports Craighead knew about Pruett's lawsuit settlement.  Moreover, the record supports that Pruett talked to many people about money.  And there was no particularized connection between the money and the murder.

ECF No. 88, PageID.2891-2894.  Given that these facts are disputed, and both Plaintiff and Defendants' accounts form the basis for a probable cause decision, it is within the purview of the jury to make that determination.  *Alman*, 703 F.3d at 896; *Hale*, 396 at 728.  A reasonable jury could certainly conclude that the facts established by Defendants are not enough to establish probable cause.[6]

Craighead also points to other facts known to Fisher and Jackson at the time they confronted him and asked him to come to the police station.  *See* ECF No. 88, PageID.2887-2889.  Also known to officers was the following information:

> The victim was in conflict with several people (but not in conflict with Mr. Craighead). He had caught his ex-girlfriend, Samantha Howard,

---

[6] For example, it is quite feasible that one could determine that if Pruett and Craighead were going into the drug business and going in on a beauty salon together, *see, e.g.*, ECF No. 86-9, PageID.2202; ECF No. 86-13, PageID.2244, that their business relationship establishes a motive *against* murder, so that their businesses could be lucrative.

cheating on him, and Samantha's new boyfriend had threatened the victim by pointing his finger at him like a gun. Dkt. 86-26 (Jordan Statement) at PageID.2580-2582. Following this threat, Pruett bought a gun for his protection. Dkt. 86-21 (Williamson Statement) at PageID.2558-2560. Pruett was having problems at his apartment complex (where Mr. Craighead did not live), including multiple reports that someone was breaking into his truck—the same truck that was stolen and set on fire in the course of the murder. Dkt. 86-27 (Moore Statement) at PageID.2584-2587; Dkt. 86-20 (Gray Statement) at PageID.2555; Dkt. 86-6 (Craighead Statement) at PageID.2115.

Pruett was also having problems with another ex-girlfriend, Erhonda Gray. Shortly before his murder, Pruett forced Gray out of his car on the expressway. Dkt. 86-13 (Gibson Statement) at PageID.2243-2245; Dkt. 86-6 at PageID.2115. Gray had also been cheating on him (not with Mr. Craighead). Dkt. 86-10 (Pruett Sr. Statement) at PageID.2234-2235. The mother of Pruett's child told police that the victim told her "if anything ever happened to him, check Erhonda Gray." Ex. 4 (Valentine Statement) at KH 88.

Mr. Craighead was 41 years old with no criminal history. Dkt. 86-17 (Craighead Walker Hearing Tx.) at 50:16-25, 54:1-14. He was married with two children, had been a football coach in the police athletic league years, and had recently started a full-time job at Chrysler. Dkt. 86-17 at 50:16-25, 51:16-52:7, 54:1-12, Dkt. 86-14 (Craighead Dep.) at 102:3-11. None of the witnesses interviewed had provided police with any information connecting Mr. Craighead to Pruett's murder. Dkt. 86-5 (Jackson Dep.) at 210:15-18. No physical evidence tied Mr. Craighead to the crime. Id. at 221:19-222:3. No one implicated Mr. Craighead in the crime. No evidence linked him to the crime whatsoever.

ECF No. 88, PageID.2887-2889. Based on these facts, Craighead argues that Defendants cannot establish probable cause. The Court finds that a reasonable jury could agree, and therefore, summary judgment would not be appropriate.[7]

---

[7] Craighead also offers explanations and refutes the facts asserted by Defendant that they claim form the basis of probable cause. *See* ECF No. 88, PageID.2895. And they state that Defendants ignore exculpatory evidence known at the time of the investigation. *Id.* at PageID.2899. Each of

