UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK CRAIGHEAD,

     Plaintiff,

v.

BARBARA SIMON, *et al.*,

     Defendants.

_____/

Case No. 2:23-cv-12243
Hon. Brandy R. McMillion

**OPINION AND ORDER DENYING DEFENDANTS'
MOTION TO EXCLUDE THE TESTIMONY OF
MELISSA RUSSANO, PH.D. (ECF NO. 92)**

Plaintiff Mark Craighead ("Plaintiff" or "Craighead") brings this wrongful conviction action against Defendants for, among other things, malicious prosecution and coerced confession related to his conviction for the 1997 murder of Chole Pruett. ECF No. 92, PageID.4068. Before the Court is Defendants' motion to preclude the testimony of one of Craighead's experts, Dr. Melissa Russano (ECF No. 92). Having reviewed the parties' briefs, the Court finds oral argument unnecessary. *See* E.D. Mich. LR 7.1(f). The expert identified in Defendants' motion is offered to elicit opinions and testimony about false confessions and certain risk factors that can increase their likelihood. Finding Dr. Russano qualified and her opinions to be both relevant and reliable, the Court **DENIES** Defendants' motion.

1

## I.

This case arises from Plaintiff's June 2000 interrogation and confession to the 1997 murder of Chole Pruett.  ECF No. 92, PageID.4066.  Plaintiff was later convicted based, in substantial part, on that confession.  *Id.*  His conviction was eventually overturned after the discovery of new evidence.  *Id.*  Plaintiff alleges that Defendants "coerced him into providing a false confession[]" when they "held and isolated him for hours without adequate sleep and food, threatened him, made false promises of leniency, and denied his requests to speak with an attorney."  ECF No. 103, PageID.5467.

Craighead retained Dr. Melissa Russano as a false confessions expert to opine on the psychology behind interrogations, confessions, and the risk factors associated with false confessions.  *Id.*  Dr. Russano is a professor of criminal justice and a research psychologist whose principal areas of research are investigative interviewing, interrogations, and confessions in law enforcement, military, and human intelligence settings.  ECF No. 92-3, PageID.4266.  She has conducted research in those areas since 2002, published numerous peer-reviewed articles and chapters, developed a widely used laboratory paradigm for studying true and false confessions, trained local, state, and federal law enforcement officers, and received federal funding from the U.S. Department of Justice and U.S. Department of Defense for interrogation research.  *Id.*

2

Dr. Russano's expert report generally offers three categories of opinions. First, she explains the phenomenon of false confessions and the relevant social science research. ECF No. 92-3, PageID.4269. Second, she identifies known risk factors for false confessions and discusses their potential application here. *Id.* at PageID.4276-4288, 4291-4303. These risk factors include: "(a) prolonged custody, isolation, and interrogation; (b) physical abuse/threats of physical harm/physical discomfort/deprivation of basic necessities; (c) sleep deprivation; (d) multiple interrogators; (e) guilt-presumptive approach; (f) presentation of false/unreliable evidence; and (g) threats and promises." ECF No. 103, PageID.5470. Lastly, Dr. Russano explained a framework for assessing the reliability of confession evidence by considering dependent and independent corroboration. ECF No. 92-3, PageID.4303-4308.

At her deposition, Dr. Russano clarified that she is not using the risk factors to determine whether plaintiff's confession was true or false and is not deciding which party's account is credible. ECF No. 92-4, PageID.4350-4351. Instead, she identifies the risk factors potentially indicated under each version of events: "depending on whether you assume Mr. Craighead's account, here are the potential risk factors. If you assume the State's account, here are the potential risk factors." *Id.* at PageID.4357. She expressly stated that credibility is for the fact-finder to determine. *Id.* Defendants have filed the instant motion seeking to exclude Dr.

Russano's opinions on several grounds.  ECF No. 92.  Having reviewed the parties'

briefs, the Court finds oral argument unnecessary and will decide the motions based

on the record before it.  *See* E.D. Mich. LR 7.1(f).

## II.

District courts are the "gatekeepers" when it comes to expert testimony; their

role is to "'ensur[e] that an expert's testimony both rests on a reliable foundation and

is relevant.'" *In re Onglyza (Saxagliptin) & Kombiglyze (Saxagliptin & Metformin)*

*Prod. Liab. Litig.*, 93 F.4th 339, 345 (6th Cir. 2024) (quoting *Daubert v. Merrell Dow*

*Pharms, Inc.*, 509 U.S. 579, 597 (1993)).  Recently amended, Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

It is therefore the proponent's burden "to demonstrate to the Court that an expert's

testimony more likely than not meets the four enumerated requirements for

4

admissibility." *Al Qari v. American Steamship Co.*, 689 F. Supp. 3d 494, 499 (E.D. Mich. 2023) (quotation marks and citation omitted).

