UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK CRAIGHEAD,

        Plaintiff,

v.

BARBARA SIMON, *et al.*,

        Defendants.

_____/

Case No. 2:23-cv-12243
Hon. Brandy R. McMillion

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO STRIKE EXPERTS ERROL LIVERPOOL (ECF NO. 89) AND STEVEN FARMILANT (ECF NO. 95), AND PLAINTIFF'S MOTION TO STRIKE OPINIONS OF DR. SAMI FARHAT (ECF NO. 91)**

Plaintiff Mark Craighead ("Plaintiff" or "Craighead") brings this wrongful conviction action against Defendants for, among other things, malicious prosecution and coerced confession related to his conviction for the 1997 Murder of Chole Pruett. ECF No. 89, PageID.3323.  Before the Court are Defendants' Motions to Strike Experts Errol Liverpool (ECF No. 89) and Steven Farmilant (ECF No. 95) and Plaintiff's Motion to Strike Opinions of Defendants' Retained Expert, Dr. Sami Farhat (ECF No. 91).  The motions are fully briefed and the Court will rule without a hearing.  E.D. Mich. LR 7.1(f). Each motion is **GRANTED IN PART** and **DENIED IN PART**.

1

## I.

Plaintiff seeks damages for mental and emotional injuries allegedly caused by his arrest, interrogation, conviction, and incarceration.  ECF No. 89, PageID.3323. Plaintiff disclosed Liverpool, his treating counselor, who treated him for nearly nineteen months and diagnosed him with Post-Traumatic Stress Disorder (PTSD) and adjustment disorder.  ECF No. 108, PageID.5714-5722.  Defendants retained Dr. Sami Farhat to compile a forensic rebuttal report in which he concluded that he could not substantiate a clear loss of functional impairment or significant psychological injury resulting from Craighead's wrongful incarceration.  ECF No. 105, PageID.5597-5598.  Dr. Farmilant, Plaintiff's rebuttal expert, administered a series of diagnostic tests, diagnosed Plaintiff with Complex Post-Traumatic Stress Disorder (CPTSD) and major depressive disorder, and subsequently compiled a surrebuttal expert report in which he concluded that Plaintiff's diagnoses were attributable to his wrongful incarceration.  ECF No. 102, PageID.5439-5440.

## II.

District courts act as "gatekeepers" with respect to expert testimony; their role is to "'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant.'"  *In re Onglyza (Saxagliptin) & Kombiglyze (Saxagliptin & Metformin) Prod. Liab. Litig.*, 93 F.4th 339, 345 (6th Cir. 2024) (quoting *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579, 597 (1993)).  Recently amended, Rule 702 provides:

2

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

It is therefore the proponent's burden "to demonstrate to the Court that an expert's testimony more likely than not meets the four enumerated requirements for admissibility." *Al Qari v. American Steamship Co.*, 689 F. Supp. 3d 494, 499 (E.D. Mich. 2023) (quotation marks and citation omitted).

In short, before admitting any expert testimony, the Court must ensure that the expert testimony is helpful to the trier of fact, "based on sufficient facts or data," the "product of reliable principles and methods," and reliably applies the "principles and methods to the facts of the case." Fed. R. Evid. 702 (2023); *see In re Onglyza*, 93 F.4th at 345 & n.2 (summarizing requirements under 2011 version of Rule 702 and noting changes in 2023 amendment of the Rule). The Court's job is "not to determine whether [the expert's opinion] is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In*

3

*re Onglyza*, 93 F.4th at 345 (quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529-30 (6th Cir. 2008)).

Nonetheless, rejecting expert testimony is the exception, not the rule. *Al Qari*, 689 F. Supp. 3d at 499 (citing *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530)). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Al Qari*, 689 F. Supp. 3d at 499 (quoting *Daubert*, 509 U.S. at 596) (quotation marks omitted). "If there is a reasonable factual basis for expert testimony, it should be admitted." *Weidman v. Ford Motor Co.*, 646 F. Supp. 3d 928, 931 (E.D. Mich. 2022). The Court must also "distinguish between genuine questions of reliability and questions of credibility and accuracy." *Id.* Issues with the latter go to the weight of the evidence, not its admissibility. *Id.* And those issues should be addressed on cross-examination and by the "'presentation of contrary evidence' by opposing counsel." *Id.* (quoting *In re Scrap Metal Antitrust Litigation*, 527 F.3d at 532).