Moreover, the Defendants showcased the existence of factual disputes in their own conflicting representations on the question of whether Craighead was arrested? *Compare* ECF No. 86, PageID.2001, *with* PageID.2004.   The Defendants argue Craighead's "transport" was consensual and voluntary because (1) he wasn't handcuffed, (2) he was permitted to "summon" and "negotiate[] for his brother" to follow them to headquarters, and (3) Craighead admitted as much during his deposition testimony.   *See* ECF No. 86, PageID.2004.   However, the seizure and removal of an individual who is not suspected of criminal activity to the police station constitutes a *de facto arrest* requiring probable cause.   *See Centanni v. Eight Unknown Officers*, 15 F.3d 587 (6th Cir. 1994) (emphasis added).   As Craighead argues, "if a jury could conclude that Craighead went to the station due to Defendants' 'show of authority,' he has been seized."   ECF No. 88 at PageID.2902 (citing *Gardenhire v Schubert*, 205 F.3d 303, 313 (6th Cir. 2000)).

Based on these disputes, a reasonable jury could find that Craighead's constitutional right to be free from an arrest not supported by probable cause was violated.

---

these "explanations" not only create genuine disputed facts but also proffer a consideration that a reasonable jury could adopt in determining probable cause.

21

## 2. Clearly Established Law

The next question is whether Craighead's constitutional rights were *clearly established* at the time – meaning a reasonable officer would understand the actions taken violated his rights. A review of the relevant Sixth Circuit case law suggests that it was. "Although there [was not a] brightline [rule] that distinguishes an investigative stop from a de facto arrest, the length and manner of an investigative stop should be reasonably related to the basis for the initial intrusion." *Houston v. Clark Cnty. Sheriff Deputy John Does 1-5*, 174 F.3d 809 (6th Cir. 1999) (alteration in original). And as the *Gardenhire* court stated, "[a] police officer's statement that 'you need to go' somewhere carries substantial authoritative weight…. [] very few people could hear such a directive from a police officer and still think they were free to act otherwise." 205 F.3d at 313. Under those circumstances, a *de facto* arrest requires probable cause. *Centanni*, 15 F.3d 587.

Under *Gardenhire*, *Centanni*, and *Houston*, Craighead's right to be free from a *de facto* arrest was clearly established law at the time of Craighead's arrest. A reasonable officer should have known that their actions were in violation of his constitutional rights. Therefore, because Craighead's *de facto* arrest was a violation of his constitutional rights, which were clearly established under the law, the Court declines to award the Defendants qualified immunity on the malicious prosecution claim (Count IV).

22

The Court notes that the parties dispute whether there is a separate cause of action for the unlawful arrest of Craighead which forms the basis of his malicious prosecution claim. *Compare* ECF No. 86, PageID.2001, *with* ECF No 1, PageID.30 *and* ECF No. 88, PageID.2909, PageID.2912, PageID.2915-2916, PageID.2918. A review of the Complaint reveals that multiple claims are combined within the malicious prosecution claim (Count IV), including an allegation that he was unlawfully seized in violation of the Fourth Amendment. However, the Court views these two to be so intertwined that even if pleaded separately, they would rise and fall on the same analysis – the jury's determination as to whether the arrest was done without or without probable cause. Therefore, the Court will note that Count IV will proceed to trial on all theories.

### 3. State Malicious Prosecution Claim (Count IX)

The Defendants argue that there is no record evidence that Defendants acted for any purpose other than to bring an offender to justice. *See* ECF No. 86, PageID.2003. As discussed, the parties dispute that there was probable cause for the prosecution. However, Defendants argue they are entitled to qualified immunity because there "is no further evidence [Defendants] acted maliciously or in bad faith." *Id.*

The Court notes that "malice or bad faith" is essential for a malicious prosecution claim under Michigan law, but it requires something more than lack of

probable cause.  *See Susselman v. Washtenaw Cnty. Sheriff's Office*, 109 F.4th 864, 872 (6th Cir. 2024) (citing *Sottile v. DeNike*, 174 N.W.2d 148, 150 (1969)) ("The fourth prong sets a high bar, and the plaintiff must demonstrate that the defendant took actions that are 'willful, wanton, or reckless, or against the accuser's sense of duty… [a] lack of probable cause does not alone suffice.")  Here, the Court believes the actions of Defendants, as alleged by Craighead and viewed in the light most favorable to him, speak for themselves.  *See* ECF No. 1, PageID.40.  As discussed, a reasonable jury could differ on whether there was probable cause to prosecute Craighead and could also differ on Defendants' motivation and intent behind the prosecution.  Therefore, summary judgment is also not appropriate on Count IX, the state malicious prosecution claim.