In short, before admitting any expert testimony, the Court must ensure that the expert testimony is helpful to the trier of fact, "based on sufficient facts or data," the "product of reliable principles and methods," and reliably applies the "principles and methods to the facts of the case." Fed. R. Evid. 702 (2023); *see In re Onglyza*, 93 F.4th at 345 & n.2 (summarizing requirements under 2011 version of Rule 702 and noting changes in 2023 amendment of the Rule). The Court's job is "not to determine whether [the expert's opinion] is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Onglyza*, 93 F.4th at 345 (quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529-30 (6th Cir. 2008)).

All that said, rejecting expert testimony is the exception, not the rule. *Al Qari*, 689 F. Supp. 3d at 499 (citing *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530)). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Al Qari*, 689 F. Supp. 3d at 499 (quoting *Daubert*, 509 U.S. at 596) (quotation marks omitted). "If there is a reasonable factual basis for expert testimony, it should be admitted." *Weidman v. Ford Motor Co.*, 646 F. Supp. 3d 928, 931 (E.D. Mich. 2022). The Court must also

"distinguish between genuine questions of reliability and questions of credibility and accuracy." *Id.* Issues with the latter go to the weight of the evidence, not its admissibility. *Id.* And those issues should be addressed on cross-examination and by the "'presentation of contrary evidence' by opposing counsel." *Id.* (quoting *In re Scrap Metal Antitrust Litigation*, 527 F.3d at 532).

### III.

"Under normal circumstances, a district court may resolve a *Daubert* motion without holding an evidentiary hearing." *Al Qari*, 689 F. Supp. 3d at 500 (citing *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 248-49 (6th Cir. 2001)). Such a hearing is instead only required "if the record is inadequate to decide the motion." *Al Qari*, 689 F. Supp. 3d at 500 (citing *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 393 (6th Cir. 2000)). The record here is adequate to decide the motion without a hearing, and the Court will address each of the Defendants' arguments in turn.

### A.    Qualifications

Defendants argue that Dr. Russano is not qualified to offer case-specific opinions because she is a research psychologist rather than a clinician, has not personally evaluated Plaintiff, has not conducted a custodial interrogation, and is not a sleep-medicine specialist. ECF No. 92, PageID.4083-4085. The Court disagrees. The relevant inquiry is not whether an expert possesses every form of experience that might bear on a subject, but whether her "qualifications provide a foundation

6

for [her] to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994). Dr. Russano's education, research, publications, laboratory work, law-enforcement training, and more than two decades of specialized study directly concern the psychology of interrogations and confessions. That foundation qualifies her to explain false-confession research, recognized interrogation-related risk factors, and the significance of those factors within her discipline.

Defendants' objections also misstate the nature of the proposed opinions. Dr. Russano does not purport to diagnose Plaintiff, assess his clinical condition, or offer a medical diagnosis concerning sleep deprivation. She proposes to explain how conditions such as fatigue and sleep deprivation are treated in the false-confession literature and how those conditions may affect a person undergoing interrogation. ECF No. 103, PageID.5471-5474. Nor was she required to personally interview Plaintiff or conduct the interrogation herself. Federal Rule of Evidence 703 permits experts to base opinions on facts and data made known to them, and experts are afforded "wide latitude" to offer opinions not based on firsthand observation. *Daubert*, 509 U.S. at 592; *see also Weidman*, 646 F. Supp. 3d at 933. Any claimed gap between Dr. Russano's experience and the facts of this case may be explored on cross-examination, but it does not render her unqualified.

**B.     Reliability**

Defendants contend that Dr. Russano's opinions are unreliable because the prevalence of false confessions is unknown, her assessment of Plaintiff's confession has not been empirically validated and has no known error rate, and no fixed standard governs how the identified risk factors are weighed. ECF No. 92, PageID.4078-4079. Relying on *United States v. Deuman*, 892 F. Supp. 2d 881 (W.D. Mich. 2012), and *United States v. Sammons*, 535 F. Supp. 3d 697 (S.D. Ohio 2021), Defendants also argued that peer-reviewed research identifying false-confession risk factors does not validate a method for assessing the reliability of a particular confession. ECF No. 113, PageID.5770-5774. The Court disagrees.