### III.

### A. Dr. Liverpool

Defendants seek to exclude Dr. Liverpool's testimony in its entirety. They argue that Dr. Liverpool is not qualified to diagnose PTSD or offer opinions concerning its cause because he is a licensed professional counselor rather than a

psychologist, psychiatrist, or forensic clinician; has not published on PTSD or trauma; lacks forensic training; and testified that he was appearing as a treating clinician rather than an expert witness. ECF No. 89, PageID.3330-3332.  Defendants further challenge the reliability of Dr. Liverpool's PTSD diagnosis because he made it during the first treatment session, did not conduct a structured diagnostic interview or symptom-validity testing, did not review collateral records, and was unfamiliar with certain provisions of the DSM-5-TR. ECF No. 89, PageID.3335-3337. Defendants argue that Dr. Liverpool lacked a reliable basis to attribute Plaintiff's condition to his incarceration or to criticize Dr. Farhat's forensic evaluation. ECF No. 89, PageID.3337–3341.  Plaintiff relies on Liverpool's licensure, trauma-treatment experience, professional training, and his diagnostic screening in combination with the nineteen months he spent treating Plaintiff in support of his diagnostic, causation, and rebuttal opinions.  ECF No. 108, PageID.5715-5722.

The Court finds that Liverpool may testify as to Craighead's PTSD diagnosis and treatment.[1]  Rule 702 does not reserve diagnosis to forensic psychologists or require board certification.  *See Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000); *Petty v. Garden City Pub. Schs.*, No. 21-11328, 2025 WL 752314, at *3-4 (E.D. Mich. Mar. 10, 2025) (rejecting argument that a psychiatrist's limited

---

[1] Plaintiff has conceded that Dr. Liverpool's will not offer opinions as to Craighead's adjustment disorder diagnosis, so the Court need not reach a determination on the merits in respect to it.

concentration in a particular patient population rendered him unqualified; formal training and relevant treatment experience were sufficient even though the expert had not devoted the majority of his practice to that specialty).  His opinions regarding his time as Plaintiff's treating clinician define the scope of his testimony; they do not disqualify him from offering opinions formed during treatment altogether.  *See Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 870-871 (6th Cir. 2007).

Defendants' attacks on Liverpool's PTSD diagnosis go to weight, not Liverpool's overall qualification to testify as an expert on Craighead's treatment and PTSD diagnosis, and Defendants are free to challenge its veracity during cross-examination at trial.  A treating provider may rely on interviews, reported history, observed symptoms, and the course of treatment in offering opinions.  *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 181-82 (6th Cir. 2009); *Petty*, 2025 WL 752314, at *5-7.  Whether Liverpool diagnosed Plaintiff too quickly or incorrectly, should have used additional testing methods, or should have reviewed more records may also be explored on cross-examination.  The DSM-5-TR's instruction to no longer diagnose both PTSD and Adjustment Disorder does not, by itself, invalidate Dr. Liverpool's qualification to diagnose Craighead or testify as to his treatment.  *Petty*, 2025 WL 752314, at *6-7.

The Court further holds that it will not prohibit Plaintiff from eliciting Dr. Liverpool's causation opinion attributing Craighead's PTSD diagnosis to his

6

wrongful incarceration. *Neview v. D.O.C. Optics Corp.*, 2009 WL 189961, at *1 (E.D. Mich. Jan. 27, 2009) (quoting *Fielden,* 482 F.3d at 870) (treating providers may offer opinions regarding causation because "[i]t is within the normal range of duties for a health care provider to develop opinions regarding causation and prognosis during the ordinary course of an examination. To assume otherwise is a limiting perspective, which narrows the role of a treating physician.")). Accordingly, Dr. Liverpool may testify that, in his clinical opinion formed during the course of treatment, Plaintiff's arrest and incarceration caused or contributed to the PTSD and related symptoms he treated. His testimony must remain confined to opinions formed during treatment and based on the clinical history, observations, training, and experience he relied upon in treating Plaintiff; he may not offer causation opinions developed at counsel's request or from sources extraneous to that treatment. *See Neview*, 2009 WL 189961, at *1-2.

Liverpool may also compare his longitudinal observations with a single evaluation and discuss trauma science, wrongful-incarceration literature, and "systemic betrayal" insofar as those concepts informed Craighead's treatment. ECF No. 108, PageID.5722-5724. He may not criticize Farhat's forensic methodology, offer false-confession opinions, or present unsupported generalized propositions as independent forensic conclusions.