## D.   COERCED CONFESSION

Under Counts I and II, Craighead brings claims for a coerced confession under the Fifth and Fourteenth Amendment.  ECF No. 1, PageID.23-27.  The Due Process clause of the Fourteenth Amendment, in conjunction with the Fifth Amendment's protection against compelled self-incrimination, prohibits the use of coerced confessions at trial.  *See Van Hook v. Anderson*, 488 F.3d 411, 418 (6th Cir. 2007) (citing *Dickerson v. United States*, 530 U.S. 428, 433 (2000)).  At the time of Craighead's interrogation, a confession was considered "coerced" if "(1) the police activity was objectively coercive; (2) the coercion in questions was sufficient to

overbear the defendant's will; and (3) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." *United States v. Mahan*, 190 F.3d 416, 423 (6th Cir. 1999) (citing *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988)). Defendants argue they are entitled to summary judgment on Craighead's coerced confession claim.

### 1. Whether Defendants' acts violated Craighead's constitutional rights

Craighead claims his confession was bore out of coercion. ECF No. 1, PageID.23-28. The Defendants, on the contrary, contend Craighead's confession was not coerced because (1) he cannot satisfy the factors outlined under *United States v. Wrice*, 954 F.2d 406, 411 (6th Cir. 1992); and (2) *Miranda* doesn't provide a basis for §1983 liability.[8] *See* ECF No. 86, PageID.2014-2019. The Court disagrees in part.

Looking at the Defendants' first argument. Under *Wrice*, courts are instructed to consider the psychological impact on the accused by a totality of the circumstances of the confession, which include:

> (1) age of the accused, (2) his level of education and intelligence, (3) his physical condition and emotional state at the time of the confession, (4) his expressed fears of violent reprisals, (5) actual physical punishment, (6) the proximity of the coerciveness of the confession as given, and (7) the inherent coerciveness of the confession as given.

---

[8] The Defendants also argue that Craighead cannot established that Sims violated his rights. *See* ECF No. 86, PageID.2018. The Court will not address this argument, having already determined Sims should be dismissed from this lawsuit. *See supra* Section III.B.

*Wrice*, 954 F.2d at 411.  In Defendants' view, factors 1-6 weigh in their favor.  They focus on factor 3, arguing that Craighead himself is to blame for the circumstances surrounding his confession.  Defendants argue that Craighead's physical condition and emotional state at the time of his confession were a result of "his own lifestyle, working early mornings and staying out late the night before" and there is no evidence that he was "experiencing severe exhaustion, such as dozing off, being unable to keep his eyes open, yawning constantly, or being unable to comprehend what was happening." *See* ECF No. 86, PageID.2015.  The Court is not persuaded and to argue that "Craighead has not put forth any evidence that Defendants intentionally exploited or exacerbated his tiredness or hunger[]" completely overlooks the facts in this case. *Id.*

Craighead spends four pages in his briefing outlining the facts that led to the statement he signed with Defendant Simon, including that he spent a total 18 hours in custody, asked to speak with an attorney multiple times and was denied, was denied phone calls, deprived of food, threatened with loss of employment and life in prison, threatened with the loss of his family, and promised to be release if he "just confessed." *See* ECF No. 88, PageID.2905-2911.  If a jury were to credit even a portion of those facts, it is possible that they could determine that Craighead's will was overborn by Defendants' actions and therefore his confession was coerced. *See Monson v City of Detroit, Michigan*, Nos.22-2050/2122, 2024 WL 84093, at *8 (6th

Cir. Jan. 8, 2024) (citing *Jackson v. City of Cleveland*, 925 F.3d 793, 825-826 (6th Cir. 2019)).  And to suggest that Craighead's confession was completely voluntary because he had time alone in a cell "with the opportunity to rest and compose himself, even if he did not want to sleep" when he was confined in a custodial setting facing allegations of murder is illogical.