Rule 702 requires Plaintiff to establish that Dr. Russano's testimony is "the product of reliable principles and methods" and reflects their reliable application to the facts. Fed. R. Evid. 702(c)-(d). But the considerations identified in *Daubert* are flexible and apply only insofar as they reasonably measure reliability given "the nature of the issue, the expert's particular expertise, and the subject of [the] testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). Testing, quantification, and a calculable error rate are therefore not indispensable in every discipline. *See Sanford v. Russell*, 387 F. Supp. 3d 774, 787 (E.D. Mich. 2019) ("Not all fields involve methods amenable to empirical analysis."); *United States v. LaVictor*, 848 F.3d 428, 443-444 (6th Cir. 2017) (explaining that limitations in

8

social-science validation studies may be addressed through cross-examination where the research has been subjected to peer review).

Plaintiff has demonstrated that Dr. Russano's opinions draw from peer-reviewed case studies, observational and laboratory research, meta-analyses, and accepted principles of cognitive and social psychology concerning conditions associated with an increased risk of false confession.  ECF No. 103, PageID.5474-5483.  Plaintiff also correctly observes that Defendants evaluate this body of research as though Dr. Russano were employing a diagnostic test designed to classify Plaintiff's confession as true or false.  She is not.  When asked whether her risk-factor framework had been tested to determine the truth or falsity of a particular confession, Dr. Russano explained that "that's not what the framework does ever."  ECF No. 92-4, PageID.4358.

Instead, she identifies whether conditions the applicable research associates with false confessions would be implicated under the parties' competing accounts.  *Id.*  Her corroboration analysis likewise distinguishes details independently verified or unknown to investigators from details that may have originated with investigators.  ECF No. 92-3, PageID.4303-4308.  These methods are transparent, grounded in the literature identified in her report, and capable of being tested against the record through cross-examination and contrary evidence.  *See Sanford*, 387 F. Supp. 3d at

9

783-784 (admitting testimony applying widely accepted false-confession research to the circumstances of the plaintiff's interrogation).

Defendants' reliance on the cited case law is misplaced. In *Sammons*, the expert's individualized opinion depended heavily on a psychological compliance scale that lacked validity measures, had no known error rate, was readily manipulable, and was undermined by the expert's own testimony. *Sammons*, 535 F. Supp. 3d at 705-706. Dr. Russano administered no such test and does not diagnose Plaintiff as unusually compliant. *Deuman* is also distinguishable. Although the court rejected Dr. Leo's methodology as a means of determining whether particular statements were false, the proposed testimony there was poorly connected to the facts: the defendant had not confessed to the murder and had not been subjected to the interrogation conditions the expert studied. *Deuman*, 892 F. Supp. 2d at 889-891.

Here, Dr. Russano applies recognized research to the disputed circumstances of an actual confession without claiming that the identified factors themselves establish its falsity. Plaintiff has therefore shown that Dr. Russano's testimony rests on sufficiently reliable principles and methods. The absence of a fixed weighting formula, prevalence rate, or case-specific error rate may be explored through cross-examination and presentation of contrary evidence, but it does not warrant wholesale exclusion under Rule 702. *Daubert*, 509 U.S. at 596.

10

## C.      Helpfulness and Speculation

Defendants separately argue that Dr. Russano's opinions are too speculative to assist the jury.  ECF No. 92, PageID.4079.  They rely on *Johnson v. Memphis Light, Gas & Water Division*, 695 F. App'x 131 (6th Cir. 2017), and *Tamraz v. Lincoln Electric Co.*, 620 F.3d 665 (6th Cir. 2010), for the proposition that an expert may not substitute a working hypothesis for an opinion about what probably occurred.  *Id.*  Defendants again misidentify the opinion being offered.

Dr. Russano does not intend to testify that the alleged interrogation conditions caused Plaintiff to confess falsely or that the confession was in fact false.  Rather, her testimony will explain the phenomenon of false confessions, identify conditions that research associates with an increased risk of false confession, and explain which factors would be implicated under the facts found by the jury.  ECF No. 103, PageID.5485.  Plaintiff argues that this testimony will correct the common assumption that an innocent person would never confess to a serious crime and will provide the jury with specialized information that is helpful in evaluating the interrogation and confession evidence.  ECF No. 103, PageID.5485.  That opinion does not become inadmissible merely because she cannot convert the combined factors into an individualized numerical probability.