**B. Dr. Farhat**

Plaintiff's Motion argues that Farhat relied on incomplete data, offered only a "null" opinion, focused on functional impairment Plaintiff does not claim, and prepared an untimely surrebuttal. ECF No. 91, PageID.3991, 3993, 3995. Dr. Farhat interviewed Plaintiff for approximately one hour and forty-five minutes and reviewed the complaint, portions of the underlying criminal record, Plaintiff's deposition, discovery materials, Michigan Department of Corrections records, and letters written by Plaintiff. ECF No. 91, PageID.3991. Defendants respond that the omissions affect weight and that functional impairment bears on the extent of claimed injury. ECF No. 105, PageID.5599-5602.

The Court finds that Dr. Farhat may offer opinions as to his timely rebuttal report, subject to certain limitations, and that he may not testify as to any opinions offered in his notes critiquing Dr. Farmilant's report. With respect to Dr. Farhat's rebuttal report, his interview and record review provide a reasonable basis for an evaluation-specific opinion. ECF No. 105, PageID.5597-5598. Rule 702 does not require an expert to review every available record or contact every collateral witness before offering an opinion. *Petty*, 2025 WL 752314, at *5; *Weidman*, 646 F. Supp. 3d at 931. The omitted treatment records and family interviews are proper subjects for cross-examination.

8

The scope of Dr. Farhat's permitted testimony must, however, correspond to the scope of his factual basis.  Dr. Farhat may testify that Plaintiff did not demonstrate clinically significant functional impairment during the evaluation and that Dr. Farhat did not find sufficient support for such impairment in the materials he reviewed.  He may also explain the role that functional impairment plays in the diagnostic framework he applied.  This testimony is not irrelevant merely because Plaintiff does not seek damages for an inability to work, maintain relationships, or perform major life activities.  Plaintiff seeks damages for mental anguish, emotional and psychological distress, and related injuries, and Plaintiff's experts have offered clinical diagnoses to explain those injuries.  ECF No. 105, PageID.5596-5597, 5600–5602.  Whether the symptoms described rose to the level of a clinically significant disorder may therefore assist the jury in evaluating the nature and extent of the claimed psychological harm.

But Dr. Farhat's evaluation was a cross-sectional assessment, not a longitudinal examination of Plaintiff's functioning throughout the years following his incarceration.  He interviewed Plaintiff once, did not review the treatment records documenting Plaintiff's condition over time, and did not obtain collateral accounts comparing Plaintiff's pre- and post-incarceration functioning.  ECF No. 91, PageID.3988-3990.  Those limitations do not eliminate the value of what Dr. Farhat observed, but they constrain the inference he may draw from it.  The absence of

clinically significant impairment during one evaluation, or in the particular records reviewed, does not by itself establish that Plaintiff experienced no functional impairment at other times.  Nor does it establish that Plaintiff suffered no emotional injury simply because the alleged harm did not prevent him from working or maintaining relationships.  An expert's factual foundation must be sufficient for the particular opinion offered, and the Court may prevent an expert from extending a limited dataset beyond what it can reliably support.  See *Petty*, 2025 WL 752314, at *5.

Accordingly, Dr. Farhat may describe his examination, the materials he considered, his clinical observations, and his conclusion that the information available to him did not substantiate clinically significant functional impairment or a diagnosable psychological condition.  He may not offer the broader opinion that Plaintiff experienced no functional impairment throughout the relevant period or equate the absence of clinically significant impairment during his evaluation with the absence of emotional injury or compensable damages.  The parties remain free to examine Dr. Farhat regarding the information he did and did not consider, the limitations of a single evaluation, and the significance of the functional-impairment standard he applied.

Plaintiff also seeks to exclude a surrebuttal critique prepared by Dr. Farhat after reviewing Farmilant's report.  ECF No. 91, PageID.3995.  Plaintiff argues that

10

the critique was untimely, exceeded the scope of permissible rebuttal, and introduced new opinions after the expert-disclosure deadlines had passed.  *Id.* at PageID.3995-3998.   Plaintiff further contends that producing the critique during Farhat's deposition did not cure the violation because counsel had no advance notice of the opinions and no meaningful opportunity to prepare to examine Farhat concerning them.  *Id.* at PageID.3997.

Defendants respond that any disclosure violation was harmless.  ECF No. 105, PageID.5603.  They emphasize that Plaintiff received the critique during Farhat's deposition and contend that counsel nevertheless examined Farhat about it "page by page" and discussed the conclusions contained in it.  *Id.*  Defendants therefore argue that Plaintiff suffered no meaningful prejudice and that exclusion would be unwarranted.  *Id.* at PageID.5604.