Looking to the actions of each Defendant, a reasonable jury could conclude that Fisher and Jackson were the catalyst for all the actions that occurred in this case. But for conducting a *de facto* arrest of Craighead and bringing him down to the station, he ultimately would never have "confessed" to a crime he did not commit. He never would have been denied the opportunity to make a phone call, have his attorney present, go inside his home, or be subjected to the threat of being arrested and removed from his property if he did not comply with Fisher and Jackson's orders. *See* ECF No. 88, PageID.2906.  Moreover, threats were clearly made in this case by Jackson and Simon.  *See* ECF No. 86, PageID.2013.

The same can be said for Simon.  Had Fisher not contacted Simon to interrogate Craighead, he would not have been threatened to be held for three to four days and risk losing his job or told that someone else will be the father of his children.  *See* ECF No. 88, PageID.2907.  Additionally, a jury could credit the fact that Craighead did not even write the confession statement, Simon did; and the statement did not even match the forensic analysis of Pruett's body.  *Compare* ECF

No. 88-12, PageID.3120, PageID.3122, *with* ECF No. 86-3, PageID.2036.  Based on the totality of the circumstances, the Court finds there are disputed facts that preclude the finding that the *Wrice* factors favor Defendants.  Therefore, Defendants cannot establish that they are entitled to a determination that Craighead's confession was not coerced, as a matter of law.

Defendants' second argument fares no better.  Defendants argue that *Miranda* is a prophylactic rule and cannot form the basis of a § 1983 action.  ECF No. 86, PageID.2018.  While true that Plaintiff cannot sue based on Defendants' failure to Mirandize, he can sue for the deprivation of his Fifth Amendment rights.  And *Miranda* is so enshrined into our legal jurisprudence that it sets forth the very standard that the right to counsel and the right to remain silent are afforded to every criminal defendant.  From the moment Craighead was in police custody, he had a right to remain silent (which he invoked until threatened about how much longer he would be held until he talked).  *See* ECF No. 88, PageID.2906.  Anything Craighead said during that time could be used against him at trial (and it was).  *See, e.g.*, ECF No. 86-17, PageID.2369.  He had the right to an attorney, which he invoked (and it was ignored).  *See* ECF No. 88, PageID.2906, 2909.  When those rights are not afforded, any confession rendered as a result was not admissible at trial.  *See Miranda v. Arizona*, 384 U.S. 436, 494 (1996).  And when used at trial, that was a violation of Craighead's Fifth Amendment constitutional right.  As he states in no

uncertain terms, "[it was] the deprivation of his rights, not the failure to notify him about their existence, that constitutes the wrong."  The Court agrees.

### 2. Clearly Established Law

Further, the Court finds that it was clearly established that a confession given as the byproduct of a coercion was a violation of the law, at the time of this incident. *See Lego v. Twomey*, 404 U.S. 477, 479 (1972) (citing *Jackson v. Denno*, 378 U.S. 368 (1964)).  Moreover, Sixth Circuit law had established that police promises of leniency and threats of prosecution could be objectively coercive, rendering a confession involuntary due to police coercion.  *See Wrice*, 954 F.3d at 411.  Further the "prophylactic" *Miranda v. Arizona*, was certainly known to officers at the time of Craighead's arrest and interrogation.  So much so that Defendant Simon had Craighead sign a "waiver of his Miranda rights."  *See* ECF 86-17, PageID.2337.  To suggest now that his Fifth Amendment right against self-incrimination was not clearly established would be disingenuous.