Moreover, the conditional nature of Dr. Russano's application does not make it speculative.  An expert may rely on assumed facts that have support in the record;

11

and disputes or weaknesses in those assumptions ordinarily affect weight, not admissibility. *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000); *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530–31 (6th Cir. 2008). Here, Plaintiff's account of prolonged isolation, food and sleep deprivation, a late-night polygraph, threats concerning his job and family, and a promise of release implicates the risk factors identified in Dr. Russano's report. Her testimony therefore fits the disputed evidence and may assist the jury, while Defendants remain free to challenge its factual premises through cross-examination and contrary evidence.

## D.      The Role of the Jury

Defendants also contend that Dr. Russano intends to tell the jury which evidence to credit and how to weigh Plaintiff's confession. ECF No. 92, PageID.4080-4082. The cited deposition testimony does not support that characterization. When asked about the competing accounts of the interrogation, Dr. Russano explained:

> [W]hat I have done is identify potential risk factors based on - - depending on whether you assume Mr. Craighead's account, here are the potential risk factors. If you assume the State's account, here are the potential risk factors. I am not here to judge the credibility of those accounts. That's for the fact-finder to decide.

ECF No. 92-4, PageID.4357. Dr. Russano's conditional application of the research to each account does not tell the jury which version to believe. It leaves the predicate

factual and credibility determinations where they belong, with the jury, and supplies specialized knowledge concerning the significance of the facts the jury may find.

That said, the Court clarifies the permissible scope of Dr. Russano's testimony at trial.  She may explain the phenomenon of false confessions, recognized risk factors, the psychological mechanisms associated with those factors, the factors potentially implicated under the parties' competing factual accounts, and the concepts of dependent and independent corroboration.  But she may not offer a conclusive opinion that Plaintiff's confession was false or unreliable, state that the jury should not rely on the confession, or otherwise tell the jury what conclusion to reach on that ultimate factual question.  This limitation does not warrant excluding her testimony altogether.

**E.      Rule 26 Disclosures**

Defendants finally argue that Dr. Russano's disclosures are deficient because she did not retain notes from her review of the record and because her report did not include opinions concerning the report of Defendants' sleep expert, Dr. Michel Bornemann.  ECF No. 92, PageID.4085-4086.  This argument also fails.

Dr. Bornemann's report did not exist when Dr. Russano prepared her report.  After reviewing it, she made notes that were produced to Defendants in response to their subpoena before her deposition.  Defense counsel then questioned her about those notes and elicited her opinions concerning Dr. Bornemann's report.  ECF No.

13

103, PageID.5490-5491. Rule 26(e)(1)(A) requires supplementation only when the additional information "has not otherwise been made known to the other parties during the discovery process or in writing." And, as to retained experts, Rule 26(e)(2) expressly extends the disclosure obligation to information given during the expert's deposition.

Accordingly, Dr. Russano's produced notes and deposition testimony made the opinions known to Defendants during discovery and in writing. Questions asked during an expert deposition may also bear on the permissible scope of the expert's trial testimony. *See Guarantee Trust Life Insurance Co. v. American Medical & Life Insurance Co.*, 291 F.R.D. 234, 237 (N.D. Ill. 2013) (citing *In re Sulfuric Acid Antitrust Litigation*, 235 F.R.D. 646, 659 (N.D. Ill. 2006)). Even assuming a technical supplementation requirement remained, the timing of Dr. Bornemann's report substantially justified the absence of the opinions from Dr. Russano's initial report, and Defendants' receipt of the notes and examination of Dr. Russano rendered any omission harmless under Rule 37(c)(1). The Court will not exclude Dr. Russano's testimony on this basis. *See Shadrick v. Southern Health Partners, Inc., No. 4:11-CV-00033-JHM*, 2016 WL 4555611, at *3 (W.D. Ky. Aug. 31, 2016).

Nor does Dr. Russano's failure to retain separate notes from every portion of her review, standing alone, establish that her report omitted the facts, data, bases, or reasons supporting her disclosed opinions. Defendants remain free to examine her

14

about the materials she reviewed and the manner in which she reached her conclusions.

## IV.

The Court finds that Dr. Russano is permitted to testify regarding false confessions. Defendants' criticisms largely concern the weight and scope of testimony and may be addressed through cross-examination, contrary evidence, and appropriate jury instructions.

Accordingly, the Court **DENIES** Defendants' Motion to Strike Expert Melissa Russano (ECF No. 92).

**IT IS SO ORDERED.**

Dated: July 19, 2026                          s/Brandy R. McMillion
                                              HON. BRANDY R. MCMILLION
                                              U.S. District Judge