Defendants' arguments are ultimately unpersuasive.  Although production of the critique during Farhat's deposition diminished the element of continuing surprise, it did not render the opinions timely disclosed, authorize the otherwise impermissible surrebuttal, or provide Plaintiff a meaningful opportunity to prepare an examination concerning the critique.  More significantly, Defendants' attempt to establish harmlessness rests on a factual representation that is disproven by the deposition transcript.  Defendants state that Plaintiff's counsel and Farhat reviewed

11

the critique "page by page and discussed his conclusions."   ECF No. 105, PageID.5603.  They did not.

The pages Defendants cite reflect counsel's examination concerning Farhat's separately maintained interview notes, which were marked as Exhibit 5.  ECF No. 116, PageID.5801.   The critique notes were neither marked as an exhibit nor substantively examined.  The Court will not excuse an unauthorized and untimely expert disclosure based on a materially inaccurate account of the discovery record.  Accordingly, Farhat may explain and defend the opinions contained in his timely report only.  He may not offer any additional opinions first expressed in his notes critiquing Dr. Farmilant's rebuttal.

## C. Dr. Farmilant

Defendants challenge Dr. Farmilant's qualifications, SIMS and PAI analysis, CPTSD diagnosis, and causation opinion.  ECF No. 95, PageID.4958-4970; ECF No. 110, PageID.5738-5744.  The Court finds that Dr. Farmilant is qualified.  He has been a licensed clinical psychologist since 1997, taught trauma and victimology, and provides clinical and forensic trauma services.  The absence of board certification, memberships, or publications on the precise subjects affects weight, not qualification. *See Pride*, 218 F.3d at 577.

The testing disputes also go to weight.  Dr. Farmilant explained how he integrated recognized instruments with records, interviews, observed behavior, and

other indicators, including why the SIMS did not establish malingering and why the PAI coefficient did not support schizophrenia.  ECF No. 102, PageID.5445-5450. Defendants may challenge the SIMS-score discrepancy, the supporting literature, the PAI interpretation, and the absence of CAPS-5 or PCL-5 testing; but Rule 702 does not require perfect methodology for expert testimony to be admissible.  *Best*, 563 F.3d at 181-182.

Dr. Farmilant may testify to CPTSD.  Its absence from the DSM-5 is not dispositive because it appears in the ICD-11 and Farmilant explained the criteria applied.  ECF No. 102, PageID.5451-5455; *see also Petty*, 2025 WL 752314, at *6-7.  Plaintiff does not intend to elicit PICS testimony.  If it arises, Dr. Farmilant may describe Post Incarceration Syndrome (PICS) as a literature-based concept or PTSD subtype, but not as an official DSM-5 or ICD-11 diagnosis.  Dr. Farmilant's causation opinion is also admissible.  He considered treatment and correctional records, collateral information concerning pre- and post-incarceration functioning, testing, and alternative stressors.  Differential etiology requires consideration, not elimination, of every conceivable contributing cause.  *Best*, 563 F.3d at 179-182. The weight assigned to particular alternatives is for cross-examination.  The opinion does not rest on the speculative chain rejected in *Tamraz*.  620 F.3d at 670-671.

13

## IV.

It is hereby **ORDERED** that Defendants' Motion to Strike Dr. Liverpool (ECF No. 89) is **GRANTED IN PART** and **DENIED IN PART**. Dr. Liverpool may testify regarding PTSD diagnosis and treatment, longitudinal observations, Plaintiff's disclosures and symptoms, causation, and treatment-related trauma concepts. He may not testify concerning adjustment disorder, Dr. Farhat's forensic methodology, or false-confession science.

It is further **ORDERED** that Plaintiff's Motion to Bar Dr. Farhat (ECF No. 91) is **GRANTED IN PART** and **DENIED IN PART**. Dr. Farhat may testify to his timely report subject to the stated limitations but may not offer opinions first expressed in the rebuttal critique.

It is further **ORDERED** that Defendants' Motion to Strike Dr. Farmilant (ECF No. 95) is **GRANTED IN PART** and **DENIED IN PART**. Dr. Farmilant may testify regarding his diagnoses, validity testing and malingering analysis, and causation. Any PICS testimony is limited as stated above.

**IT IS SO ORDERED.**

Dated: July 21, 2026

s/Brandy R. McMillion
**BRANDY R. MCMILLION**
U.S. District Judge