Therefore, summary judgment in favor of Defendants is denied because viewing the facts in the light most favorable to Craighead, a reasonable jury could find that his confession was coerced, and his constitutional rights violated.[9]

---

[9] Defendants further seek to invoke collateral estoppel on the coerced confession and malicious prosecution claims because they assert the criminal court held a *Walker* hearing, in which it determined Craighead's confession was voluntary.  *See* ECF No. 86, PageID.2019-2024.  But this argument ignores that the Sixth Circuit has rejected this contention.  *See Peterson v. Heymes*, 931 F.3d 546, 554 (6th Cir. 2019).  Collateral estoppel applies when: "(1) an issue has been actually litigated and determined by a valid and final judgment; (2) the same parties have had a full and

## E.    SUPERVISORY LIABILITY

Under Count VI, Craighead seeks to hold Defendant Jackson liable for directing and/or approving Plaintiff's arrest and continued detention without probable cause, Sim's fabricated polygraph result, and the false promises and threats used by Defendants to coerce a false confession.  *See* ECF No. 1, PageID.34. Defendants seek summary judgment on this claim arguing that Defendant Jackson did not "authorize, approve, or knowingly acquiesce in any constitutional violation." ECF No. 86, PageID.2026 (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)).

The Court acknowledges that a successful claim of supervisory liability requires more than vicarious liability for the actions of subordinates and liability "will not be imposed solely upon the basis of respondeat superior.  There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it."  *Hays v. Jefferson County*, 668 F.2d 869, 872-874 (6th Cir.1982); *see also Winkler v. Madison County*, 893 F.3d 877, 898 (6th

---

fair opportunity to litigate the issue; and (3) there is mutuality of estoppel."  *Calhoun v. Kane*, No. 2:24-cv-10184, 2026 WL 825335, at \*14 (E.D. Mich. Mar. 25, 2026) (citing *Peterson*, 931 F.3d at 554).  In this instance, Defendants fail to meet the first element.  A ruling issued at a *Walker* hearing is an interlocutory ruling, not a valid final judgement.  Contrary to Defendant's assertion, it is well established vacated rulings have no preclusive effect under Michigan law.  *See Peterson*, 931 F.3d at 554 (discussing how interlocutory ruling merge into the final judgements and once the final judgment is overruled, so too are the interlocutory rulings).  Here, all of the interlocutory rulings rendered during Craighead's criminal prosecution have been overruled.  *See* ECF No. 88-3.  Thus, Defendants' collateral estoppel argument fails.

Cir. 2018) ("[L]iability cannot be imposed on a supervisor under § 1983 based on the theory of respondeat superior."). Here, Defendant Jackson claims, as supervisor of the homicide unit, his direct involvement "was minimal." ECF No. 86, PageID.2026. He states he simply reassigned the case to Fisher, accompanied him to Craighead's house without directing Fisher in any way to speak with Craighead, and was at most, present in the precinct during the detention and interviewing of Craighead. *Id.* He further clarifies that he was not the supervisor of Sim's so he could not be liable for any alleged misconduct on Sim's part. *Id.* at PageID.2027.

With respect to Sims, the Court agrees. However, the Court believes a genuine issue of material fact exists, at a minimum, as it relates to Jackson's direction and involvement in the arrest and detention of Craighead. Plaintiff points to record evidence that when Jackson and Fisher spoke with Craighead at his home, Jackson was not only present for the entire conversation Fisher had with Craighead, but he also told Craighead that he was calling a patrol car and that "[Craighead] could either ride with them or go in the patrol car." ECF No. 88, PageID.2926 (*citing* ECF No. 86-17 at 71:2-21, ECF No. 86-15 at 328:5-16). On that fact alone, a reasonable jury could find that Jackson "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Hayes*, 668 F.2d at 872–74. And that could also be sufficient to show "active unconstitutional behavior" on the part of the supervisor. *See Peatross v. City of*

31

*Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)).  Consequently, summary judgment is not appropriate on the supervisory liability claim (Count VI).

## F.      FAILURE TO INTERVENE

Lastly, Defendants move for summary judgment on Craighead's failure to intervene claim (Count V).  *See* ECF No. 86, PageID.2027.  They argue that the Supreme Court has never recognized a failure to intervene claim, outside the excessive force context.  *Id.*  Craighead argues that the Sixth Circuit has traced the duty of law enforcement officers to intervene to prevent unlawful arrests back to 1982 when it ruled in *Bruner v Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982).  *See* ECF No. 88, PageID.2926-2927.  Relying on a 2018 case, *Bunkley v. City of Detroit, Michigan*, 902 F.3d 552, 566 (6th Cir. 2018), Craighead states that *Bunkley* notes that a 2001 case, *Jacobs v. Vill. of Ottawa Hills*, 5 F. App'x 390, 395 (6th Cir. 2001), observed that the 1982 *Bruner* case establishes that "officers must affirmatively intervene to prevent other officers from violating an individual's constitutional rights."  ECF No. 88 at PageID.2926-2927.

While that may be true and the Court acknowledges that the pre-existing precedent does not have to be factually the same, *Mullenix v. Luna*, 577 U.S. 7, 12 (2015), it must still show that the right was "clearly established" at the time of the alleged violation of the constitutional right.  *Id.* at 11.  Here, the Court finds that the

case law was not sufficiently developed prior to Craighead's arrest, such that Defendants should have been aware of the clearly established right and their duty to intervene. In 1982, the Sixth Circuit held that officers "can be liable under § 1983 when by his inaction, he fails to perform a statutorily imposed duty to enforce the laws equally and fairly… [because] [a]cts of omission are actionable *in this context* to the same extent as are acts of commission." *Bruner*, 684 F.2d at 426 (emphasis added). That context does not establish that officers had a duty to intervene and prevent unlawful arrest.

Craighead does not identify a case which deals with a non-arresting officer's involvement in an unlawful seizure until *Jacobs* in 2001, which post-dates Craighead's arrest. In 2018, the Sixth Circuit further clarified this line of cases applying that logic in the context of a failure to intervene to prevent an arrest with the requisite probable cause. *Bunkley*, 902 F.3d at 566. Therefore, the Court agrees with Defendants that "the right Plaintiff complains of in this count was not 'clearly established' in 2000." ECF No. 99, PageID.534. Consequently, Defendants are entitled to qualified immunity on Plaintiff's failure to intervene claim; and summary judgment in Defendants' favor is appropriate on Count III.

**IV.**

Accordingly, Defendants' Motion for Summary Judgment (ECF No. 86) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS HEREBY ORDERED** that Defendant Andrew Sims is **GRANTED** qualified immunity for all claims and is **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that Defendants Fisher, Simon, and Jackson are **GRANTED** qualified immunity for the Failure to Intervene claim (Count V) but **DENIED** qualified immunity on Counts I, II, IV, and IX.

**IT IS FURTHER ORDERER** that Defendant Jackson is **DENIED** qualified immunity as to the Supervisory Liability claim (Count VI).

**IT IS FURTHER ORDERED** that summary judgment is **GRANTED** as to Plaintiff's Failure to Intervene claim (Count V) but **DENIED** as to Counts I, II, IV, and IX.

**IT IS FURTHER ORDERED** that Plaintiff's Due Process Claim (Count III) will proceed to trial as Defendants did not move for summary judgment on this claim or develop any argument to support why they would be entitled to judgment as a matter of law.

**IT IS SO ORDERED.**

Dated: July 17, 2026                     s/Brandy R. McMillion
     Detroit, Michigan                    HON. BRANDY R. MCMILLION
                                     United States District Judge